# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

MONIQUE OUTZEN, individually and on behalf )
of all others similarly situated, )
ROBERT ARDAIOLO, individually and on behalf )
of all others similarly situated, )
MELISSA BARKER, an individual, on behalf of )
herself and all others similarly situated, )
                                            )
                 Plaintiffs, )
                                            )
                 v. )       Case No. 1:20-cv-01286-TWP-MJD
                                            )
KAPSCH TRAFFICCOM USA, INC., and )
GILA, LLC, )
                                            )
                 Defendants. )

## ENTRY DENYING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Joint Motion to Dismiss filed by Defendants Kapsch

TrafficCom USA, Inc. ("Kapsch") and Gila, LLC ("Gila") (collectively, "Defendants"), pursuant

to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7-1 (Filing No. 26).

Plaintiffs Monique Outzen ("Outzen") and Robert Ardaiolo ("Ardaiolo") (collectively,

"Plaintiffs") initiated this eight-claim action against Defendants for unjust enrichment (Count I),

money had and received (Count II), fraud (Count III), violation of the Indiana Deceptive Consumer

Sales Act ("IDCSA") (Count IV), deception or intentional misrepresentation (Count V),

negligence (including negligent misrepresentation and negligence *per se*) (Count VI), constructive

fraud (Count VII), and breach of fiduciary duty (Count VIII) for alleged violations stemming from

their operation of the electronic toll collection system over the Ohio River bridges.[1]  In response,

---

[1] Nine days after briefing concluded on this Motion, the Court consolidated this case with a similar one brought by Plaintiff Melissa Barker, noting that both involved common questions about like factual allegations (Filing No. 44 at 1–2). As this Entry only concerns Plaintiffs Outzen and Ardaiolo, neither this procedural step nor Plaintiff Barker will, with some limited exception, be discussed at length here.

the Defendants filed a joint Motion to Dismiss, asking the Court to dismiss each of the claims asserted in Plaintiffs' Complaint.  For the following reasons, the Court **denies** the Motion to Dismiss.

## I.    BACKGROUND

The following facts are not necessarily objectively true, but, as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Plaintiffs as the non-moving parties.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

RiverLink is a collaborative tolling system instituted by Indiana and Kentucky (collectively, "the States") to build, maintain, and improve multiple bridges spanning the Ohio River that connect the state and commonwealth.  (Filing No. 1-2 at 3.)  RiverLink uses all-electronic tolling, meaning that tolls are collected one of two non-traditional ways.  *Id.*  First, users can create Registered Vehicle Accounts ("RVAs") that automatically debit accounts when sensors detect their provided transponders traversing the bridges.  *Id.*  Second, for motorists without RVAs, or for those with RVAs carrying inadequate balances to pay a toll, cameras photograph license plate information of the passing cars and Unregistered Vehicle Accounts ("UVAs") are created. *Id.* The drivers of these vehicles, as identified by the Indiana Bureau of Motor Vehicles ("IN BMV") or Kentucky Motor Vehicle Licensing ("KY MVL"), will receive an invoice for the unpaid toll, known as a "1st Toll Notice," through the mail.  *Id.* at 3–4.  If the invoice goes unpaid for thirty days, drivers are to be mailed a "2nd Toll Notice," which this time includes an additional $5.00 administrative fee/penalty.  *Id.* at 4.  If the 2nd Toll Notice is not paid within thirty days, drivers will receive a "Violation Notice," which includes the unpaid toll, a $5.00 administrative fee/penalty from the 2nd Toll Notice, and an additional $20.00 fee/penalty.  *Id.*  If the driver does

not pay the Violation Notice, they will be sent a "Collection Notice," which, in addition to all the charges outlined in the Violation Notice, includes an additional $30.00 collections penalty/fee.  *Id.* Finally, if a Collection Notice is not paid, additional fees may be assessed, collection efforts (including litigation) may be instituted, and a hold may be placed on the vehicle's registration with the IN BMV or KY MVL, which can only be lifted upon full payment of the penalty/fee.  *Id.*

Gila is a limited liability company that offers business process outsourcing services and focuses on revenue enhancement services such as toll, driver surcharge programs, and government services.  Kapsch was awarded the contract to act as the Toll Services Provider ("TSP") for RiverLink and later hired Gila to act as its agent to operate the system, which included conducting image review, managing accounts and transponders, processing payments, invoicing and video billing, processing violations, and conducting collection and court processing services.  *Id.* at 4–5.

As part of their contract with the States, "Defendants were required to set the due date for any 1st Toll Notice for 35 days after the generation of that invoice[,] . . . to allow '5 days for invoice generation, quality control and review, and mailing + 30 Days for Customer to make payment.'" *Id.* at 6.  Defendants, however, did not follow this protocol, and instead "Gila programmed the RiverLink invoicing software to set due dates for just 29 days, or less, after the date on which a 1st Toll Notice was generated."  *Id.*  Moreover, "1st Toll Notices were not reviewed, printed, and mailed for days or weeks after generation (if at all)."  *Id.* Defendants concealed this conduct by, among other things, programming invoice software "to put an 'Invoice Date' on each 1st Toll Notice that was at least one day before the date on which that invoice was generated" and sent invoices "in envelopes that utilized a bulk postage process that does not identify the date postage was purchased or the envelope was mailed."  *Id.* at 7.

After Outzen used the bridges as a UVA customer, she received a 2nd Toll Notice—but never a 1st Toll Notice—and was charged the $5.00 administrative fee/penalty. *Id.* at 8. Outzen, accordingly, was never afforded the appropriate window to pay her toll without a fee. *Id.* at 8–9. Though Ardaiolo also received a 2nd Toll Notice (including the additional $5.00 fee) after using the bridges, he, unlike Outzen, was provided a 1st Toll Notice. *Id.* at 9. However. the notice, however, did not comply with the requirement to give him the requisite thirty-five days to pay his toll. *Id.* To avoid incurring additional penalties and fees, both Outzen and Ardaiolo paid the full amount due pursuant to their respective 2nd Toll Notices. *Id.* at 10. Though Outzen received her 2nd Toll Notice on November 13, 2017, and Ardaiolo received his on April 13, 2017, neither had reason to believe that they were "inappropriately and unlawfully charged an administrative fee until January of 2020." *Id.* at 9.

For their part, Defendants knew "they were not providing the required amount of time in calculating a "'Due Date' for notices and invoices to UVA consumers" since RiverLink began. *Id.* at 10. And, since at least 2017, Defendants knew "that they were assessing fees and penalties for failure to pay RiverLink invoices that had not actually been printed and mailed". *Id.* These improper assessments resulted in "millions of dollars in fees and penalties" going to Defendants, which they have not refunded. *Id.*

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss under Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The

plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

**B.**     **Motion to Dismiss under Rule 12(b)(6) Standard**

Similarly, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the

elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.   DISCUSSION

Defendants moved to dismiss the Complaint under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court will address these contentions in turn.

### A.   Motion under 12(b)(1)

Defendants argue that Plaintiffs lack standing to pursue their claims (Filing No. 27 at 41). To establish standing, a plaintiff must show:

> (1) an "injury in fact," that is, "an invasion of a legally protected interest which is … concrete and particularized, and … actual or imminent"; (2) a causal connection between the injury and the challenged conduct, meaning that the injury is "fairly traceable" to the challenged conduct; and (3) a likelihood "that the injury will be redressed by a favorable decision."

*Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). While particularization is necessary to establish injury-in-fact, it is not alone sufficient. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). A "concrete" injury must be "de facto," meaning it must actually exist. *Id.* at 1548. A plaintiff cannot satisfy the requirement of standing by alleging a bare procedural violation

because a violation of a procedural requirement may result in no harm. *Id.* at 1550. Standing "requires allegations—and, eventually, proof—that the plaintiff [personally] suffered a concrete and particularized injury in connection with the conduct about which he complains." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018); *Spokeo*, 136 S. Ct. at 1547–48.

Defendants argue the "Plaintiffs cannot establish that they suffered any injury-in-fact relating to their "'Main Class' theory" and that their contentions—in contrast to a case establishing standing—"lack any allegations that they lost any personal time in responding to their RiverLink toll notices." (Filing No. 27 at 41–42.) Defendants contend that Ardaiolo "does not allege that he failed to receive a 1st Toll Notice and therefore paid an unwarranted administrative fee associated with the 2nd Toll Notice," thus, his claims are constrained solely to the "'Main Class' theory that the Toll Notices sent to Plaintiffs . . . did not provide for a due date that was set 35 days from the date on which the Toll Notice was issued." *Id.* at 42–43.  Because "Ardaiolo does not dispute that he failed to timely pay the 1st Toll Notice, and that a 2nd Toll Notice therefore was properly issued," he has suffered no "harm attributable to the due date listed on the Toll Notices he received." *Id.* at 43. In short, "Ardaiolo has not suffered an injury-in-fact" when nothing in the Complaint links his "payment of a $5.00 administrative fee . . . with any actions by Defendants that Plaintiffs challenge in the Complaint." *Id.* The Defendants contend that Outzen lacks standing because she does not (and cannot) allege she ultimately paid without being subsequently reimbursed and/or credited these very fees. *Id.* Defendants maintain, "[c]ourts have consistently dismissed claims for a lack of standing where, as here, the plaintiff received reimbursement for the improper charge alleged." *Id.* at 44 (citing *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193 (9th Cir. 2016)).

Plaintiffs respond that Defendants' arguments are "irreconcilable with the undisputed fact that Plaintiffs each paid Defendants money after being assessed unlawful and fraudulent administrative fees." (Filing No. 42 at 11.) They argue that Ardaiolo has standing because he paid administrative fees that Defendants charged him and he has not resolved his claims. *Id.* Because "[t]he 1st and 2nd Toll Notices fraudulently concealed from [ ] Ardaiolo that the administrative fee was not charged in accordance with Defendants' duties," his subsequent payment represented a cognizable injury. *Id.* at 12. Like Ardaiolo, "Outzen was assessed an administrative fee because she did not pay her toll within 29 days after the 'Invoice Date.'" *Id.* at 13. Moreover, "Defendants never mailed her a 1st Toll Notice, but represented to her that they did." *Id.* Additionally, the belated mailing of "a settlement offer in the form of a non-descript $5.00 check," which Outzen refused to cash, does not deprive her of standing. *Id.* at 13–14. Plaintiffs assert that argument goes to the affirmative defense of "accord and satisfaction"—that is, the redressing of an injury by private agreement—not standing. *Id.* at 14. In any event, Plaintiffs note that the Supreme Court has held that "'an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case.'" *Id.* at 16 (quoting *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 633, 672 (2016)). On top of this, "[t]he check did not make Ms. Outzen whole, nor did it provide her with the statutory damages, treble damages, court costs, interest, attorney fees, or change of the Defendants' business practices she sought (and seeks) as relief." *Id.* at 18.

Defendants reply that "Ardaiolo . . . has not suffered an injury-in-fact and lacks standing to pursue his claims." (Filing No. 43 at 27.) As for Outzen, "she has received all of the relief that her claims can support," and "Plaintiffs' arguments regarding accord and satisfaction are irrelevant and their cases provide no basis for recasting a standing argument into an accord-and-satisfaction defense." *Id.* Because Outzen has received full reimbursement, Defendants conclude that this

Court "'should not countenance meaningless class actions that benefit no one but the attorneys.'" *Id.* at 28 (quoting *Fast v. Cash Depot Ltd.*, 296 F. Supp. 3d 998, 1006 (E.D. Wis. 2017)).

Plaintiffs have sufficiently pled that they have suffered "a concrete and particularized injury in connection with the conduct about which [they] complain[ ]." *Trump*, 138 S. Ct. at 2416. Simply put, and as thoroughly discussed throughout this Entry, Plaintiffs would not have paid the additional $5.00 administration fees if not for the deficient notices sent them that never provided them the appropriate period in which to pay their tolls. Moreover, as for "reimbursement" of Outzen, as she explains, that belated payment did not provide her "with the statutory damages, treble damages, court costs, interest, attorney fees, or change of the Defendants' business practices she sought (and seeks) as relief." (Filing No. 42 at 18.) Defendants' 12(b)(1) Motion is **denied** as to their contention concerning standing.

**B.**   **Motion under 12(b)(6)**

The Defendants' Motion under Rule 12(b)(6) first asserts four broad arguments: (1) that Plaintiffs' "Main Class theory" fails as a matter of law, (2) that Plaintiffs did not provide the requisite notice before bringing their claims, (3) that the statute of limitations bars certain claims, and (4) that Plaintiffs have failed to state actionable claims for damages because they do not allege recoverable damages (Filing No. 27 at 2). The Court will address these four arguments first.

The Motion also divides and attacks Plaintiffs' eight claims under four categories: (1) Unjust Enrichment and Money Had and Received; (2) Fraud-related Claims (Fraud, Violation of the IDCSA, Deception/Intentional Misrepresentation, and Constructive Fraud); (3) Negligence; and (4) Breach of Fiduciary Duty (Filing No. 27 at 2–3). Since Defendants' arguments for dismissal are organized around these categories, the Court will adopt them for clarity and discuss them after examining the initial four contentions outlined above.

1.      **"Main Class Theory"**

Defendants argue that Plaintiffs' theory that they were "deprived of their purported right to have 35 days to pay any invoices" fails because any "right" was not conferred on them: that timeline was established between the States and the Defendants as part of the "'framework for the design, implementation, and operational protocols for the RiverLink Toll Collection System.'" (Filing No. 27 at 21.)  Because Plaintiffs were not party to this agreement, Defendants contend that they cannot maintain any cause of action to enforce it.  *Id.* at 21–22.  Moreover, Plaintiffs have no private right of action to assert a claim when the Indiana "Administrative Code includes specific enforcement mechanisms relating to the regulation of the roads."  *Id.* at 22 (citing 135 Ind. Admin. Code 4-9-1 *et seq.*; *Doe #1 v. Indiana Dept of Child Servs.*, 81 N.E.3d 199, 204 (Ind. 2017) ("When a statute expressly provides one enforcement mechanism, courts may not engraft another.")).  Additionally, 135 Ind. Admin. Code sections 4-9-1 and 4-10-1 provide that the toll operator shall send an initial invoice "specifying a due date *not later than thirty (30) days* after the date the invoice is received" and "[o]utstanding tolls and fees specified in a violation notice shall be due and payable *not more than thirty (30) days after* receipt of the violation notice." *Id.* (emphasis Defendants').  Instead of supporting Plaintiffs' argument, "the Administrative Code provides that consumers shall have *no more* than 30 days after receipt of the notice to pay such fees."  *Id.* at 23 (emphasis Defendants').  Finally, Defendants argue that Plaintiffs fail to "allege how they were possibly damaged by the alleged use of an incorrect due date on their toll notices" because they neither "dispute they incurred the underlying tolls" nor "claim they were misled into believing they had to make any payments before they were due or were somehow damaged by that."  *Id.*

In response, Plaintiffs argue that Defendants are required, under both contract and the Indiana Administrative Rules, to follow the agreement that they provide motorists thirty days to

pay a 1st Toll Notice following receipt (Filing No. 42 at 19). This requirement becomes "the standard of care that Defendants must follow in fulfilling their common law duties to Plaintiffs." *Id.* at 20.  Because Defendants flouted the regulatory code, they argue, "Plaintiffs are in the same position as a plaintiff who asserts negligence for failing to adhere to a building code or running a red traffic signal." *Id.*  In that latter case, for example, if a plaintiff is hurt, "the injured party sues the motorist for breaching their common law duty to operate their vehicle with reasonable care and the violation of the statute constitutes breach of that duty." *Id.* at 21.  Instead of maintaining claims pursuant to agreements to which they are not parties, Plaintiffs instead use them "to evidence the clear liability that exists for claims they have stated." *Id.*  In other words, the "Administrative Code need not confer a private right of action for Plaintiffs to rely on its violation as breach of duty" when "Plaintiffs allege that Defendants owe and breached common law duties, and that the [pertinent agreements merely] evidence the standard of care." *Id.* at 22.  Additionally, even though Defendants claim to be part of a "heavily regulated" industry, the Administrative Code chapter they cite in support "contains no enforcement mechanism against Defendants (or anyone else) at all for improperly charged administrative fees and penalties." *Id.* at 23.  Further, Plaintiffs need not be a party to an agreement to use it as evidence for their common law breach claims—their claims do not sound in contract, and privity is not required to create duties under tort. *Id.* "Finally," Plaintiffs conclude, Defendants violate the Administrative Code by failing to specify a due date "in accordance with the specifications" of agreements. *Id.* at 23–24 (citing 135 I.A.C. § 4-9-1(a)). 135 I.A.C. section 4-9-2 requires Defendants to impose fees "in accordance with the procedures set forth in the" agreement.  *Id.* at 24.  Since the agreement "specifically contemplate[s] 5 days for quality control and mailing, and 30 days for payment," Defendants have violated the Administrative Code "[b]y setting Plaintiffs' due date to 29 days after generation." *Id.*

In reply, Defendants argue that since Plaintiffs are not a party to, and do not have a private right of action under, any agreement between the States and Defendants or the Administrative Code, they cannot bring their claim as "third party beneficiaries." (Filing No. 43 at 10–11.) Nothing in these regulations allow Plaintiffs to enforce them against the Defendants, and "[h]ad the legislature intended consumers be permitted to sue to enforce the terms of [agreements] between the States and the toll service provider, it would have expressly allowed for a private right of action." *Id.* Additionally, "Plaintiffs do not cite *any* legal authority to support their claim that Defendants" owed them "a separate legal duty to provide them with at least 30 days' notice from the date they received a 1st Toll Notice." *Id.* (emphasis Defendants').  And while "non-compliance with a regulatory requirement may evidence *breach* of a duty," the cases Plaintiffs cite due not hold that regulations *establish* that a duty exists in the first place. *Id.* at 13 (emphasis added). Moreover, Plaintiffs "have *not* identified any alleged facts indicating that they suffered harm" from any supposed tightened payment deadline, with the most they offer being that "Ardaiolo has standing to pursue his claims against Defendants." *Id.* (emphasis Defendants').  In fact, Plaintiffs "do not identify any relief that the Court could order that would redress any purported harm." *Id.* at 14.  Because Ardaiolo did not "timely pay [his] toll (even by Plaintiffs' definition of 'timely')," he suffered no harm because he missed the alleged even later deadline to pay. *Id.*  Finally, because his contentions fall under only this theory, the "Court should dismiss the Complaint as to Ardaiolo." *Id.* at 43.

Plaintiffs do not bring this as a contract action to enforce any provisions of an agreement. Instead, they reference language contained therein to "set the standard" of a preexisting purported common law duty of care—just like, as Plaintiffs note, motorists do when pointing to traffic codes following vehicular accidents (*see* Filing No. 42 at 21)  So, this is not grounds for dismissal. The

Court notes that on March 9, 2021, Defendants filed a Motion for Leave to File Notice of Supplemental Authority in Support of their Motion to Dismiss Plaintiffs' Complaint, which the Court now **grants** (Filing No. 109). The Plaintiffs opposed that Motion but, in the alternative, requested leave to respond, which the Court also now **grants** (Filing No. 111). Having granted the parties leave and reviewed their respective arguments, the Court finds that the supplemental authority, *Endsley v. City of Chicago*, 230 F.3d 276 (7th Cir. 2000), does not bolster Defendants' argument.[2]

As for harm, though Defendants argue that Ardaiolo suffered no injury, according to the facts as pled, he was not provided the opportunity to timely pay the toll: he was never informed of the correct timeline to pay the 1st Toll Notice after receipt *and* his 2nd Toll Notice was created before the appropriate thirty-five-day period following the 1st Toll Notice's generation (Filing No. 1-2 at 10). But Plaintiffs allege that these actions led to Ardaiolo paying the inappropriately assessed $5.00 administration fee to avoid further charges and penalties, including a vehicle registration hold by the BMV and actions by a collections agency. *Id.* For these reasons, the Defendants' Motion is **denied** as to their "Main Class theory" contentions.

## 2.    <u>Notice</u>

Defendants argue that Plaintiffs cannot maintain a cause of action against them "because they have not provided the requisite notice to the [States] before attempting to litigate their claim and, further, have not exhausted their administrative remedies prior to filing their Complaint." (Filing No. 27 at 23.) Defendants argue that Plaintiffs seek to "circumvent" a notice requirement

---

[2] Though *Endsley* involved motorists suing after they were charged tolls for crossing a bridge, the plaintiffs there alleged that a city's later use of the revenue violated federal transportation statutes. *Id.* at 279–280. In holding that the pertinent statutes did not provide the plaintiffs with private rights of action to bring their claims, the Seventh Circuit reasoned that "[a]ny violation of the provision's mandates will be handled by the Secretary of Transportation, not private citizens." *Id.* at 281. Here, of course, Plaintiffs' claims arise from Indiana's common law and the IDCSA, and they do not seek to enforce purportedly violated federal statutes (*see* Filing No. 111-1 at 12).

by suing them—but Defendants "perform toll operating services on behalf of and at the State[s']

direction, and collect toll fees and remit them directly to the State[s]." *Id.* at 23–24. Other courts

have determined, Defendants conclude, that "such attempts to end run the notice requirements that

state governments require are not permissible and are grounds for dismissal." *Id.* at 24 (citing

*Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574–75 (10th Cir. 1996); *United States ex rel.

Burlbaw v. Regents of the New Mexico State Univ.*, 324 F. Supp. 2d 1209, 1214–15 (D.N.M.

2004)).

In response, Plaintiffs argue that the Indiana Supreme Court has indicated that the argument

made by the Defendants—that Plaintiffs should have given notice to the States before suing

Defendants—"is 'a farce.'" (Filing No. 42 at 24 (quoting *Veolia Water Indianapolis, LLC v. Nat'l

Trust Ins. Co.*, 3 N.E.3d 1, 11 (Ind. 2014) (quotation omitted))).  Because Indiana's Tort Claims

Act—which provides the notice provision cited by Defendants—"is in derogation of common law,

[ ] it is construed narrowly."  *Id.* (citing *F.D. v. Ind. Dep't of Child Servs.*, 1 N.E.3d 131, 140 (Ind.

2013)). Since Defendants are none of the entities contemplated by the Tort Claims Act—and

instead are independent contractors hired by the States to execute a limited function—they are not

embraced by the Act when there is no "'legislative intent to shield or provide special protections

to for-profit enterprises . . . because they provide services to a governmental entity.'" *Id.* at 26

(quoting *Harrison v. Veolia Water Indianapolis, LLC*, 929 N.E.2d 247, 253 (Ind. Ct. App. 2010)).

Defendants do not reply to Plaintiffs' response. Plaintiffs' assert they are in a position no

different than a private utility that maintains Indiana's water supply or a private prison operator

that runs its prisons, neither of which are governmental entities under the ITCA. *See Kader v. Dep't

of Corr.*, 1 N.E.3d 717, 729 (Ind. Ct. App. 2013) (private prison not subject to ITCA); *Harrison*,

at 255 (privately owned water utility not subject to ITCA); see also *Veolia*, 3 N.E.3d at 12

(privately owned water utility not instrumentality of state).  Because "the Tort Claims Act only applies to (1) the State of Indiana; (2) the State of Indiana's political subdivisions; and (3) public employees," *id.* at 24 (citing *Kader* at 728) (emphasis removed), the Plaintiffs did not have to provide notice to the States before commencing suit against the Defendants. Accordingly, Defendants' Motion is **denied** as to that contention.

### 3.     Statute of Limitations

Defendants argue that "Plaintiffs' claims for unjust enrichment, breach of fiduciary duty, and violation of the IDCSA are each barred by the two-year statute of limitations applicable to these claims." (Filing No. 27 at 24.) Plaintiffs filed their Complaint in 2020, "more than two years after receiving the Toll Notices purportedly giving rise to their claims" in 2017.  *Id.*

In response, Plaintiffs argue that, "[e]ven accepting that Defendants' claims that Plaintiffs' equitable, breach of fiduciary, and IDCSA claims are subject to two-year statutes of limitations with no discovery rule," the Complaint does not state the date that Plaintiffs *paid* the Defendants, which is when their "claims arose." (Filing No. 42 at 26.) In any event, Plaintiffs maintain, "Defendants' assertions fail" for five additional reasons. *Id.* at 27. First, "Plaintiffs' unjust enrichment claim has a six-year statute of limitations, and their money had and received claim has a three-year statute of limitations." *Id.* (citing *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004) (unjust enrichment); Ind. Code § 26-1-3.1-118(g) (money had and received). Second, because "Plaintiffs did not know or have reason to believe that they were inappropriately charged until January of 2020," the discovery rule tolled their claim for breach of fiduciary duty until that time." *Id.* at 27–28 (citing *City of E. Chi. Second Century, Inc.*, 908 N.E.2d 611, 618 (Ind. 2009)). Third, because Plaintiffs assert the same claims as that of *Barker* (which was filed within the 2-year putative timeline), the applicable statutes of limitation were tolled because "'the

commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.'" *Id.* at 28 (quoting *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974)). Fourth, "Defendants' fraudulent concealment of their misconduct also tolled the statute of limitations for Plaintiffs' claims." *Id.* at 29 (citing *Malachowski v. Bank One, Indianapolis*, 590 N.E.2d 559, 563 (Ind. 1992)). Fifth and finally, "[t]he statute of limitations is also tolled by the doctrine of equitable estoppel" because Defendants used "literally false information," insisted "that first toll notices were actually '2nd Toll Notices,'" and represented "that their Toll Notices were being sent under the color of law and subject to statutory penalties." *Id.* at 30–31 (citing *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 383 (Ind. 2019)).

In reply, Defendants argue that "Plaintiffs plead themselves out of court by alleging that the deceptive act providing the basis for their IDCSA claims appeared on notices dated April 13, 2017 and November 13, 2017." (Filing No. 43 at 15.) Moreover, the unjust enrichment claim is governed by a two-year statute of limitations because "the conduct that forms the basis of the unjust enrichment claim is also the subject of a statutory claim" bound by that limitations period. *Id.* at 15–16. Additionally, the *Barker* Complaint did not toll, at the very least, claims not asserted in that prior case. *Id.* at 16–17. Further, the discovery rule did not toll the statute of limitations when "ordinary diligence would make clear that the fees associated with the 2nd Toll Notice could not be charged until after the 1st Toll Notice was provided." *Id.* at 17. Finally, "[s]imply alleging a claim for fraud does not invoke tolling based on concealment unless the defendant took affirmative acts of concealment calculated to mislead and hinder plaintiff from obtaining information relating to the claim." *Id.* at 18 (citing *Forth v. Forth*, 409 N.E.2d 641, 645 (Ind. Ct.

App. 1980)). Similarly, equitable tolling does not extend the limitations period when "Plaintiffs have not alleged any disability, lack of information, or other circumstances that prevented them from filing their claims in a timely manner." *Id.* at 19–20 (citing *Monger v. Purdue Univ.*, 953 F. Supp. 260, 266 (S.D. Ind. 1997)).

Though Defendants correctly assert that that the statute of limitations would ordinarily start running when the Plaintiffs received their respective offending Toll Notices in 2017, fraudulent concealment delays "accrual of an action and the commencement of the limitations period when the defendant has concealed the existence of the cause of action from the plaintiff." *Malachowski*, 590 N.E.2d at 563. This "concealment need not be done through affirmative acts where there is a fiduciary or confidential relationship giving rise to a duty to disclose material information between the parties." *Forth*, 409 N.E.2d at 645. Because Plaintiffs' Complaint sufficiently alleges that the two parties were in a fiduciary relationship, *see infra* Subsection II.B.8, their claims were tolled through Defendants' purported fraudulent concealment, and Defendants' Motion is **denied** as to that contention.

### 4.  Damages

Defendants argue that "Plaintiffs do not plead facts demonstrating that they have suffered a cognizable injury." (Filing No. 27 at 25.) Specifically, "Ardaiolo never alleges that he failed to receive a 1st Toll Notice; therefore, he does not appear to challenge the imposition of a $5.00 administrative fee." *Id.* For her part, "Outzen has received reimbursement of all fees at issue." *Id.* Additionally, "Plaintiffs cannot rely on time spent responding to toll notices to survive dismissal" when their "Complaint lacks any allegations relating to lost personal time," and the amount at issue is a mere "trifle." *Id.* at 25–26 (citing *Kieffer v. Trockman*, 56 N.E.3d 27, 35 (Ind. Ct. App. 2016)).

In response, Plaintiffs merely write in a footnote that although "Defendants also assert that Plaintiffs were not damaged by Defendants' decision to charge unlawful and fraudulent administrative fees[,] . . . Plaintiffs paid Defendants money because of fraudulent charges and, thus, suffered injury." (Filing No. 42 at 23 n.12.) The Court agrees: Plaintiffs sustained injury when they paid the purportedly inappropriately assessed additional administration fees.  Any later effort by Defendants to reimburse Outzen does not absolve them of the harm already committed, and Defendants' Motion is **denied** as to this contention.

### 5.     Unjust Enrichment and Money Had and Received

Count I of the Complaint alleges Unjust Enrichment based on the "amounts paid for penalties and/or administrative fees assessed or invoiced to Plaintiffs and members of the putative class." (Filing No. 1-2 at 15.) Count II alleges Money Had and Received on the same grounds. *Id.* at 15.  To plead a claim for unjust enrichment under Indiana law, a plaintiff must establish that "a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without proper payment would be unjust." *Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009). Indiana courts have articulated three elements for this claim: "(1) a benefit conferred upon another at the express or implied consent of such other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Kohl's Indiana, L.P. v. Owens*, 979 N.E.2d 159, 167-68 (Ind. Ct. App. 2012) (citing *Woodruff v. Ind. Family & Soc. Serves. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012), *cert. denied*). To bring a "money had and received" claim, the plaintiff must satisfy three similar requirements: (1) the defendant receives money, (2) from the plaintiff, (3) under such circumstances that in equity and conscience ought not be retained by the defendants. *Lawson v. First Union Mortg. Co.*, 786 N.E.2d 279, 283–84 (Ind. Ct. App. 2003).

Defendants argue that "Plaintiffs here offer nothing but conclusory terms parroting the elements of the cause of action." (Filing No. 27 at 26.) "Moreover," Defendants continue, "the relevant contracts confirm that the entirety of toll revenues, including the administrative fees at issue, went to the States of Kentucky and Indiana, and were not retained by" the Defendants. *Id.* at 27. These contracts were incorporated by reference in the Complaint, so their terms should control over these contradictory and conclusory "non-factual allegations." *Id.* (citation omitted). The "common denominator" of these two claims—that Defendants retained Plaintiff's money—"is missing from the Complaint." *Id.* at 28. Finally, "Plaintiffs' allegation that Gila has the right to receive a 10% contingency fee from monies recovered pursuant to a Collections Notice does not assist Plaintiffs" because they do not allege that they paid this enhanced fee. *Id.* (citation removed).

In response, Plaintiffs argue that payment of the $5.00 administrative fee "conferred a direct benefit to Defendants and other benefits, including contract revenue, increased profits, lower overhead, and evidence of success." (Filing No. 42 at 32.) Plaintiffs note that "Defendants do not dispute that Plaintiffs paid them, nor do they dispute that they retained Plaintiffs' money for a period of time before transferring it to Indiana and Kentucky." *Id.* "This," Plaintiffs contend, "is a classic example of a conferred-benefit." *Id.* Even so, despite Defendants arguing that they are free from liability for these claims "because they eventually transferred Plaintiffs' money to Indiana and Kentucky," this argument is not only outside the pleadings, but Defendants may not "avoid liability by simply tossing a plaintiff's conferred-benefit to another entity as if it were a hot potato." *Id.* at 33. "In any event," Plaintiffs argue, "payment to Defendants not only enriched them for the period they retained the money, it allowed them to balance their account sheets with Indiana and Kentucky without using their own funds." *Id.* Plaintiffs conclude by noting that their

19

"money benefitted Defendants by helping Defendants perform and be paid for their work." *Id.* at 34.

In reply, Defendants argue that Plaintiffs "have not alleged any recoverable damages and offer nothing more than conclusory allegations." (Filing No. 43 at 20.) Moreover, Plaintiffs merely "offer conclusory allegations that Defendants 'received the money' and were conferred a 'benefit.'" *Id.* And, in fact, these conclusory assertions "contradict the documents incorporated by reference in the Complaint." *Id.* at 20–21. In addition to asking the Court to disregard new allegations put forward in their response brief, Defendants insist that the Court should look to the contracts incorporated in the Complaint to "confirm that the entirety of toll revenues, including the administrative fees at issue were not retained by" the Defendants. *Id.* at 21. Finally, insofar as Plaintiffs argue that Defendants received indirect benefits from receipt of improper administrative fees, these claims require direct, monetary benefits. *Id.*

Even accepting that the revenue from improperly charged administrative fees eventually flowed to the States (and thus was not forever "retained" by the Defendants), no element for the claims of unjust enrichment and money had and received requires a defendant to hold any impermissibly acquired money in perpetuity. *See Zoeller*, 904 N.E.2d at 220; *Lawson*, 786 N.E.2d at 283–84. In other words, liability accrues when the transfer of a benefit or money occurs, and a plaintiff need not demonstrate continued retention by a defendant to maintain these claims. To so require would, as Plaintiffs note, permit a defendant to "avoid liability by simply tossing a plaintiff's conferred-benefit to another entity as if it were a hot potato." (Filing No. 42 at 33.) Because Plaintiffs' Complaint, as pleaded, sufficiently alleges all the elements of the claims, Defendants' Motion to Dismiss Plaintiffs' Unjust Enrichment (Count I) and Money Had and Received (Count II) claims is **denied**.

6.     **Fraud-related Claims**

Plaintiffs assert four fraud-related claims: Count III: Fraud, Count IV: Violation of the IDCSA, Count V: Deception/Intentional Misrepresentation, and Count VII: Constructive Fraud (Filing No. 1-2 at 17–19, 21–22).  Fed. R. Civ. P. 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  If a claim rests on deceptive conduct, the complaint must meet Rule 9(b)'s heightened pleading standard.   The Seventh Circuit has interpreted this particularity requirement to mean the complaint must identify the "who, what, when, where, and how" of the alleged fraud.  *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)). The parties dispute, among other things, whether the Complaint meets this standard about these four claims.

Defendants argue that—contradicting the requirement to plead scienter above that of a simple allegation—"Plaintiffs here do not allege any facts that could support a finding that Defendants acted willfully or intentionally." (Filing No. 27 at 28–29).  Moreover, because "Plaintiffs proceed on the basis of an incurable deceptive act for which notice is not necessary," *id.* at 30, Plaintiffs' allegation of an "incurable deceptive act under the IDCSA must specifically be pled with particularity" too, *id.* at 32.  And this IDCSA claim requires proof that a deceptive act "'was done as part of a scheme, artifice or device with the intent to defraud or mislead,'" which Plaintiffs have not pled. *Id.* at 33 (quoting *McCormick Piano & Organ Co. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980). Defendants argue that willful intent is not plausible here, because "Defendants do not retain administrative fees" and "2nd Toll Plaintiffs" were informed that they only owed the $5.00 administrative fee if they failed to pay a 1st Toll Notice. *Id.* at 32–33.

Defendants additionally contend that "Plaintiffs rely on a handful of conclusory statements relating to their receipt of 2nd Toll Notices" to establish their fraud-related claims. *Id.* at 30. Defendants argue that "Plaintiffs fail to allege an actual misrepresentation" because the 2nd Toll Notices did not state that Plaintiffs had received 1st Toll Notices. *Id.* Without these explicit statements, Defendants maintain, the claims rely on the *implication* that a 1st Toll Notice was sent. *Id.* "This type of 'implicit representation' is not actionable under the IDCSA," argue the Defendants. *Id.* at 30–31. Additionally, Defendants argue, "Plaintiffs fail to identify any facts suggesting that each of the Defendants (let alone specific employees of each Defendant) made any alleged misrepresentations." *Id.* at 31. Without identifying the specific "who" under heightened pleadings standards, Plaintiff's fraud-related claims must fail. *Id.* at 32 (citing *Uni*Quality, Inc. v. Infotronx*, Inc., 974 F.2d 918, 924 (7th Cir. 1992)).

Defendants further argue that the constructive fraud count fails to establish the requisite duty owed under those types of claims. *Id.* at 34. First, pertinent contracts establish that Defendants' fiduciary duty is to "'institute all necessary and proper mechanisms for custody and administration over funds and revenues,'" which has nothing to do with any duty that Defendants had in "mailing of toll notices." *Id.* (citation omitted). In any event, "a party cannot rely on a contractual relationship to create a duty.'" *Id.* (citing *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1273 (Ind. Ct. App. 2000)). Alternatively, Defendants argue that Plaintiffs have not pled facts showing any "special relationship" between the parties. *Id.* This relationship is ordinarily "a fiduciary or confidential one between the parties," but Plaintiffs are "equally, if not better, equipped [than Defendants] to confirm when and whether they received their Toll Notices." *Id.* at 35.

In response, Plaintiffs argue that their "Complaint (1) identifies multiple instances where Defendants have made literally false representations to Plaintiffs; (2) explains how Defendants concealed their conduct from Plaintiffs; (3) explains that Defendants' conduct is widespread and has been occurring for several years; (4) alleges that Defendants' conduct is willful and ongoing; and (5) pleads several incentives for Defendants' conduct." (Filing No. 42 at 34 (citations omitted).) Plaintiffs contend that Defendants falter by asserting "that the Complaint does not allege actual misrepresentation and that 'implicit representation' is not actionable under the IDCSA." *Id.* The Complaint asserts "actual" misrepresentation, argue Plaintiffs, by alleging "that (1) failure to pay a 1st Toll Notice within 30 days of their 'Invoice Date' was a violation of Indiana law and subject to penalty; (2) the administrative fees charged in the 2nd Toll Notice were charged in compliance with Indiana law; [and] (3) for Ms. Outzen, that the '2nd Toll Notice' was actually the second toll notice she received." *Id.* at 34–35. And, in any event, the IDCSA explicitly applies to *implicit* misrepresentations. *Id.* at 35 (citing Ind. Code § 24-5-0.5-3(a)). Additionally, while Defendants take issue with Plaintiffs making joint claims against them, "Gila is responsible for creating and sending notices, while Kapsch is responsible for oversight and is subject to vicarious liability." *Id.* (citing *Barker*, 1:19-CV-987-TWP-MJD, 2020 U.S. Dist. LEXIS 94857, at *30). Moreover, even though Rule 9(b) does not require a Plaintiff to plead intent, the Complaint alleges "that Defendants' conduct is willful and concealed from the public, and that Defendants have incentive to deceive the public regarding their billing practices." *Id.* "Finally," Plaintiffs conclude, the constructive fraud claim survives when the Complaint alleges that "contract provisions assume a fiduciary duty to users of the Riverlink Toll System such as Plaintiffs" and "Plaintiffs are forced to rely entirely on Defendants to treat them fairly" when the parties are in a "buyer-seller relationship." *Id.* at 36.

In reply, Defendants argue that Plaintiff's Complaint "only shows one purported misrepresentation to Outzen." (Filing No. 43 at 22; *see* Filing No. 1-2 at 7 (alleging that the Invoice Date "was inexplicably set for a date before even the date on which the invoice was generated as an electronic image (let alone the date on which it was subsequently reviewed, printed and/or mailed)").) Moreover, the Complaint—contradicting Rule 9's heightened pleading requirements—too generally alleges "that Defendants did not send appropriate notices during a period of three years," as do the "collective, in-the-aggregate references to 'Defendants' or 'Defendant' (without specifying which one).". *Id.* at 22. And because "Plaintiffs have had the benefit of discovery from the *Barker* case," Defendants argue, they should be able to meet Rule 9's more-demanding particularity requirements. *Id.* at 23 (emphasis removed). Defendants also argue that, as for the IDCSA claim, Plaintiff's "newly-raised allegation"—that failing to pay a 1st Toll Notice within 30 days of an invoice date violated Indiana law—does not apply to Outzen (because she alleges she never received a 1st Toll Notice) and the claim, in any event, is not a misrepresentation when Indiana Code section 9-21-3.5-9 instructs that owners of motor vehicles driven through a tollway "shall pay the proper toll or user fee" and failure to do so constitutes a moving violation. *Id.* at 23–24. On top of these deficiencies, "without having ple[]d this misrepresentation in the Complaint, Plaintiffs fail to plead fraud with particularity" or requisite "intent to defraud or mislead." *Id.* at 24. Additionally, Defendants argue that Plaintiffs miss the mark by also alleging (again, for the first time in their brief) that Defendants improperly represented that "the administrative fees charged in the 2nd Toll Notice were charged in compliance with Indiana law" when 135 Ind. Admin. Code section 4-9-2 provides that "Failure of a motorist to pay a toll by an applicable due date shall result in the imposition of fees." *Id.* And, again, Plaintiffs "not only failed to plead this statement in their Complaint, but failed to plead facts satisfying IDCSA's requirement

that Defendants made this representation with an intent to defraud or mislead." *Id.* Finally, Defendants conclude that the "2nd Toll Notice" received by Outzen did "not state that she was provided the 1st Toll Notice or when; it simply assesse[d] a $5.00 administrative fee." *Id.* at 24–25. This is merely an unactionable "implication that the 1st Toll Notice must have been provided to Outzen—because the 2nd Toll Notice was called '2nd.'" *Id.* at 25 (citing *Sims v. New Penn Fin. LLC*, No. 15-cv-0263, 2016 WL 6610835, at *5 (N.D. Ind. Nov. 8, 2016)).

Plaintiffs' fraud-related claims will not be dismissed.  First, Defendants' contention that the claims do not sufficiently specify the "who" under Rule 9's heightened standard fails: the Complaint explicitly alleges that Kapsch hired Gila "to act as its agent and act on its behalf to provide [the] various services" at issue here and that "Kapsch is vicariously liable for all actions, omissions, negligence, willful misconduct, or breach of law or contract, of [Gila] in performing services relating to the RiverLink system." (Filing No. 1-2 at 4–5.) Plaintiffs, then, clearly specify that Gila directly committed the alleged misconduct, with Kapsch variously liable in turn. *See id.* at 4 (alleging that Gila, as Kapsch's agent, was responsible for "image review, account and transponder management, payment, processing, invoicing and video billing, violation processing, and collection and court processing services, relating to RiverLink").

Regarding Defendants' contention that Plaintiffs have failed to allege that any "misrepresentation" occurred, Plaintiffs adequately contend, for example, that Defendants misrepresented to them both on the 2nd Toll Notice that the $5.00 administrative fee was appropriately assessed.  And as for any deficiency in the IDCSA claim relying on an "implication" that a 1st Toll Notice was sent, Indiana Code section 24-5-0.5-3(a) clearly applies to "both *implicit* and explicit misrepresentations." (Emphasis added). And these representations—whether implicit or explicit—were unfair, abusive, and deceptive when Outzen's reasonable interpretation of the

25

Notice was material to her decision to pay the additional fee. *See generally* James R. Strickland, Note, *David's Sling: The Undetected Power of Indiana's Deceptive Consumer Sales Act*, 51 Ind. L. Rev. 211, 219, 219 n.74, 220, 226 (analyzing the IDCSA's categorical bars on "unfair, abusive, or deceptive" acts, omissions, or practices). Moreover, though Defendants contend that Plaintiffs failed to adequately plead "intent to defraud or mislead" in their Complaint, Rule 9 instructs that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In any event, the Complaint alleges a calculated scheme devised by Defendants manifesting their clear intent to mislead motorists into paying unwarranted additional fees (*see, e.g.*, Filing No. 1-2 at 8; *see also* Filing No. 27 at 33 (arguing that Plaintiffs have not alleged a "scheme, artifice or device" under the IDCSA).

Finally, as for duty owed in a constructive fraud claim, this obligation arises from "the existing relationship between the parties," which must be "confidential or fiduciary in nature." *McKibben v. Hughes*, 23 N.E.3d 819, 826 (Ind. Ct. App. 2014). In brief, "Indiana recognizes two types of confidential relationships—those in which a fiduciary relationship arises by operation of law between the litigating parties, and those in which a confidential relationship in fact is shown to exist." *Id.* (quotation omitted). This second type of relationship "may arise where the facts of a given case show a relation of trust and confidence justifying one in relying thereon, even where there is no legal presumption of such trust." *Id.* at 827 (quotation omitted). So, aside from determining whether a fiduciary relationship exists by operation of law, because determining "whether a confidential relationship exists is one of fact to be determined by the finder of fact," *Kalwitz v. Estate of Kalwitz*, 822 N.E.2d 274, 281 (Ind. Ct. App. 2005) (citation omitted), resolving this issue at this motion to dismiss phase is inappropriate.

Defendants' 12(b)(6) Motion to Dismiss is **denied** as to Plaintiffs' claims of Fraud (Count III), Violation of the IDCSA (Count IV), Deception or Intentional Misrepresentation (Count V), and Constructive Fraud (Count VII).

### 7.    Negligence

Count VI of Plaintiffs' Complaint alleges negligence, including accusations of negligent misrepresentation and for negligence *per se* (Filing No. 1-2 at 19–20). To succeed on a negligence claim under Indiana law, a plaintiff must prove three elements: (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty. *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014).

Defendants argue that Plaintiffs' negligence claim should be dismissed because, on top of lacking any "actual" misrepresentation, the economic loss doctrine bars the claim (Filing No. 27 at 35). Defendants maintain that, under binding Indiana precedent, "'a defendant is not liable under a tort theory for any purely economic loss caused by its negligence (including, in the case of a defective product or service, damage to the product or service itself)—but . . . a defendant is liable under a tort theory for a plaintiff's losses if a defective product or service causes personal injury or damage to property other than the product or service itself.'" *Id.* at 36 (quoting *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.* (*IMCPL*), 929 N.E.2d 722, 729 (Ind. 2010). Because "Plaintiffs have not alleged any property damage or personal injury," Defendants contend their negligence claim should fail. *Id.* Moreover, an exception to this general rule—that negligent misrepresentation claims are not subject to the economic loss doctrine—fails because that tort is recognized "in limited circumstances involving the employer-employee context or in a professional setting involving brokers, attorneys, abstractors, and surveyors, or other professionals 'whose primary function is to render actionable professional opinion.'" *Id.* at 36–37 (quoting *Darst*

*v. Illinois Farmers Ins. Co.*, 716 N.E.2d 579, 584 (Ind. Ct. App. 1999)). Additionally, "Plaintiffs fail to adequately allege that Defendants owed a duty of care to Plaintiffs." *Id.* at 38. The "conclusory allegations" of Plaintiff—that Defendants had a duty to use care when invoicing Plaintiff—"are insufficient to establish a legal duty." *Id.* In other words, the Complaint wholly "fails to identify any specific 'applicable law' or provision in 'Defendants' contracts' that purportedly shows or gives rise to this actionable duty." *Id.* (citing *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017)). And though Plaintiffs "attempt to shore up their duty of care allegations by asserting Defendants committed negligence *per se*," that doctrine cannot "'satisfy the duty element of a negligence claim.'" *Id.* at 39 (quoting *Stachowski v. Estate of Radman*, 95 N.E.3d 542, 544–45 (Ind. Ct. App. 2018)). Defendants also note that, relevant to this negligence *per se* contention, "Plaintiffs fail to cite any statute or regulation that Defendants purportedly violated, making it impossible" to determine Defendants' liability under negligence *per se*. *Id.* Defendants conclude that because Plaintiffs also "failed to adequately state their respective claims under the IDCSA," a violation of that statute cannot undergird their negligence *per se* claim. *Id.*

In response, Plaintiffs argue that the economic loss doctrine does not apply to their negligence claims, noting that "Indiana courts rarely, if ever, apply the economic loss doctrine outside of the product liability and construction law context." ([Filing No. 42 at 37](#) (citing *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 636 (7th Cir. 2001)).) This doctrine, Plaintiffs argue, only applies "when damage is suffered 'through loss of value, or use of the thing sold, or the cost of repairing it.'" *Id.* (quoting *KB Home Ind., Inc, v. Rockville TBD Corp.*, 928 N.E.2d 297, 305 (Ind. Ct. App. 2010)). Here, Plaintiffs maintain that they "do not allege any damage to 'the product or service itself' or 'failure of the product or service to perform as expected.'" *Id.* (citing *IMCPL*,

929 N.E.2d at 728). Instead, they merely seek "recoupment of administrative fees—additional property that is totally divorced from the quality or value of the toll roads." *Id.* at 37–38. Thus, this loss is not "the type of economic loss contemplated by the doctrine." *Id.* at 38. Moreover, Plaintiffs are not in a "chain of contracts" with Defendants, which is an important factor in applying the doctrine. *Id.* (citing *IMCPL*, 929 N.E.2d at 728, 736, 740, 741). None of "the principles behind the economic loss doctrine—'(1) to maintain the fundamental distinction between tort law and contract law; (2) protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk'"—apply to this case. *Id.* (quoting *KB*, 928 N.E.2d at 304 (quotation omitted)). Plaintiffs are not "commercial parties," have "no contract with Defendants," and are in "far worse position to assess economic loss than Defendants." *Id.* at 38–39. In any event, even if the doctrine applied, the negligence claim "fall[s] into the negligent misrepresentation exception," permitting it to survive dismissal. *Id.* at 39. As for duty, Plaintiffs contend that they allege Defendants owe "common law duties arising from the contractual obligations they have specifically assumed and their relationship with Plaintiffs." *Id.* at 36.

In reply, Defendants continue to argue that the economic loss doctrine bars Plaintiffs' negligence claim, contending that "Plaintiffs' interpretation of the economic loss doctrine is overly narrow and misinterprets Indiana law." (Filing No. 43 at 25.) Regardless of the industry, Defendants argue, Indiana cases preclude "tort liability for purely economic loss." *Id.* (quoting *Corry v. Jahn*, 972 N.E.2d 907, 916 (Ind. Ct. App. 2012)). Because "Plaintiffs have alleged nothing more than disappointed commercial expectations with their toll experience," Defendants maintain, "the economic loss doctrine applies." *Id.* (citing *JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 785 (7th Cir. 2015)). Moreover, Defendants argue that "Plaintiffs' chain of contracts argument also

misses the mark" because there are "'compelling' reasons for applying the economic loss rule beyond the immediate parties to the underlying contracts." *Id.* at 26 (citing *IMCPL*, 929 N.E.2d at 736). Defendants conclude that the "negligence misrepresentation exception" also does not apply because "Indiana courts only recognize [that tort] in limited circumstances, none of which apply here." *Id.* Indeed, Defendants argue, "[e]xtending the exception to a relationship between the provider of tolling services and consumers would be unprecedented." *Id.* at 27 (citing *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols. LLC*, No. 13-cv-0133-RLY, 2014 WL 6750042, at *7 (S.D. Ind. Dec. 1, 2014); *Prairie Prod., Inc. v. Agchem Div.-Pennwalt Corp.*, 514 N.E.2d 1299, 1304 (Ind. Ct. App. 1987)).

While Defendants urge that the economic loss "doctrine is not limited to products liability and construction law contexts" ([Filing No. 43 at 25](#)), they cite a case in support that involved a "construction contract" where the "[t]he damages claimed are for economic loss, that is, costs of repair and replacement *of the defective product* and diminution in the value *of the product* because it is inferior in quality," *Corry*, 972 N.E.2d at 917 (emphases added). Similarly, the seminal Indiana Supreme Court case applying the economic loss doctrine—*IMCPL*, 929 N.E.2d 722—also involved faulty construction, this time of an underground garage, *see id.* at 725 (noting that an expert confirmed "there were several construction and design defects in the Library parking garage"). Though *IMCPL* noted that the doctrine ordinarily arises in "the products liability context," it determined that construction claims are "'nonetheless subject to the economic loss doctrine'" because they, like products liability cases, evoke the broader framework of claims "'that a product or service did not perform as expected,'" which are "'best left to contract law remedies.'" *Id.* at 737 (quoting *Gunkel*, 822 N.E.2d at 155). Here, that same aim does not animate the claim— that is, Plaintiffs do not maintain that a product or service did not meet their expectations; rather,

they claim that they should have never been charged the administrative fees in the first place. In other words, "'[t]he central theory underlying'" the economic loss doctrine—"'that the law should permit the parties to a transaction to allocate the risk *that an item sold or a service performed does not live up to expectations*'"—does not apply here. *Id.* (quoting *Gunkel*, 822 N.E.2d at 155) (emphasis added). The doctrine, then, does not bar this negligence claim. *See KB*, 928 N.E.2d at 304 (agreeing "that the principles underlying application of the economic loss doctrine to tort actions are (1) to maintain the fundamental distinction between tort law and contract law; (2) protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk") (quotation omitted).

As for duty owed, Plaintiffs' Complaint alleges that "Defendants had a duty to use care when invoicing Plaintiffs and other members of the putative Class in a manner that was accurate and in accordance with the notice and fee provisions required of Defendants by applicable law and Defendants' contracts." (Filing No. 1-2 at 20.) At this 12(b)(6) stage—where the Court accepts all allegations as true—Plaintiffs need not, despite Defendants' protestations, allege more or point to specific contractual language evincing Defendants' intent to assume a duty of care in this context. *Cf. Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017) (examining particular contractual provisions concerning assumption of duty when reviewing trial court's grant of *summary judgment*).  Similarly and finally, Plaintiffs' contention of negligence *per se* may proceed as they have, at this stage, asserted adequate allegations under the IDCSA.  *See supra* Subsection III.B.6.

Defendants' arguments that the Court should dismiss Plaintiffs' negligence claim are unavailing. Therefore, their 12(b)(6) Motion to Dismiss is **denied** as to Plaintiffs' claim for Negligence (Count VI).

### 8. Breach of Fiduciary Duty

The last claim alleged in the Complaint is for Breach of Fiduciary Duty (Filing No. 1-2 at 22–23). "A claim for breach of fiduciary duty in Indiana requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010).

Defendants argue that "Plaintiffs' conclusory allegations fail to allege the existence of a fiduciary relationship between them and Defendants." (Filing No. 27 at 40.) Specifically, there is no "direct connection and relationship of trust and confidence between the two parties." *Id.* (citing *Cincinnati Life Ins. Co. v. Grottenhuis*, No. 2:10-cv-00205-LJM-WGH, 2011 WL 1107114, at *6 (S.D. Ind. Mar. 23, 2011)). The agreement under which Defendants operate RiverLink "imposes fiduciary obligations only with respect to the deposit and transmittal of funds," which "has nothing to do with" Plaintiffs' claims focusing "on the purported notice requirements for generating and mailing toll invoices." *Id.* And even if the two were related, "a party cannot rely on a contractual relationship to create a duty." *Id.* at 41 (citing *Matter of Woldman*, 92 F.3d 546, 547 (7th Cir. 1996)). Defendants argue that Plaintiffs have not pled (nor can they plead) any facts indicating that either Plaintiff lacked knowledge regarding their receipt of the first invoice, or that they were dependent on Defendants' knowledge or expertise. *Id.*

In response, Plaintiffs argue that "Defendants' fiduciary duty is explicitly recognized by the Toll Services Agreement." (Filing No. 42 at 40 (quotation omitted).) And though Defendants

cite "Indiana case law discussing the requirements of a fiduciary duties created by operation of common law[, t]hese cases evidence when a fiduciary duty is created independent of a specific contractual undertaking." *Id.* at 41. Here, Plaintiffs maintain, "Defendants explicitly assumed their fiduciary duty in return for compensation." *Id.* And this assumption "was priced into Defendants' contract in an arm's length negotiation between parties with equal bargaining power." *Id.*

The Complaint alleges that "[i]n their roles fulfilling the duties of the TSP, Defendants assumed and owed a fiduciary duty to Plaintiffs and members of the putative Class as users of the RiverLink Toll Bridges." (Filing No. 1-2 at 22.) Again, at this 12(b)(6) stage, Plaintiffs need not assert more to sufficiently allege that Defendants owed them a fiduciary duty. In any event, as the Court previously recognized, "The Toll Services Agreement specifically says that Defendants, as the Toll Service Providers 'shall have a fiduciary duty to the Joint Board, the States' Parties *and the users of the Bridges*, and shall institute all necessary and proper mechanisms for custody and administration of the tolls.'" *Barker v. Kapsch Trafficcom USA, Inc.*, No. 1:19-cv-987-TWP-MJD, 2020 WL 2832092, at *12 (S.D. Ind. June 1, 2020) (emphasis added) (citation omitted).

Because the Court finds that the Complaint contains sufficient allegations to bring a claim for Breach of Fiduciary Duty against Defendants, their 12(b)(6) Motion to Dismiss that claim (Count VIII of the Complaint) is **denied**.

## IV.   CONCLUSION

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Leave to File Notice of Supplemental Authority in Support of their Motion to Dismiss

Plaintiffs' Complaint (Filing No. 109) and also **GRANTS** Plaintiff's Alternative Motion for Leave

to Respond to Defendants Notice of Supplemental Authority in Support of their Motion to Dismiss

Plaintiffs' Complaint (Filing No. 111). The Court **DENIES**, however, Defendants' Joint Motion to

Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as to all claims (Filing No. 26). All eight

of Plaintiffs' claims remain pending for trial.

       **SO ORDERED.**

Date:  3/10/2021

DISTRIBUTION:

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Jacob R. Cox
COX LAW OFFICE
jcox@coxlaw.com

Jonathon Noyes
WILSON KEHOE & WININGHAM
JNoyes@wkw.com

William E. Winingham
WILSON KEHOE & WININGHAM
winingham@wkw.com

Manuel Herceg
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mherceg@taftlaw.com

Steven T. Henke
HACKMAN HULETT LLP
shenke@taftlaw.com

Tammara Danielle Porter
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
tporter@taftlaw.com

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
tbetz@taftlaw.com

Vivek Randle Hadley
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)

vhadley@taftlaw.com

Irina Kashcheyeva
FOLEY & LARDNER LLP
ikashcheyeva@foley.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
jgarlough@foley.com

Michael D. Leffel
FOLEY & LARDNER LLP
mleffel@foley.com

Robert H. Griffith
FOLEY & LARDNER LLP
rgriffith@foley.com