UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MONIQUE OUTZEN and ROBERT ARDAIOLO, individuals, on behalf, of themselves and all others similarly situated, | | |
| Plaintiffs, | | Case No. 1:20-cv-01286-TWP-MJD |
| vs. | | |
| KAPSCH TRAFFICCOM USA, INC. and GILA, LLC, | | |
| Defendants. | | |

## DEFENDANT GILA, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY

Defendant Gila, LLC ("Gila"), by and through its attorneys, Foley & Lardner LLP, answers

Plaintiffs' Class Action Complaint (the "Complaint") as follows:

## PARTIES, JURISDICTION

1.      Plaintiff, Monique Outzen, is an individual who lives in Indiana. Plaintiff

was invoiced by Defendants for use of the Riverlink toll system bridges.

**RESPONSE:**  Gila admits that Plaintiff Outzen was invoiced for use of the RiverLink

system bridges.  Gila is without knowledge or information sufficient to form a belief as to the truth

of the remaining allegations contained in Paragraph 1 and, therefore, leaves Plaintiffs to their

proofs.

2.      Plaintiff, Robert Ardaiolo, is an individual who lives in Indiana. Plaintiff

was invoiced by Defendants for use of the Riverlink toll system bridges.

**RESPONSE:**  Gila admits that Plaintiff Ardaiolo was invoiced for use of the RiverLink

toll system bridges.  Gila is without knowledge or information sufficient to form a belief as to the

1

truth of the remaining allegations contained in Paragraph 2 and, therefore, leaves Plaintiffs to their proofs.

3.        Defendant, Kapsch TrafficCom USA, Inc., (herein "Kapsch") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Virginia.

**RESPONSE:**   Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 and, therefore, leaves Plaintiffs to their proofs.

4.        Defendant, Gila, LLC, is a limited liability company organized and existing under the laws of the State of Texas and with its principal place of business in the State of Texas. Gila LLC also does business using the name "Municipal Services Bureau" or "MSB."

**RESPONSE:**   Gila admits that it is a limited liability company organized and existing under the laws of the State of Texas and that it does business using the name "Municipal Services Bureau" or "MSB." Gila denies the remaining allegation contained in Paragraph 4.

5.        This Court has personal jurisdiction  over each of the Defendants because they each do business in the State of Indiana, including the transactions at issue in this litigation, and maintain their registered agents in Marion County, Indiana.

**RESPONSE:**   Gila admits that Defendants maintain registered agents in Marion County, Indiana.  Gila states that the remainder of the allegations contained in Paragraph 5 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the remaining allegations contained in Paragraph 5 of the Complaint.

## THE RIVERLINK TOLLING SYSTEM

6.        RiverLink is the Tolling System for the Louisville-Southern Indiana Ohio River Bridges Project, a collaborative effort between the States of Indiana and Kentucky to build, improve, and maintain multiple major bridges over the Ohio River that connect

2

4849-3544-3425.3

Kentucky and Southern Indiana (the "Toll Bridges"), including the new Abraham Lincoln Bridge in downtown Louisville (I-65), the revamping of the existing Kennedy Bridge in downtown Louisville (also I-65), a new East End Bridge connecting the extension of the Snyder Freeway (I-265) with Southern Indiana (state road 265) and the rebuilding of the 1-65, 1-64 and 1-71 interchanges.

**RESPONSE:**  Gila admits the allegations contained in Paragraph 6.

7.       The RiverLink system uses all-electronic tolling, meaning no toll booths. The RiverLink system is operated and administered by a Toll Services Provider ("TSP").

**RESPONSE:**  Gila admits that the RiverLink system uses all-electronic tolling, meaning no toll booths.  Gila admits that the RiverLink system is operated and administered, in part, by a Toll Services Provider.

8.       Drivers and motorists with prepaid accounts and transponders are supposed to pay the lowest toll rates when using the RiverLink system. Answering further, Gila states that the rates are set by the States of Kentucky and Indiana (collectively, the "States").  For these customers, sensors read the transponder and deduct the appropriate toll when the motorist crosses one of the Toll Bridges.

**RESPONSE:**  Gila admits that toll rates for using the RiverLink system are lowest for motorists with prepaid accounts and transponders.  Gila further admits that sensors read the transponder and deduct the toll from the customer's prepaid account.  Gila denies the remaining allegations contained in Paragraph 8.

9.       For Unregistered Vehicle Account ("UVA") consumers - drivers without prepaid RiverLink accounts, or with inadequate balances to pay the toll on an existing account - cameras capture license plates and an invoice (the "1st Toll Notice") is then supposed to be

3

created and mailed to the registered vehicle owner as identified by the Indiana Bureau of Motor Vehicles ("INBMV") and Kentucky Motor Vehicle Licensing ("KY MVL").

**RESPONSE:** Gila admits the allegations contained in Paragraph 9 with respect to UVA consumers driving vehicles registered with the States of Kentucky and Indiana. Gila denies the remaining allegations contained in Paragraph 9.

10.    The 1st Toll Notice may not include any administrative fees or penalties, but may only provide notice of and invoice the motorist for the toll that is due for use of the Tolling Bridge.

**RESPONSE:** Gila admits the allegations contained in Paragraph 10.

11.    If a motorist does not pay the toll within thirty (30) days after receipt of the 1st Toll Notice, the TSP is then authorized to send a "2nd Toll Notice" that includes both the unpaid toll(s) and the assessment of an additional $5.00 administrative fee/penalty.

**RESPONSE:**  Gila answers that if a motorist does not pay the toll within the time determined by the States, the States, through their representatives, have directed TSP to send a 2nd Toll Notice that assesses an administrative fee determined and directed by the States.  Gila denies the remaining allegations contained in Paragraph 11.

12.    If the 2nd Toll Notice is not then paid within thirty (30) days, the TSP is then authorized to send a "Violation Notice" that includes the unpaid toll(s), $5.00 administrative fee/penalty, and an additional $25.00 violation penalty/fee.

**RESPONSE:** Gila admits that the States have directed TSP to send a "Violation Notice" that includes the unpaid toll(s), $5.00 administrative fee, and an additional $25.00 violation fee, all of which are determined and directed by the States, if the 2nd Toll Notice is not paid within the time determined by the States. Gila denies the remaining allegations contained in Paragraph 12.

4

13.        If the Violation Notice is not then paid within thirty (30) days, the TSP is then authorized to send a "Collection Notice" that includes the unpaid toll(s), $5.00 administrative fee/penalty, $25.00 violation penalty/fee, and an additional $30.00 collections penalty/fee.

**RESPONSE:**  Gila admits that the States have directed TSP to issue a "Collection Notice" that includes the unpaid toll(s), $5.00 administrative fee, $25.00 violation fee, and an additional $30.00 collections fee, all of which are determined and directed by the States, if a Violation Notice is not paid within the time determined by the States. Gila denies the remaining allegations contained in Paragraph 13.

14.        If the Collection Notice is not paid, additional fees may then be assessed, collections efforts (including litigation) may be taken, and the TSP can also direct that a hold be placed on the motorist's vehicle registration with the IN BMV and/or KY MVL that will not be lifted until the toll and fees/penalties are paid.

**RESPONSE:**  Gila admits the allegations contained in Paragraph 14 with respect to UVA consumers driving vehicles registered with the States of Kentucky and Indiana. Gila denies that the TSP can direct that a hold be placed on UVA motorist's vehicles with the IN BMV and/or KY MVL to the extent the UVA motorist's vehicle is not registered in Indiana or Kentucky.

## DEFENDANTS' CONDUCT AS TOLL SERVICES PROVIDER

15.        After considering various proposals submitted in response to a Request for Proposals, Defendant Kapsch TrafficCom USA, Inc. was awarded a contract (the "Toll Services Agreement" or "TSA") to act as the Toll Services Provider ("TSP").

**RESPONSE:**  Gila admits the allegations contained in Paragraph 15.

16.        Kapsch then hired Defendant GILA, LLC to act as its agent and act on its behalf to provide various services including image review, account and transponder

5

management, payment processing, invoicing and video billing, violation processing, and collection and court processing services, relating to RiverLink.

**RESPONSE:** Gila admits that it entered into a Subcontract Agreement with Kapsch (Dkt. 76-3), which speaks for itself. Except as expressly admitted, Gila denies the remaining allegations contained in Paragraph 16.

17.    Together, Kapsch and GILA were responsible for and implemented the toll invoicing system for RiverLink.

**RESPONSE:** Gila admits Kapsch entered into a TSA with the Indiana Finance Authority and in turn, Kapsch entered into a Subcontract Agreement with Gila in connection with the RiverLink system. The terms of the agreements speak for themselves. Gila denies the allegations in Paragraph 17 to the extent they are inconsistent with the terms of the TSA and/or Subcontract Agreement.

18.    In its role as TSP, Kapsch owes a fiduciary duty to each user of the Riverlink bridges and system under the Toll Services Agreement.

**RESPONSE:** Gila states that the allegations contained in Paragraph 18 constitute a legal conclusion to which no response is required. To the extent that a response is required, Gila denies the allegations contained in Paragraph 18.

19.    GILA agreed via its contract with Kapsch that GILA's performance of the subcontracted work would be subject to all responsibilities of the TSP as set forth in the TSA.

**RESPONSE:** Gila states that the allegations contained in Paragraph 19 constitute a legal conclusion to which no response is required. To the extent that a response is required, Gila denies the allegations contained in Paragraph 19.

4849-3544-3425.3

20.    GILA thus also owes a fiduciary duty that is owed by the TSP to users of the RiverLink bridges and system.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 20 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 20.

21.    In performing their duties as TSP to provide notice and invoices for tolls, fees and penalties that were assessed to users of the RiverLink bridges and system, Kapsch and GILA operated under the name "RiverLink" rather than their own business names such that it is impossible for users of the RiverLink system to distinguish between the actions of one or the other.

**RESPONSE:**  Gila admits that the notices and invoices for tolls, fees and penalties that assessed to users of the RiverLink bridges and system include contact information for RiverLink. Gila denies the remaining allegations contained in Paragraph 21.

22.    However, upon information and belief, Kapsch and GILA were responsible for services and actions relating to providing notice of tolls, fees and penalties and otherwise invoicing users for their use of the RiverLink bridges and system, including as is at issue in this litigation.

**RESPONSE:**  Gila admits that it performed services pursuant to the terms of the Subcontract Agreement (Dkt. 76-3), which speaks for itself.  Gila denies any allegations in Paragraph 22 that are inconsistent with the terms of the Subcontract Agreement.

23.    Pursuant to the § 7.4 of the TSA, Kapsch is vicariously liable for all actions, omissions, negligence, willful misconduct, or breach of law or contract, of GILA in performing services relating to the RiverLink system.

7

**RESPONSE:**  Gila admits that TSA contains a § 7.4, which speaks for itself.  Gila denies the remaining allegations contained in Paragraph 23.

24.      For these reasons, and subject to additional discovery on these issues, Kapsch and GILA are each wholly liable for the unlawful actions at issue in this litigation, performed to meet the obligations of the TSP under the TSA, and will therefore jointly be referenced as "Defendants" herein.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 24 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 24.

25.      Defendants began to assess and invoice tolls for motorists using the Toll Bridges beginning on December 30, 2016 and through the present date.

**RESPONSE:**  Gila admits the allegations contained in Paragraph 25.

26.      As set forth in the Business Rules adopted by the States, pursuant to Indiana statutory authority, to govern the TSP, Defendants were required to set the due date for any 1st Toll Notice for 35 days after the generation of that invoice.

**RESPONSE:**  Gila denies the allegations contained in Paragraph 26.

27.      The purpose of this 35-day period, as set forth in the Business Rules, is to allow "5 days for invoice generation, quality control and review,  and mailing + 30 Days for Customer to make payment."

**RESPONSE:**  Gila admits that Business Rule CSC-VID-006 provides that "[t]his allows for 5 Days for invoice generation, quality control, and review, and mailing + 30 Days for Customer to make payment." Gila denies the remaining allegations contained in Paragraph 27.

4849-3544-3425.3

28.        However, Defendants did not provide this period of time to even a single user of the RiverLink Bridges over the years they acted as the TSP.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 28.

29.        In fact, Gila programmed the RiverLink  invoicing software to set due dates for just 29 days, or less, after the date on which a 1st Toll Notice was generated.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 29.

30.        "Generated" in this context  does not mean printed or mailed, but means the sending of an electronic file of information to a print-house to insert into a template form and create an electronic file of the 1st Toll Notice.

**RESPONSE:**   Gila admits that "generation" in CSC-VID-006 does not mean printed or mailed. Gila denies the remaining allegations contained in Paragraph 30.

31.        A PDF would then be created using this electronic  file and provided to Defendants for review/approval before printing and mailing.

**RESPONSE:**   Gila admits that certain .pdfs are reviewed and approved before printing and mailing to the customer.  Gila denies the remaining allegations contained in Paragraph 31.

32.        1st Toll Notices were not reviewed, printed, and mailed for days or weeks after generation (if at all).

**RESPONSE:**   Gila denies that all 1st Toll Notices were not reviewed, printed, and mailed for days or weeks after generation (if at all). Gila admits that some 1st Toll Notices were not immediately reviewed, printed, and mailed immediately after generation.

33.        Because of this failure to comply with the requirements of the Business Rules by Defendants, no user of the RiverLink Toll Bridges has been provided the required period of time to pay a 1st Toll Notice.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 33.

9

34.    Defendants further took actions that ensured this fact would be concealed from users of the RiverLink Toll Bridges.

**RESPONSE:**  Gila denies the allegations contained in Paragraph 34.

35.    For example, Gila's invoicing software was programmed to put an "Invoice Date" on each 1st Toll Notice that was at least one day before the date on which that invoice was generated.

**RESPONSE:**  Gila denies the allegations contained in Paragraph 35.

36.    Further, this Invoice Date was not updated to account for the days or weeks between generation of the invoice and the actual review, printing, and mailing of the invoice.

**RESPONSE:**  Gila admits that the Invoice Date is generally not revised following the mailing of an invoice to a customer.  Gila denies the remaining allegations contained in Paragraph 36.

37.    Invoices also were sent in envelopes that utilized a bulk postage process that does not identify the date postage was purchased or the envelope was mailed.

**RESPONSE:**  Gila admits the invoices were sent in envelopes that utilized a bulk postage process. Gila denies the remaining allegations contained in Paragraph 37.

38.    Thus, the recipient of an RiverLink invoice would have no way of knowing when that invoice was mailed except for the "Invoice Date" contained on the invoice - a date that was inexplicably set for a date before even the date on which the invoice was generated as an electronic image (let alone the date on which it was subsequently reviewed, printed and/or mailed).

**RESPONSE:**  Gila denies the allegations contained in Paragraph 38.

10

39.     To make matters worse, Defendants routinely did not send motorists the required 1st Toll Notice, 2nd Toll Notice, Violation Notices, or Collection Notice before imposing escalating penalties onto Riverlink users.

**RESPONSE:** Gila denies the allegations contained in Paragraph 39.

40.     Instead, they inappropriately sent 2nd Toll Notices, Violation Notices, or Collection Notices (the second, third, and fourth levels of invoicing contemplated by the State-approved Business Rules governing the TSP's invoicing process), which imposed additional fees and/or penalties that were unlawful due to Defendants failure to provide a 1st Toll Notice (or subsequent notices) that allowed drivers to pay the toll within the period of time required by the States and prior to the imposition of any additional fees or penalties.

**RESPONSE:** Gila denies the allegations contained in Paragraph 40.

41.     Defendants' failure to send appropriate notice before sending 2nd Toll Notices, Violation Notices, and/or Collection Notices is widespread and affects a large portion of motorists using the RiverLink system.

**RESPONSE:** Gila denies the allegations contained in Paragraph 41.

42.     Upon information and belief, Defendants' have inappropriately charged motorists penalties as part of a scheme with the intent to defraud and mislead, and/or have otherwise failed to cure their misconduct despite notice of the same and opportunity.

**RESPONSE:** Gila denies the allegations contained in Paragraph 42.

43.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers to (i) reimburse them for the damages caused by Defendants' conduct, (ii) halt the dissemination of Defendants' false, misleading and deceptive invoicing system, (iii) correct false impressions and beliefs that have been created in the minds of consumers by

4849-3544-3425.3

Defendants relating to the toll payment process and notice requirements, and (iv) otherwise obtain redress for those who have been inaccurately or wrongfully assessed administrative penalties and fees without prior notice.

**RESPONSE:**   Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 and, therefore, leaves Plaintiffs to their proofs.

44.       Specifically, Plaintiff, Outzen, received a "2nd Toll Notice" that was dated 11/13/2017 in relation to use of the Toll Bridges on May 26 and June 3, 2017, and that included an administrative fee of $5.00 that is expressly not allowed for a 1st Toll Notice by law and Defendants' contract with the States.

**RESPONSE:**   Gila admits that Ms. Outzen was issued a 2nd Toll Notice in relation to use of the Toll Bridges on May 26 and June 3, 2017 that included an administrative fee of $5.00. Gila denies that Ms. Outzen was issued a 2nd Toll Notice dated November 13, 2017. Gila is without knowledge or information sufficient to form a belief as to what Ms. Outzen received. Gila states that the remaining allegations contained in paragraph 44 constitute a legal conclusion to which no response is required.   To the extent that a response is required, Gila denies the remaining allegations contained in Paragraph 44.

45.       Plaintiff, Outzen, did not receive a 1st Toll Notice or otherwise any invoice or notice that a toll was due and owed for use of the Toll Bridges, nor was she provided thirty (30) days to pay a 1st Notice after receipt.

**RESPONSE:**   Gila is without knowledge or information sufficient to form a belief as to what Ms. Outzen received. Gila denies that Ms. Outzen was never issued a 1st Toll Notice.  Gila

12

is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 45 and thus leaves Plaintiffs to their proofs.

46.    Plaintiff, Outzen, was thus assessed a fee and/or penalty without any notice of a toll being due or opportunity to pay that toll within thirty days (of receipt of a 1st Toll Notice) in order to avoid assessment of a fee and/or penalty such as those assessed by Defendants in the 2nd Toll Notice sent to Plaintiff Outzen.

**RESPONSE:**   Gila admits that the 2nd Toll Notice sent to Plaintiff Outzen assessed a fee. Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 regarding Plaintiff Outzen's opportunity to pay in order to avoid assessment of a fee and/or penalty as reflected in the 2nd Toll Notice sent to Plaintiff Outzen.

47.    This Notice was also falsely identified as a "2nd Toll Notice" when in fact no 1st Toll Notice had been provided to Plaintiff Outzen, and the Notice was not, in fact, a "2nd Toll Notice."

**RESPONSE:**   Gila admits that the Notice dated November 12, 2017 was identified as a "2nd Toll Notice."  Gila denies that such identification was false.  Gila is without knowledge or information sufficient to form a belief as to the truth of the allegation that no 1st Toll Notice had been provided to Plaintiff Outzen.

48.    This Notices [sic] further misled Plaintiff, Outzen, as to whether a 1st Toll Notice had been sent by assessing a \$5.00 late fee that the 2nd Toll Notice indicated would only be charged where a 1st Toll Notice had been previously provided to Plaintiff and the toll had then not been paid in the thirty day period after said 1st Toll Notice.

13

**RESPONSE:**  Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to whether such Notices misled Plaintiff and, therefore, leaves Plaintiffs to their proofs.

49.       Plaintiff, Outzen, did not know or have reason to believe that she was inappropriately and unlawfully charged an administrative fee in the 11/13/2017 "2nd Toll Notice" until January of 2020.

**RESPONSE:**  Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to Plaintiff Outzen's knowledge regarding administrative fees. Gila denies that Plaintiff Outzen was charged any administrative fee in a notice dated November 13, 2017.  Gila states that the remaining allegations contained in paragraph 49 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the remaining allegations contained in Paragraph 49.

50.       Plaintiff, Ardaiolo, received a 2nd Toll Notice that was dated April 13, 2017 in relation to use of the Toll Bridges on February 13 and 14, 2017, and that included an administrative fee of $5.00 that may only be lawfully assessed after a 1st Toll Notice is generated and provided to the user with a due date that is thirty-five (35) days after the date on which the 1st Toll Notice was generated.

**RESPONSE:**  Gila admits that Plaintiff Ardaiolo was issued a 2nd Toll Notice dated April 13, 2017 in relation to use of the Toll Bridges on February 13 and 14, 2017 that included an administrative fee of $5.00.  Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 regarding Plaintiff Ardaiolo's receipt of the Notice and, therefore, leaves Plaintiffs to their proofs.  Gila states that the remaining allegations contained in paragraph 50 constitute a legal conclusion to which no response is

14

required.  To the extent that a response is required, Gila denies the remaining allegations contained in Paragraph 50.

51.    Plaintiff, Ardaiolo, was not provided a 1st Toll Notice that complied with these requirements.

**RESPONSE:**  Gila denies that Plaintiff Ardaiolo was not provided with a 1st Toll Notice in relation to use of the Toll Bridges on February 13 and 14, 2017. Gila states that the remaining allegations contained in paragraph 51 constitute a legal conclusion to which no response is required. To the extent a response is required, Gila denies the remaining allegations.

52.    Plaintiff, Ardaiolo, did not know or have reason to believe that he was inappropriately and unlawfully charged an administrative fee until January of 2020.

**RESPONSE:**  Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to Plaintiff Ardaiolo's knowledge regarding administrative fees and, therefore, leaves Plaintiffs to their proofs.

53.    Each of Plaintiffs, Outzen and Ardaiolo, paid the penalties/fees contained in the "2nd Toll Notices" they received in reliance on Defendants' representations and to avoid additional penalties and fees that would otherwise be assessed and that included even the placement of a Vehicle Registration Hold on Plaintiffs' vehicle(s) at the BMV and actions by a collection agencyagainst Plaintiffs.

**RESPONSE:**  Gila admits that Plaintiff Outzen paid the fees associated with the November 12, 2017 2nd Toll Notice and Plaintiff Ardaiolo paid the fees associated with the April 13, 2017 2nd Toll Notice. Gila is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, leaves Plaintiffs to their proofs.

4849-3544-3425.3

54.     Defendants have known since invoicing began for the RiverLink Toll Bridges that they were not providing the required amount of time in calculating a "Due Date" for notices and invoices to UVA consumers.

**RESPONSE:** Gila denies the allegations contained in Paragraph 54.

55.     Defendants have also known since at least 2017 that they were assessing fees and penalties for failure to pay RiverLink invoices that had not actually been printed and mailed, but have not informed the RiverLink users of this fact.

**RESPONSE:**   Gila admits that it became aware in late 2017 that certain RiverLink customers complained that they were assessed, charged, invoiced or provided notice to pay administrative fees or penalties in a second (or other later) Notice of Toll where said individual(s) did not receive a first Notice of Toll; Gila, however, cannot verify that any particular customer did not receive a particular notice, as Gila does not have access to third parties' mail records. Gila denies that it has not informed RiverLink users of this fact.  Gila denies that it knowingly assessed fees and penalties for failure to pay RiverLink invoices that had not been printed and mailed.  Gila denies the remaining allegations contained in Paragraph 55.

56.     Upon information and belief, by late spring or early summer of 2018 and on multiple occasions thereafter, Defendants conducted an analysis that resulted in the identification of hundreds of thousands of users of the RiverLink Toll Bridges who had been assessed millions of dollars in fees and penalties based on their failure to pay 1st Toll Notices, 2nd Toll Notices, and Violation Notices that had never actually been printed or mailed.

**RESPONSE:**  Gila admits that it conducted analyses to identify users of the RiverLink Toll Bridges who had potentially been assessed fees in connection with invoices that potentially had not been printed or mailed.  Gila denies the remaining allegations contained in Paragraph 56.

4849-3544-3425.3

57.     However, despite their superior and long-held  knowledge of this fact and obligation to refund amounts that were erroneously charged, Defendants have not refunded those unlawfully assessed  fees and penalties even to this day (and despite their contractual agreement  with the States to bear the expense  of any refunds  or amounts  owed to UVA consumers due to errors in billing by the TSP).

**RESPONSE:**  Gila states that the allegations contained in Paragraph 57 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 57.

58.     Instead, Defendants have placed their own business and financial interests before the interests of the users of the RiverLink Toll Bridges.

**RESPONSE:**  Gila denies the allegations contained in Paragraph 58.

59.     Such conduct is in direct violation of the fiduciary duty Defendants owe to the users of the RiverLink Toll Bridges.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 59 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 59.

60.     Defendants have received a number of benefits due to their wrongful billing practices and misconduct as alleged herein, including but not limited to such benefits as:

i.     Defendants are paid for their work from the unlawfully imposed fees and penalties.

ii.    Collection of wrongfully-charged fees and penalties that were then cited as evidence of Defendants' success in operating the RiverLink Toll Bridges, used to fund the payments owed to Defendants under the contract with the States, and a basis for

17

additional contract(s) with the States and/or other entities in need of a toll system operator;

iii.    Using the wrongfully-charged fees and penalties as an impetus for UVA consumers to contact RiverLink and provide opportunity for Defendants to attempt to convince those users to convert to a registered account to avoid additional such "late" fees and/or in exchange for "waiver" of the unlawful fees (and thus lowering the overhead and operating costs of Defendants and increasing their profit margin(s) due to the increase in registered and pre- paid accounts);

iv.    The increased number of individuals who are likely to, or do in fact, advance through the levels of invoicing/penalties within the RiverLink invoicing system in conjunction with Gila's right to a 10% contingency fee of all amounts collected (tolls, fees, and penalties) from a UVA consumer who does not pay a Collections Notice (the fourth level of invoicing) by its stated due date;

v.    Interest-free use of the wrongly-assessed fees and penalties after payment (and even if Defendants eventually did refund or waive any such amount(s)).

**RESPONSE:**  Gila denies the allegations contained in Paragraph 60.

61.    All conditions precedent to Plaintiffs' claims and the claims of the Class have occurred, have been performed, or have been excused or waived.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 61 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 61.

18

4849-3544-3425.3

## CLASS DEFINITION AND ALLEGATIONS

62.     Plaintiffs bring this action on behalf of themselves and members of a Class defined as:

**Main Class:**  lindividuals and entities to whom Defendants assessed administrative fees, violation fees, collections fees, and/or penalties arising from their use of the Riverlink Connect Tolling System using Unregistered Video Accounts.

**Subclass 1:**  All individuals and entities to whom Defendants did not send a lst Toll Notice, and/or any subsequent notice/invoice, before assessing administrative fees, violation fees, and/or collections fees associated with the next respective level of invoicing as set forth in the RiverLink Business Rules.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 62 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 62.

63.     ***Numerosity.*** The members of the Class are so numerous that joinder of all members of the Class is impracticable. Upon information and belief, the proposed Class contains hundreds or even thousands of motorists who were wrongfully assessed administrative penalties and fees without notice and whom have been damaged by Defendants' conduct as alleged herein. Individual joinder of each such Class member would be impractical. The precise number of Class members is unknown to Plaintiff at this time.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 63 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 63.

64.     ***Existence and Predominance of Common Questions of Law and Fact.*** This action involves common questions of law and fact, which predominate over any questions

19

affecting individual Class members. These common legal and factual questions include, but are not limitedto, the following:

>  (a)     whether Defendants' representations discussed above are misleading, or objectively reasonably likely to deceive;

>  (b)     whether Defendants' alleged conduct violates public policy;

>  (c)     whether the alleged conduct constitutes violations of the laws asserted;

>  (e)     whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

>  (f)     whether Plaintiff and Class members are entitled to other appropriate remedies, including injunctive relief.

**RESPONSE:**   Gila states that the allegations contained in Paragraph 64 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 64.

65.     ***Typicality.*** Plaintiffs' claims are typical of the claims of the members of the Class because, *inter alia,* all Class members were injured through the uniform misconduct described above and were subject to Defendants' wrongful assessment of administrative penalties and fees without notice. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. Plaintiffs are representatives of the Class and have standing to advance these claims because they were subject to and injured by Defendants' conduct in a manner such that they suffered damages that were proximately caused by Defendants' misrepresentationsand unlawful acts.

**RESPONSE:**   Gila states that the allegations contained in Paragraph 65 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 65.

66.     ***Adequacy of Representation.*** Plaintiffs each wish to represent the Class because Plaintiffs feel that they have been deceived and wrongfully assessed administrative penalties and fees without notice, wish to obtain redress for the wrongs that have been done to Plaintiffs, and also wish to ensure Defendants are not allowed to perpetrate similar wrongs on other consumers and motorists. Plaintiffs will fairly and adequately protect the interests of the members of the Class and do not have interests that conflict with or are antagonistic to the interests of the Class member. Plaintiffs have retained counsel experienced in complex consumer class action litigation and knowledgeable of applicable law to claims for the Class, and Plaintiffs intends to prosecute this action vigorously.

**RESPONSE:** Gila admits that Plaintiffs have retained counsel. Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to Plaintiffs' wishes, intent to protect interests and prosecute the action and, therefore, leaves Plaintiffs to their proofs. Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to Plaintiffs' counsel's experience and knowledge, and, therefore, leaves Plaintiffs to their proofs. Gila states that the remaining allegations contained in Paragraph 66 constitute a legal conclusion to which no response is required. To the extent that a response is required, Gila denies the allegations contained in Paragraph 66.

67.     ***Superiority.*** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants, including the necessity of extensive discovery and the likely need for and use of expert witnesses in relation to the issues raised in this litigation. It would be virtually impossible for the Class, on

an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system would be overwhelmed by such redundant litigation of the same factual issues set forth in this Complaint. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**RESPONSE:**  Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to purported damages suffered (if any) compared to the burden and expense of individual litigation and, therefore, leaves Plaintiffs to their proofs.  Gila states that the remainder of the allegations contained in Paragraph 67 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 67.

68.      Plaintiffs seeks preliminary and permanent  injunctive  and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiffs and all other Class members.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 68 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 68.

4849-3544-3425.3

69.      Unless a Class is certified, Defendants will retain monies received and/or have no obligation to remedy injuries caused as a result of its conduct and in relation to Plaintiffs and Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived and wrongfully assessed administrative penalties and fees without notice.

**RESPONSE:**  Gila denies the allegations contained in Paragraph 69.

70.      Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 70.

## Count I: Unjust Enrichment

71.      Plaintiffs incorporate  by reference and re-alleges each and every allegation set forth in paragraphs 1 through 70 above as if fully set forth herein.

**RESPONSE:**  Gila incorporates by reference as though fully set forth herein its answers to Paragraphs 1-70 of the Complaint.

72.      A measurable benefit was conferred on Defendants by Plaintiffs and members of the putative Class including those amounts paid for penalties and/or administrative fees assessed or invoiced to Plaintiffs and members of the putative Class.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 72.

73.      This benefit was conferred on Defendants at their own behest and was based on Defendants' representation that they had provided a 1st Toll Notice and/or other notices that went unpaid and authorized Defendants to assess additional fees and/or penalties.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 73.

4849-3544-3425.3

74.    It would be unjust for Defendants to retain this benefit because Defendants did not actually provide notice as represented and required to assess the additional fees and/or penalties.

**RESPONSE:**  Gila denies the allegations contained in Paragraph 74.

75.    Due to the unjust enrichment of Defendants, Plaintiffs and members of the putative Class are entitled to a judgment for damages in an amount equal to the value of the benefit conferred on Defendants, as will be determined at trial.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 75 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 75.

## Count II: Money Had and Received

76.    Plaintiffs incorporate by reference and realleges each and every allegation set forth in paragraphs 1 through 75 above as though fully set forth herein.

**RESPONSE:**  Gila incorporates by reference as though fully set forth herein its answers to Paragraphs 1-75 of the Complaint.

77.    Defendants received money from Plaintiffs and the putative Class members, in relation to 2nd Toll Notices and other toll notices to Plaintiffs and the putative Class members that were sent without sending the required 1st Toll Notice and that contained fees and/or penalties that may only be assessed after a 1st Toll Notice is received by a vehicle owner and then not paid within thirty days.

**RESPONSE:**  Gila denies the allegations contained in Paragraph 77.

78.    The circumstances are such that Defendants, in equity and good conscience, ought not to retain that money, as Defendants failed to provide notice that was required to

24

allow opportunity for payment of any tolls owed without assessment of the additional fees or penalties that Defendants included in invoices such as the 2nd Toll Notice.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 78 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 78.

79.     Further, Defendants misrepresented whether such 1st Toll Notice had been sent by identifying an invoice  that purported  to be the "2nd Toll  Notice" and deceived  Plaintiff, Outzen, and the other putative Class members as to whether they had been provided notice (when they had not).

**RESPONSE:**  Gila denies the allegations contained in Paragraph 79.

80.     The  money  provided  to  Defendants  by  Plaintiffs,  and  members  of  the putative Class,  was  provided  by  mistake  of  fact,  without  consideration,  and/or  upon consideration that has failed, and accordingly belongs and should be returned to Plaintiff and the putative Class members.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 80 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 80.

## Count III: Fraud

81.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1 through 80 above as if fully set forth herein.

**RESPONSE:**  Gila incorporates by reference as though fully set forth herein its answers to Paragraphs 1-80 of the Complaint.

82.     Plaintiffs bring this claim individually and on behalf of the Class.

25

4849-3544-3425.3

**RESPONSE:** Gila admits the allegations contained in Paragraph 82. Gila denies that Class treatment of this matter is appropriate.

83.     Defendants made numerous material representations of past or existing fact that were false, including statements regarding whether and when prior notice of tolls had been provided to Plaintiffs and other Class members as set forth above in greater detail.

**RESPONSE:** Gila denies the allegations contained in Paragraph 83.

84.     Defendants made these false material representations of past or existing fact with knowledge or reckless ignorance of their falsity.

**RESPONSE:** Gila denies the allegations contained in Paragraph 84.

85.     Plaintiffs and the Class members each relied upon the false material representations of fact by Defendant, and this reliance proximately caused injury to Plaintiffs and the Class members in the amounts paid for administrative penalties and fees that were unjustified and wrongfully assessed.

**RESPONSE:** Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to Plaintiffs' and Class members' reliance on representations and, therefore, leave Plaintiffs to their proofs. Gila states that the remaining allegations contained in Paragraph 85 constitute a legal conclusion to which no response is required. To the extent that a response is required, Gila denies the remaining allegations contained in Paragraph 85.

86.     Plaintiffs and the Class members are entitled to damages in an amount to be determined at trial as compensation for the injuries they suffered.

**RESPONSE:** Gila states that the allegations contained in Paragraph 86 constitute a legal conclusion to which no response is required. To the extent that a response is required, Gila denies the allegations contained in Paragraph 86.

4849-3544-3425.3

## Count IV: Violation of Deceptive Consumer Sales Act

87.       Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1 through 86 above as if fully set forth herein.

**RESPONSE:**   Gila incorporates by reference as though fully set forth herein its answers to Paragraphs 1-86 of the Complaint.

88.       Plaintiffs bring this claim individually and on behalf of the Class.

**RESPONSE:**    Gila admits the allegations contained in Paragraph 88. Gila denies that Class treatment of this matter is appropriate.

89.       As set forth in the Indiana Deceptive Consumer Sales Act, Indiana Code § 24-5- 0.5-2, Plaintiffs and the Class members are persons who engaged in consumer transactions with Defendants, suppliers.

**RESPONSE:**   Gila states that the allegations contained in Paragraph 89 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 89.

90.       Defendants' conduct, as described more fully above, constitutes a deceptive act.

**RESPONSE:**   Gila states that the allegations contained in Paragraph 90 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 90.

91.       Defendants' deceptive acts were willfully done by Defendants as part of a scheme, artifice, or device with intent to defraud and mislead Plaintiff and the Class members, and thus constitute incurable deceptive acts as set forth under Indiana law.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 91 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 91.

92.        Plaintiffs and the Class members have been damaged by Defendants' deceptive acts and are entitled to a judgment for these damages in an amount to be determined at trial.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 92 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 92.

93.        Plaintiffs and the Class members are further entitled to statutory damages, treble damages and attorneys' fees as set forth in Indiana Code§ 24-5-0.5-4.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 93 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 93.

94.        Further, it is believed that discovery in this litigation will reveal that consumers in other States than Indiana have had their consumer rights violated, as set forth in consumer protection laws in those other States, by Defendants' actions. To the extent that those other States' consumer protection laws require the same legal elements and issues as the Indiana Deceptive Consumer Sales Act (and it is determined the IDCSA does not apply to all Class members' claims) such that common questions of law exist amongst the Class, Plaintiffs anticipate amending this Complaint to set forth claims under those Consumer Fraud Acts.

**RESPONSE:**  Gila is without knowledge or information sufficient to form a belief as to the truth of the Plaintiffs' anticipated Complaint amendment and, therefore, leave Plaintiffs to their proofs.  Gila states that the remaining allegations contained in Paragraph 94 constitute a legal

28

conclusion to which no response is required.  To the extent that a response is required, Gila denies the remaining allegations contained in Paragraph 94.

## **Count V: Deception or Intentional Misrepresentation**

95.      Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1 through 94 above as if fully set forth herein.

**RESPONSE:**   Gila incorporates by reference as though fully set forth herein its answers to Paragraphs 1-94 of the Complaint.

96.      Plaintiff brings this claim individually and on behalf of the Class.

**RESPONSE:**    Gila admits the allegations contained in Paragraph 96. Gila denies that Class treatment of this matter is appropriate.

97.      Defendants knowingly or intentionally  made false or misleading  written statements to Plaintiff and the Class members regarding the notice provided in relation to tolls owed for use of the toll bridge, including specifically false statements regarding whether and when prior invoices and notice had been sent and that Defendants were authorized to assess penalties and/or administrative fees under applicable law.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 97.

98.      Defendants made these false or misleading written statements with the intent to obtain property belonging to Plaintiff and the Class members including but not limited to the money identified as being owed in the invoices sent by Defendants.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 98.

99.      Defendants further made these deceptive statements along with an assertion that Plaintiffs and the Class members, if they did not pay the amounts invoiced, would be assessed additional fees or penalties.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 99.

100.    Defendants' conduct constitutes deception and/or intentional misrepresentation.

**RESPONSE:**   Gila states that the allegations contained in Paragraph 100 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 100.

101.    As a direct and proximate result of Defendants' deception, Plaintiffs and the Classmembers have sustained pecuniary loss in an amount to be proven at trial and are entitled to a judgment for those damages.

**RESPONSE:**   Gila states that the allegations contained in Paragraph 101 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 101.

102.    Pursuant to Indiana Code § 34-24-3-1, Plaintiffs are also entitled to recover additional damages in an amount three times Plaintiffs actual pecuniary loss resulting fromDefendants' deception. Plaintiff is also entitled to recover reasonable attorney fees and expenses.

**RESPONSE:**   Gila states that the allegations contained in Paragraph 102 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 102.

## Count VI: Negligence (Including Negligent Misrepresentation and Negligence *Per Se*)

103.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1 through 102 above as if fully set forth herein.

4849-3544-3425.3

**RESPONSE:**    Gila incorporates by reference as though fully set forth herein its answers to Paragraphs 1-102 of the Complaint.

104.    Plaintiffs bring this claim individually and on behalf of the Class and as an alternative to claims arising out of fraudulent conduct.

**RESPONSE:**    Gila admits the allegations contained in Paragraph 104. Gila denies that Class treatment of this matter is appropriate.

105.    Defendants had a duty to use care when invoicing Plaintiffs and other members ofthe putative Class in a manner that was accurate and in accordance with the notice and fee provisions required of Defendants by applicable law and Defendants' contracts.

**RESPONSE:**    Gila denies the allegations contained in Paragraph 105.

106.    Defendants breached these duties of care by negligently making false and misleading representations regarding whether and when a 1st Toll Notice had been sent prior to assessing  an administrative penalty/fee  and issuing a 2nd Toll Notice, without reasonable grounds for believing that the false and misleading representations were true.

**RESPONSE:**    Gila denies the allegations that Defendants made false and misleading representations regarding whether a 1st Toll Notice had been sent prior to assessing an administrative penalty/fee and issuing a 2nd Toll Notice, without reasonable grounds for believing that the false and misleading representations were true.  Gila states that the remaining allegations contained in Paragraph 106 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the remaining allegations contained in Paragraph 106.

107.    Defendants made these statements for purposes of inducing Plaintiffs and the Class Members to rely on the false and misleading statements and pay the wrongful

31

administrative fee/penalty due to that reliance and for fear of additional penalties/fees and/or a hold being placed on their vehicle registrations.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 107.

108.      Plaintiffs and the Class members reviewed and then justifiably believed and relied upon Defendants' false and misleading statements, and in doing so suffered damages proximately caused by Defendants' breach of duty.

**RESPONSE:**   Gila denies that Defendants made false and misleading statements.  Gila is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 108 regarding Plaintiffs and Class members' review, belief and reliance on Defendants' statements, and therefore, leaves Plaintiffs to their proofs.

109.      Defendants further committed negligence per se through violation of state statutes and regulations including those governing Defendants' ability to assess fees and/or penalties as a TSP for the Toll Bridges as well as Indiana's Deceptive Consumer Sales Act.

**RESPONSE:**   Gila states that the allegations contained in Paragraph 109 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 109.

110.      In relation to the Negligence *per se,* Plaintiffs and the Class members have suffered damages proximately caused by violation of these statutes and regulations, are individuals in a class of persons that were meant to be protected by these various statutes and regulations, and the injuries Plaintiff and the Class members have suffered were of the type the statutes and regulations were meant to prevent.

4849-3544-3425.3

**RESPONSE:**  Gila states that the allegations contained in Paragraph 110 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 110.

111.    Plaintiffs and the Class members have suffered damages proximately caused by Defendants' negligence and breach of duty in an amount to be determined at trial.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 111 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 111.

### Count VII: Constructive Fraud

112.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1 through 111 above as if fully set forth herein.

**RESPONSE:**  Gila incorporates by reference as though fully set forth herein its answers to Paragraphs 1-111 of the Complaint.

113.    Plaintiffs bring this claim individually and on behalf of the Class.

**RESPONSE:**  Gila admits the allegations contained in Paragraph 113. Gila denies that Class treatment of this matter is appropriate.

114.    Defendants owed Plaintiffs and the putative Class members a duty due to their relationship as the TSP for the Toll Bridges and as the sole party in control of information about, and the ability to confirm, whether and when toll notices had been sent to Plaintiffs and the putative Class members.

**RESPONSE:**  Gila denies the allegations contained in Paragraph 114.

115.    Defendants violated that duty by making deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak existed,

including for example specifically by failing to inform Plaintiff and the putative Class members that Defendants had not sent required prior toll notices before sending later toll notices that included fees and/or penalties for failure to pay the prior toll notices (that had never been sent by Defendants or received by Plaintiff and the putative Class members).

**RESPONSE:**  Gila denies the allegations contained in Paragraph 115.

116.    Plaintiffs and the putative Class members relied on Defendants deceptive material misrepresentations of past or existing facts and/or silence when a duty to speak existed.

**RESPONSE:**  Gila denies the allegations that Defendants made deceptive material misrepresentations of past or existing facts and/or silence when a duty to speak existed.  Gila is without knowledge or information sufficient to form a belief as to the truth of the allegation relating to Plaintiffs and the putative Class members' reliance and, therefore, leaves Plaintiffs to their proofs.

117.    Plaintiffs and the putative Class members suffered injury as a proximate result thereof.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 117 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 117.

118.    Defendants gained an advantage at the expense of Plaintiffs and the putative Class members, including but not limited to amounts invoiced and/or paid for fees and/or penalties arising out of the alleged failure to pay the 1st Toll Notice in a timely manner when the 1st Toll Notice had, in reality, actually never been sent to or received by Plaintiffs and the

34

putative Class members such that they had an opportunity to pay it in a timely manner and avoid additional fees and/or penalties.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 118.

119.      Plaintiffs and the putative Class members are entitled to an award of damages, in an amount to be determined at trial, to compensate them for their injuries.

**RESPONSE:**   Gila states that the allegations contained in Paragraph 119 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 119.

## Count VIII: Breach of Fiduciary Duty

120.      Plaintiffs incorporate by reference and re-allege each and every allegation set forthin paragraphs 1 through 119 above as if fully set forth herein.

**RESPONSE:**   Gila incorporates by reference as though fully set forth herein its answers to Paragraphs 1-119 of the Complaint.

121.      Plaintiffs bring this claim individually and on behalf of the Class.

**RESPONSE:**   Gila admits the allegations contained in Paragraph 121. Gila denies that Class treatment of this matter is appropriate.

122.      In their roles fulfilling the duties of the TSP, Defendants assumed and owed a fiduciary duty to Plaintiffs and members of the putative Class as users of the RiverLink Toll Bridges.

**RESPONSE:**   Gila denies the allegations contained in Paragraph 122.

123.      Defendants breached this duty by assessing, charging, invoicing, collecting, and keeping penalties and fees from Plaintiffs and members of the putative Class that were inaccurateand that failed to adhere to notice requirements as set forth above in greater detail.

**RESPONSE:**  Gila denies the allegations contained in Paragraph 123.

124.     Plaintiffs and members of the putative Class suffered damages proximately causedby Defendants' breach of fiduciary duty.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 124 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 124.

125.     Plaintiffs and members of the putative Class are entitled to an award of damages, in an amount to be determined at trial, to compensate them for their injuries.

**RESPONSE:**  Gila states that the allegations contained in Paragraph 125 constitute a legal conclusion to which no response is required.  To the extent that a response is required, Gila denies the allegations contained in Paragraph 125.

## GENERAL DENIAL

Unless specifically admitted herein, Gila denies each and every allegation contained in the Complaint and demands strict proof thereof.

**WHEREFORE**, Gila denies that Plaintiffs are entitled to recover any of the relief prayed for against Gila in the Complaint and requests that this Court enter judgment in Gila's favor, dismissing all of Plaintiffs' claims with prejudice, awarding Gila its costs and attorney's fees, and awarding Gila such other relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Without accepting the burden of proof for any issue for which Gila does not have the burden as a matter of law, Gila sets forth the following additional defenses:

1.     **Failure to State a Claim:** For the reasons stated in Gila's motion to dismiss, Plaintiffs' claims against Gila fail to state a claim upon which relief can be granted. *See* Dkt. 27, pp. 16-29.

36

2.    **Lack of Standing:** For the reasons stated in Gila's motion to dismiss, Plaintiffs' Complaint should be dismissed for lack of standing. *See* Dkt. 27, pp. 31-33; *see also 20th Century Fiberglass v. Indiana State Bd. of Tax Comm'rs*, 683 N.E.2d 1376, 1377 (Ind.T.C. 1997) ("a challenge to standing is an affirmative defense").

3.    **Statute of Limitations**.   For the reasons stated in Gila's motion to dismiss, Plaintiffs' claims for unjust enrichment, breach of fiduciary duty, and violation of the IDCSA are each barred by the two-year statute of limitations applicable to these claims.  *See Schwindt v. Hologic, Inc.*, No. 11-00110, 2011 WL 3806511, at *7 (S.D. Ind. Aug. 26, 2011) (unjust enrichment); *Federal Deposit Insurance Corp. v. Kime et al.,* Case No. 13-0782, Dkt. 42 (citing Ind. Code § 34-11-2-4(a)) (breach of fiduciary duty); Ind. Code 24-5-0.5-5(b) (IDCSA).

4.    **Lack of Jurisdiction**. This Court lacks personal jurisdiction over claims brought by, or on behalf of, residents outside the State of Indiana.

5.    **Failure to Join Necessary or Indispensable Party:** Plaintiffs fail to join indispensable or necessary parties as the entirety of toll revenues, including the administrative fees at issue in Plaintiffs' Complaint, went to the Commonwealth of Kentucky and State of Indiana and were not retained by Gila. *See* Development Agr. §§ 1.39, 1.56, 1.92, 11.8.1 (available at: https://www.in.gov/indot/files/2012-10-16- Interlocal_Agreement.pdf); Kapsch Agr., §§ 2.2.14.3 & Exhibit A (available at: https://www.in.gov/ifa/files/Executed%20Toll%20Services%20 Agreement%20between%20IFA%20and%20the%20Toll%20Services%20Provider.pdf); *see also* Fed. R. Civ. Pr. 19(a); *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1449 (7th Cir. 1990) (affirming dismissal of suit for failure to join indispensable parties).

6.    **Failure to Exhaust Administrative Remedies**: Plaintiffs' claims against Gila may be barred in whole or in part due to Plaintiffs' failure to exhaust administrative remedies. *John C.*

*& Maureen G. Osborne Revocable Family Tr. v. Town of Long Beach*, 78 N.E.3d 680, 695 (Ind. Ct. App.) ("It is well-established that, if an administrative remedy is available, it must be pursued before a claimant is allowed access to the courts," as "failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction."). Specifically, the Toll Notices sent advise recipients regarding their right to dispute any and all tolls listed in the invoices as follows:

| **PAY YOUR TOLLS ON TIME AND SAVE MONEY** | | Failure to pay will result in escalations as depicted in the example below. | |
|---|---|---|---|
| **Notification Process** | **Description** | **Time To Pay** | **Total Fees** |
| 1st Toll Invoice | Tolls | 30 Days | None |
| 2nd Toll Invoice | Tolls + Fees (Administrative $5.00) | 30 Days | $5.00 |
| Violation Notice | Tolls + Fees (Administrative $5.00) = (Violation $25.00) | 30 Days | $30.00 |
| Collections Notice | Tolls + Fees (Administrative $5.00) = (Violation $25.00) = (Collections = $30.00) | 30 Days | $60.00 |

*Nonpayment of the total amount due may result in Additional* **Fees**, *a* **Vehicle Registration Hold** *and/or submittal of debt to* **Collections Agency**.

**Toll Disputes**
You may dispute any or all tolls listed under the Financial Transaction Summary section of this Invoice. Any tolls not disputed must be paid by the due date on this Invoice. Information pertaining to the dispute process and dispute eligibility can be obtained online at www.RiverLink.com or by calling 1-855-748-5465.

*See* Dkt. 76-22, -23. The administrative dispute process, including the dispute form, is provided on RiverLink's website as stated in the Toll Notices. *See* https://riverlink.com/wp-content/uploads/2018/05/Toll_Dispute_Form.pdf (stating the Dispute Form is provided pursuant to KRS Chapter 13B and 135 IAC 4-9-3). Plaintiffs have not alleged that they exhausted their administrative remedies and thus, Plaintiffs' claims may be barred in whole or in part.

7. **Waiver**: Plaintiffs' claims against Gila are barred by the doctrine of waiver because the administrative fees Plaintiffs complain of have been either fully waived or credited to Plaintiffs. Plaintiffs' acceptance of such fee waivers and credits demonstrate that the debt complained of has been discharged and Plaintiffs' claims have been waived. *See Rembold Motors, Inc. v. Bonfield*, 155 Ind. App. 422, 437, 293 N.E.2d 210, 219 (1973) ("As a general rule retention of a check under circumstances implying that it is accepted as payment discharges the debt").

8. **Failure to Mitigate Damages:** As discussed in Gila's motion to dismiss, Plaintiffs have not suffered any damages because Plaintiffs did not pay any additional fees, as any and all such fees have been either fully waived or credited to Plaintiffs Barker and Outzen before this case

38

was commenced. Dkt. 27 at pp. 8, 33; *Barker v. Kapsch et al*, No. 19-cv-00987-TWP-MJD, Dkt. 39-1. To the extent Plaintiffs allege damages beyond the fees that have already been waived or credited, such damages fail because Plaintiffs did not use reasonable diligence to mitigate their damages.

9. **Force Majeure**: Plaintiffs' claims may be barred in whole or in part because Gila's ability to provide appropriate Toll Notices was impossible by an act of another party, RevSpring. *Massachusetts Bay Transp. Authority v. U.S.*, 254 F.3d 1367 (Fed. Cir. 2001) (a party has no duty to perform an obligation if "'performance is rendered impossible or impracticable, through no fault of the party'").

Plaintiffs are hereby put on notice that the applicability of additional defenses may become apparent in the course of discovery and investigation of this case and Gila reserves the right to assert any such defense disclosed at or before the time of trial.

**WHEREFORE,** Gila requests an entry of an order dismissing Plaintiffs' Complaint on its merits and with prejudice. Gila requests judgment in its favor and against Plaintiffs on all counts and claims in Plaintiffs' Complaint and Gila further requests that this Court award it costs, attorneys' fees, and such other and further relief as this Court deems just and equitable.

Dated this 24th day of March, 2021

/s/ Jonathan W. Garlough
Jonathan W. Garlough, #30329-45
Robert H. Griffith (*pro hac vice*)
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Telephone: (312) 832-5702
Facsimile: (312) 832-4700
Email: jgarlough@foley.com
        rgriffith@foley.com

4849-3544-3425.3

Michael D. Leffel (*pro hac vice*)
FOLEY & LARDNER LLP
150 E Gilman St.
Madison, WI 53703
Telephone:  608-258-4216
Facsimile: 608-258-4258
Email: mleffel@foley.com

*Attorneys for Defendant Gila, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2021, a copy of the foregoing document was served by electronic mail to:

Jacob R. Cox
COX LAW OFFICE
1606 North Delaware Street
Indianapolis, IN 46202
jcox@coxlaw.com

Attorneys for Plaintiff


Jonathon B. Noyes
William E. Winingham
WILSON KEHOE WININGHAM LLC
2859 North Meridian Street
Indianapolis, IN 46204
jnoyes@wkw.com
winingham@wkw.com

Attorneys for Plaintiff


Tracy Nicole Betz
Manuel Herceg
Steven T. Henke
Vivek Randle Hadley
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square
Suite 3500
Indianapolis, IN 46204
tbetz@taftlaw.com
mherceg@taftlaw.com
shenke@taftlaw.com
vhadley@taftlaw.com

Attorneys for Defendant Kapsch Trafficcom USA, Inc.


/s/ Jonathan W. Garlough
Jonathan W. Garlough

4849-3544-3425.3