UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MONIQUE OUTZEN, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 1:20-cv-01286-TWP-MJD |
| KAPSCH TRAFFICCOM USA, INC., et al., | ) ) ) |
| Defendants. | ) ) |

**ORDER ON PLAINTIFFS' THIRD MOTION TO COMPEL KAPSCH**

This matter is before the Court on Plaintiffs' Third Motion to Compel Against Defendant, Kapsch Trafficcom USA, Inc., and Motion to Determine the Sufficiency of Responses to Requests for Admission. [Dkt. 224.] For the reasons and to the extent set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I. Background

This case arises out of the Defendants' operation of the RiverLink system, which allows for electronic toll collection for bridges crossing the Ohio River between Southern Indiana and Northern Kentucky. Although the case was filed as a putative class action, Plaintiffs' motion for class certification was denied on September 29, 2021. [Dkt. 186.] Accordingly, as it now stands, this case involves administrative fees of $5.00 that Plaintiffs allege they were improperly charged in addition to their bridge tolls. Plaintiffs Monique Outzen and Melissa Barker allege that the fees they were charged were improper because they were sent "second" toll notices that included the fees when they never received initial toll notices. Plaintiff Robert Ardaiolo alleges

that the fee he was charged was improper because the initial toll notice he received did not give him 35 days from the date the notice was generated to pay his toll in order to avoid the additional fee. Plaintiffs allege that Defendants violated their obligations as toll service providers by sending these improper invoices and charging improper fees and penalties, and assert claims for unjust enrichment, money had and received, negligence, breach of fiduciary duty, fraud, constructive fraud, violation of the Indiana Deceptive Consumer Sales Act, and deception. *See* [Dkt. 217] (Plaintiffs' Statement of Claims They Intend to Prove at Trial).

## II. Discussion

Liability discovery (with the exception of depositions) closed in this case on October 1, 2021. [Dkt. 196.] On September 1, 2021, Plaintiffs served their third set of discovery requests on Defendant Kapsch, which included eighteen document requests, two interrogatories, and nineteen requests for admission. Kapsch served its responses on October 1, 2021. It is these responses (some of which were supplemented on November 16, 2021) that are the subject of the instant motion to compel.

### A. Interrogatory No. 12 and Document Requests Nos. 41, 42, 45, 48, 49, 50, 51, 53, 54, 55, and 57

The resolution of the parties' disputes over Interrogatory No. 12 and Document Requests Nos. 41, 42, 45, 48, 49, 50, 51, 53, 54, 55, and 57 begins and ends with Federal Rule of Civil Procedure 26(b)(1), which outlines the scope of permissible discovery and provides that parties to a civil dispute are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Proportionality is determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Prior to serving the discovery requests at issue in the instant motion, Plaintiffs had conducted extensive discovery in this case. That discovery was proportional at the time, given that the case involved a putative class action in which the parties agreed millions of dollars were at issue. *See* [Dkt. 1] (Notice of Removal pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), which requires that the amount in controversy exceed $5,000,000); [Dkt. 25 at 2] ("Plaintiffs do not currently dispute jurisdiction under CAFA."). Things have changed dramatically, however, now that Plaintiffs' motion for class certification has been denied.[1] Given the extraordinarily small amount that remains in controversy and the extensive information Plaintiffs already have obtained through the discovery process, it is abundantly clear that Kapsch's position is correct—the additional information Plaintiffs seek in these discovery requests is simply not proportional to the needs of the case and therefore is not discoverable.[2] Accordingly, Plaintiffs' motion to compel is **DENIED** as to Interrogatory No. 12 and Document Requests Nos. 41, 42, 45, 48, 49, 50, 51, 53, 54, 55, and 57.

---

[1] The Court recognizes that Plaintiffs have filed a motion to reconsider the class certification ruling. If that motion is granted and one or more classes are certified, Plaintiffs may seek reconsideration of this ruling.

[2] Plaintiffs note, correctly, that this Court has previously overruled objections based on undue burden because the objecting party failed to make a specific showing of what the burden would be, a showing that "typically requires affidavits or other evidence." *See Barker v. Kapsch TrafficCom USA, Inc.*, 2019 WL 8301693, at *2 (S.D. Ind. Aug. 30, 2019). However, in this case, the lack of proportionality is so clear that the Court will not require Kapsch to undergo the expense of making such a showing. *Cf. Struve v. Gardner*, 2020 WL 9602038, at *3 (S.D. Ind. Dec. 10, 2020) ("While Defendants are correct that ordinarily boilerplate objections such as overbreadth are insufficient without more, in this case the overbreadth is so clear on the face of the requests that no more was required of Plaintiffs.").

## B. Interrogatory No. 13

Interrogatory No. 13 reads as follows:

> Identify and describe in detail all efforts made by you to review documents for privilege prior to their production in this litigation, including specifically such information as which documents were reviewed, the manner that documents were identified or gathered for review (including identification of any custodians or search terms used), the specific date(s) they were reviewed, how long it took to review them (in minutes and/or hours), who conducted the review, what privilege(s) were considered or looked for in the review, and whether any privilege was identified, asserted, or relied upon to withhold documents (and, if so, for which documents). When identifying efforts, dates, and documents, please also reference the corresponding and/or related Bates Number(s), privilege log entries, and date(s) of the production(s). Please also include any other information useful or necessary to the purpose of this Interrogatory, which is to obtain information needed to assess the purported reasonableness of attempts to identify, assert and preserve privilege as well as assertions that privileged documents have been produced inadvertently or unintentionally.

[Dkt. 225-1 at 7.] Plaintiffs explain that this interrogatory is a response to "assertions by Kapsch in mid-2021 that it had 'inadvertently' produced hundreds of privileged documents in 2020" and therefore were entitled to "claw back" those documents. [Dkt. 226 at 7.] Plaintiffs take the position that "these documents appear to be within a group of documents that Kapsch asserted (when making the production in mid-2020) were purposefully being produced without regards [sic] to privilege to avoid being required to create a privilege log as had been ordered by the Court in granting Plaintiffs' First Motion to Compel," and therefore the documents may not be clawed back. [Dkt. 226 at 7.] Plaintiffs summarize their version of events as follows:

> To recap, after the Court entered its first Order compelling Kapsch to fully and unequivocally [sic] to Plaintiffs' written discovery, Kapsch informed Plaintiffs it was not claiming privilege for any documents that did not consist of communications with Kapsch's outside counsel and Kapsch or Gila's counsel. As a result, Kapsch produced documents to Plaintiffs on July 31, 2020 and mid-September, 2020 accompanied by a privilege log consisting of just two (2) entries. Kapsch provided a supplemental privilege log, consisting of approximately 370 entries, on October 2, 2020 only after realizing (due to a meet and confer with

4

> Plaintiffs) that the Court's Order required the logging of even communications with litigation counsel when they related to "Phase 2" issues. This supplemental privilege log containing 368 additional entries logging communications between Kapsch's litigation counsel and Kapsch as "attorney-client communications" with no assertion of work product privilege. However, even this log failed to meet the requirements of privilege logs in this Circuit and Kapsch refused to fix deficiencies despite multiple discovery conferences with the Court. Eventually, Plaintiffs were forced to file another Motion to Compel and for Sanctions on this issue in March, 2021.
>
> Around the same time, in March of 2021, Kapsch began to claw-back documents it had previously produced. First, it clawed-back KTC_018600 (a document produced and then used in a deposition without objection more than six months before). See Dkt. 128 at 5. After a discovery conference was held on April 7, 2021, where Kapsch insisted the document was privileged, and Plaintiffs were ordered to delete (and then did delete) the document from their ESI platform and file a Motion to Compel, Kapsch decided that the document was actually not privileged at all based on concerns that "subject matter" waiver would apply due to production and use of the document.
>
> Since then, Kapsch has clawed-back almost 200 documents from its productions, and expanded its number of privilege log entries to more than 4,000 across seven different logs, all the while insisting that any production of "privileged" documents in July or September, 2020 (when accompanied by a privilege log containing just 2 entries) was "inadvertent" and despite reasonable efforts to identify and preserve privilege by Kapsch.

[Dkt. 226 at 8-9.] Plaintiffs argue that they are entitled to the information sought in Interrogatory No. 13 so that they can test the veracity of Kapsch's position that its production of the clawed-back documents was "inadvertent" and determine whether Kapsch took reasonable steps to prevent disclosure of the documents and to rectify the error. If Kapsch's position is not true, Plaintiffs argue, Kapsch has waived privilege as to the documents pursuant to Federal Rule of Evidence 502(b).

Plaintiffs' position ignores the claw-back provision ordered by the Court in this case, which provides, in relevant part:

5

> In the event that a document protected by the attorney-client privilege, the attorney work product doctrine or other applicable privilege or protection is unintentionally produced by any party to this proceeding, the producing party may request that the document be returned. In the event that such a request is made, all parties to the litigation and their counsel shall promptly return all copies of the document in their possession, custody, or control to the producing party and shall not retain or make any copies of the document or any documents derived from such document. The producing party shall promptly identify the returned document on a privilege log. The unintentional disclosure of a privileged or otherwise protected document shall not constitute a waiver of the privilege or protection with respect to that document or any other documents involving the same or similar subject matter.

*See* Dkt. No. 30 in *Barker v. Kapsch Trafficcom USA, Inc.*, 1:19-cv-00987-TWP-MJD (incorporated by reference in [Dkt. 31 at 2]). This broad provision, which is intended to provide protection more broadly than Federal Rule of Evidence 502, is designed to permit parties to produce large quantities of documents during discovery without conducting an exhaustive (and time-consuming) privilege review. Under the provision, as long as the producing party does not **intentionally waive the privilege** with regard to a document—by, for example, using the privileged document as an exhibit or otherwise using the privileged information as a sword—the production of a privileged document does not operate as a privilege waiver. Thus, under the claw-back provision it is irrelevant whether Kapsch's efforts to prevent disclosure of privileged information were reasonable. Indeed, even under the scenario proposed by Plaintiffs—Kapsch choosing to produce the documents without conducting any in-depth privilege review in order to avoid the burden of that review—no waiver would have resulted; Kapsch still would have been entitled to rely on the claw-back provision and claw back any privileged documents unless it intentionally waives the privilege, which it has not done. Accordingly, the information sought in Interrogatory No. 13 is not relevant, and the motion to compel is **DENIED** as to that interrogatory.

### C. Privilege Log Issues

Plaintiffs argue that many of the descriptions in Kapsch's privilege log are inadequate because they "appear to simply be the subject line of the emails in question (though Kapsch did insert the phrase "Email discussing" before some of the email subject lines)." [Dkt. 226 at 13.] Noting that the Court already has admonished Kapsch that "[e]ntries that simply reproduce the subject line of an email generally are not sufficient to show that the email seeks or provides legal advice," [Dkt. 168 at 17], Plaintiffs argue:

> Enough is enough. The Court has advised, conferred with, conjoled [sic], directed, and even ordered Kapsch to provide proper privilege log descriptions over the course of multiple Motions to Compel and more than a dozen discovery conferences over the course of almost two years' time, but to no avail. The continuing and repeated deficiencies in Kapsch's latest privilege log can only be described as a willful disregard for the requirements for asserting privilege in this Court, and any privilege log entry that relies on the copying/pasting of an email subject line without indicating whether legal advice was being sought or provided should be ordered to be a willful waiver and failure to preserve privilege as ordered by this Court such that Kapsch should be ordered to produce the document immediately.

[Dkt. 226 at 14.] Defendants did not address this argument in their response brief.

When the Court addressed this issue previously, it concluded:

> That said, the Court does not find Kapsch's privilege log to be so deficient as to warrant the sanction of privilege waiver requested by Plaintiffs, especially given that it appears likely that the documents in question are, in fact, privileged. Instead, the Court will require the following: Within fourteen days of the date of this Order, one of Kapsch's attorneys of record shall personally review each document listed on Kapsch's most recent privilege log and file an affidavit stating unequivocally that this review confirmed that each document communicates the giving or receiving of legal advice. If that is not true as to any listed document, that document shall be produced to Plaintiffs immediately.

[Dkt. 168 at 17-18.] Plaintiffs, not unreasonably, argue that as a repeat offender, Kapsch should now be subject to a more stringent sanction. The problem is that—with a handful of

7

exceptions—Plaintiffs have not identified which of the entries on Kapsch's 24-page privilege log they believe to be deficient. It is not the Court's duty to wade through the privilege log to identify those entries that "rel[y] on the copying/pasting of an email subject line without indicating whether legal advice was being sought or provided." *See Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) ("It is not this court's responsibility to research and construct the parties' arguments."). Plaintiffs' failure to undertake that task dooms their request for relief with regard to the privilege log as to all but the documents they have specifically identified. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived.").

As for those specific documents that Plaintiffs do identify, the Court agrees that Kapsch's failure to properly identify them after the Court's admonishment constitutes a waiver of the privilege as to those documents, especially in light of Kapsch's failure to address this argument in response to the instant motion. Accordingly, Plaintiffs' motion to compel is **GRANTED** as to those documents, and Kapsch shall produce the following documents to Plaintiffs **within fourteen days of the date of this Order**:

- KTC_3574765; KTC_3574782; KTC_3574795; KTC_3574801; KTC_3575308; KTC_3575324; KTC_3575330; and KTC_3575881[3]
- KTC_3707111

### D. Requests for Admission

Plaintiffs served nineteen requests for admission on Kapsch. Plaintiffs argue that Kapsch's responses to twelve of them are insufficient.

---

[3] Plaintiffs identify "six entries with identical privilege descriptions of 'Email discussing RE: Billing Inquiry [#5200473]'" on page three of the privilege log. There are actually eight such entries. *See* [Dkt. 212-11 at 3].

Requests for Admission are governed by Federal Rule of Civil Procedure 36, which provides that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either."  The Rule further provides:

> **(4)** *Answer.*  If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.
>
> **(5)** *Objections.*  The grounds for objecting to a request must be stated.  A party must not object solely on the ground that the request presents a genuine issue for trial.
>
> **(6)** *Motion Regarding the Sufficiency of an Answer or Objection.*  The requesting party may move to determine the sufficiency of an answer or objection.  Unless the court finds an objection justified, it must order that an answer be served.  On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.  The court may defer its final decision until a pretrial conference or a specified time before trial. Rule 37(a)(5) applies to an award of expenses.

Fed. R. Civ. P. 36(a).  Requests for admission help to define the matters in controversy and expedite the trial by narrowing the issues in dispute.  In evaluating the sufficiency of a party's responses, a court should consider:  (1) whether the denial fairly meets the substance of the request (2) whether good faith requires that the denial be qualified; and (3) whether the qualifications supplied are good faith qualifications.  *United States v. Lorenzo*, 1990 WL 83388 (E.D. Pa. June 14, 1990).

With these principles in mind, the Court will address each response that Plaintiffs assert is insufficient.

*1. Request for Admission No. 1*

Request for Admission No. 1 reads: "Admit that you must follow the Business Rules while performing Toll Service Provider duties for the Riverlink Toll System." [Dkt. 225-7 at 1.] Kapsch responded as follows:

> Kapsch objects to this Request to the extent that it seeks a legal conclusion. *See generally* Federal Rule of Civil Procedure 33(a)(1)(A) (noting that requests for admission may seek admission regarding "facts, the application of law to fact, or opinions about either," but not legal conclusions). To the extent that a response is required, Kapsch admits that it must follow the Business Rules and the Atomic Requirements while performing Toll Service Provider duties for the Riverlink Toll System, but denies that it must follow the Business Rules if the States have provided a differing directive; the States' directives become part of the rules and requirements governing Kapsch.

*Id.* at 1-2.

Plaintiffs argue that Kapsch's answer is insufficient because

> [t]his Request sought admission that Kapsch must follow the Business Rules, but Kapsch admitted that it must follow "the Business Rules **and** the Atomic Requirements," which is not responsive to the Request as asked (especially given that Kapsch argues elsewhere in this litigation that the "Atomic Requirements" supersede the Business Rules). To the extent Kapsch wishes to qualify its answer by stating that another requirement or document also must be followed, it should be required to do so in a clear manner that allows Plaintiffs to determine if this Request is being admitted or denied.

[Dkt. 226 at 28-29.] The Court finds Kapsch's answer to be sufficient. It is clear from the answer that a simple admission would have been ambiguous at best, as it would have omitted the fact that it is Kapsch's position that the Business Rules were not the sole or ultimate source of

10

requirements that Kapsch was obligated to follow. Accordingly, Plaintiffs' motion is **DENIED** as to this request.[4]

*2. Request for Admission No. 2*

Request for Admission No. 2 reads: "Admit all 1st Toll Notices list Due Dates that are 30 calendar days after the 1st Toll Notice's Invoice Date." [Dkt. 225-6 at 4.] Kapsch responded:

> Kapsch has made a reasonable inquiry and that [sic] the information it knows or can readily obtain is insufficient to enable Kapsch to admit or deny. Further, Kapsch notes that the system is configured such that Due Dates are configured to be 30 calendar days after the 1st Toll Notice's Invoice date.

*Id.* at 5. Plaintiffs argue:

> Kapsch does not provide a "detailed description" as to what it did to determine whether it was able to admit or deny this Request, and it is unclear why it would be unable to admit or deny this Request given that it has access to a database containing the Invoice Dates and Due Dates for all 1st Toll Notices. This Request should be deemed admitted, or alternatively Kapsch should be required to provide such a detailed description.

[Dkt. 226 at 29.] However, as Kapsch correctly notes, Kapsch was not required to provide the detailed description sought by Plaintiffs. *See Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 665 (D. Colo. 2005) ("The Advisory Committee notes to Fed. R. Civ. P. 36 state that 'The revised rule requires only that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable by him . . . . Rule 36 requires only that the party state that he has taken these steps.'"). Kapsch's response is sufficient, and Plaintiffs' motion is **DENIED** as to this request.

---

[4] Plaintiffs also argue that Kapsch's objection is improper; however, in light of the fact that Kapsch provided a substantive answer to the request, Kapsch's objection has no effect.

11

*3. Request for Admission No. 4*

Request for Admission No. 4 reads: "Admit the Business Rules do not authorize the TSP to set 1st Toll Notice due dates at 30 days after the notice is generated." [Dkt. 225-6 at 5.] Kapsch responded:

> Kapsch objects to this Request to the extent that it seeks a legal conclusion. *See generally* Federal Rule of Civil Procedure 33(a)(1)(A) (noting that requests for admission may seek admission regarding "facts, the application of law to fact, or opinions about either," but not legal conclusions). To the extent that a response is required, Kapsch understands that directives from the States may permit the TSP to set 1st Toll Notice due dates at 30 days after the notice is generated, and so denies this Request to the extent that it conflicts with this understanding.

*Id.* Again, Kapsch's objection is of no effect, given that Kapsch provided a substantive response to the request.

> Plaintiffs argue that Kapsch's response is insufficient because
>
> Kapsch's answer fails to admit or deny that fact as requested and instead answers with a hypothetical ("to the extent") that admits (or denies) nothing. To the extent Kapsch wishes to qualify its answer, it must first admit or deny the Request and then provide additional detail or qualification.

[Dkt. 226 at 29-30.] While Kapsch's response is not written as clearly as it could be, its meaning is sufficiently clear and unsurprising: Kapsch has denied the request to the extent that it is interpreted to mean that the provisions of the Business Rules were not subject to being overridden by contrary directives from the States. Otherwise, the request is admitted. Accordingly, Plaintiffs' motion is **DENIED** as to this request.

*4. Request for Admission No. 5*

Request for Admission No. 5 reads: "Admit Defendant, Gila, received monetary payments of fees assessed on 2nd Toll Notices from each of Plaintiffs' Damages Class Members." Kapsch responded:

> Deny. Plaintiffs' rejected Damages Class includes "[a]ll individuals and entities who paid administrative fees, violation fees, collection fees, and/or penalties arising from use of the Riverlink Tolling System using Unregistered Video Accounts." However, as Kapsch understands the method by which Plaintiffs would determine the membership of this Damages Class, Damages Class Members may have been assessed administrative fees, violation fees, collection fees, and/or penalties but have not paid those administrative fees, violation fees, collection fees, and/or penalties.

[Dkt. 225-7 at 2.] Plaintiffs' objection to this response is that, in their view, it is based on an interpretation of Plaintiffs' proposed class definitions that is objectively incorrect. That does not make the response insufficient, however; as Plaintiffs acknowledge elsewhere in their brief, "the appropriate remedy for such denial, if it is ultimately determined to be contrary to the evidence or made in bad faith, is pursuant to remedies that may be sought pursuant to Rules 11 and/or 37 and not a Motion pursuant to Rule 36." [Dkt. 226 at 28 n.3.] Accordingly, Plaintiffs' motion is **DENIED** as to this request.

*5. Requests for Admission Nos. 7, 9, 10, and 13*

Request for Admission No. 7 reads: "Admit that you expected to undertake a fiduciary duty to users of the Riverlink Bridges when entering into the TS agreement." [Dkt. 225-6 at 6.] Request for Admission No. 9 reads: "Admit that you were required under the Business Rules to print and mail 1st Toll Notices within 5 days after their generation." [Dkt. 225-7 at 2.] Request for Admission No. 10 reads: "Admit that the Order of Precedence in the TS Agreement

13

determines which document governs where conflicts exist between rules, plans, or other documents setting forth the obligations and requirements of the TSP." [Dkt. 225-7 at 3.]

As to each of these requests, Kapsch responded:

> Kapsch objects to this Request to the extent that it seeks a legal conclusion. *See generally* Federal Rule of Civil Procedure 33(a)(1)(A) (noting that requests for admission may seek admission regarding "facts, the application of law to fact, or opinions about either," but not legal conclusions). To the extent that a response is required, deny. Kapsch was required to comply with the States' directives.

[Dkt. 225-6 at 6, Dkt. 225-7 at 2, Dkt. 225-7 at 3.] Request for Admission No. 13 reads: "Admit that the TSP is responsible under the TS Agreement for the cost and payment of refunds necessitated due to invoicing errors by the TSP." [Dkt. 225-7 at 3-4.] Kapsch responded:

> Kapsch objects to this Request to the extent that it seeks a legal conclusion. *See generally* Federal Rule of Civil Procedure 33(a)(1)(A) (noting that requests for admission may seek admission regarding "facts, the application of law to fact, or opinions about either," but not legal conclusions). To the extent that a response is required, deny. "[I]nvoicing errors" is not a defined term within the TS Agreement. The TS Agreement does not contain a requirement for Kapsch to pay for the States' error(s). Kapsch's occasional business decision to not charge or to offer a refund to the States was not a requirement under the TS Agreement.

*Id.*

Plaintiffs' only argument regarding these responses is that the objections are improper. The objections have no effect, however, inasmuch as Kapsch has made substantive responses to the requests. The responses are sufficient, and, accordingly, Plaintiffs' motion is **DENIED** as to these requests.

    *6. Request for Admission No. 11*

Request for Admission No. 11 reads: "Admit that the Requirements Traceability Matrix ('RTM') is subordinate to the Business Rules pursuant to the Order of Precedence set forth in the

14

TS agreement as it relates to invoicing requirements for UVAs." [Dkt. 225-7 at 3.] Kapsch responded:

> Kapsch objects to this Request to the extent that it seeks a legal conclusion. *See generally* Federal Rule of Civil Procedure 33(a)(1)(A) (noting that requests for admission may seek admission regarding "facts, the application of law to fact, or opinions about either," but not legal conclusions). To the extent that a response is required, deny. The Atomic Requirements reflect the States' more recent directives when compared with the Business Rules, and using the Atomic Requirements was approved by the States in the Testing Readiness Review as the official system parameter source file for System Acceptance testing—Kapsch followed the States' directives.

*Id.* Plaintiffs argue:

> This Request asks only that Kapsch admit that the Business Rules fall into a category of documents that is higher in the Order of Precedence than the Requirements Traceability Matrix. This Request does not reference a Testing Readiness Review or whether alternative directives were later given (which appears to be where Kapsch argues a legal conclusion exists, whether later directives were given that conflict with or change the Order of Precedence), and any objection to "legal conclusion" should be overruled.

[Dkt. 226 at 32.] The Court agrees with Plaintiffs that Kapsch's substantive response does not appear to respond to the request. Accordingly, that response is **STRICKEN**. However, inasmuch as the request is simply asking Kapsch for an interpretation of the language of the Business Rules, it is improperly seeking a legal conclusion. Accordingly, Kapsch's objection on that ground is well-taken. Plaintiffs' motion is therefore **DENIED** as to this request.

  *7. Requests for Admission Nos. 17 and 18*

Request for Admission No. 17 reads: "Admit that the requirements of CSC-VID-006, as set forth in the Business Rules, have not changed since tolling on the Riverlink Bridges began in December, 2016." [Dkt. 225-7 at 4.] Kapsch responded:

15

> Kapsch objects to this Request to the extent that it seeks a legal conclusion. *See generally* Federal Rule of Civil Procedure 33(a)(1)(A) (noting that requests for admission may seek admission regarding "facts, the application of law to fact, or opinions about either," but not legal conclusions). To the extent that a response is required, deny. The States provided directives since December 2016, and Kapsch has followed the States' directives.

*Id.* Plaintiffs argue that

> [t]his Request seeks admission that the requirements of a specific rule, within the written Business Rules, have not changed since December, 2016, and requires no more than confirmation that the language of that rule has not been changed as set forth in the Business Rules (it has not). No legal conclusion is required in answering this Request and this objection should be overruled.

[Dkt. 226 at 33.][5] The problem with Plaintiffs' argument is that the request does not ask for "confirmation that the language of the rule has not changed," but rather asks whether the "requirements" of one of the Business Rules' provisions has changed. Given Kapsch's consistent position that the requirements set forth in the Business Rules were subject to being changed by other directives from the States, Kapsch's response to this request is sufficient.

Similarly, Request for Admission No. 18 reads: "Admit that, since tolling began on the Riverlink Bridges in December, 2016, you have not issued even a single 1st Toll Notice that complies with the complete requirements for invoicing UVAs as set forth in Business Rule CSC-VID-006." [Dkt. 225-7 at 4.] Kapsch responded:

> Kapsch objects to this Request to the extent that it seeks a legal conclusion. *See generally* Federal Rule of Civil Procedure 33(a)(1)(A) (noting that requests for admission may seek admission regarding "facts, the application of law to fact, or opinions about either," but not legal conclusions). To the extent that a response is required, deny. Kapsch complied with the States' directives.

---

[5] Once again, the Court notes that Kapsch's objections have no effect with regard to requests to which they also made a substantive response.

16

*Id.* Plaintiffs argue:

> Again, this Request asks only that Kapsch admit the requirements of CSC-VID-0064 have not [sic] complied with for even a single invoice, which could be determined by reviewing database information available to Kapsch to confirm that the "Due Date" on Riverlink 1st Toll Notices has never been set for 35 days after its generation (which it has not) where that invoice was also mailed within five days of generation (determined by the "Mail Date"). This is a factual question and does not require legal analysis or conclusions, and Kapsch's objection should be overruled.

[Dkt. 226 at 33.] For the same reason set forth with regard to Request for Admission No. 17 above, the Court finds that Kapsch's response to this request is sufficient and **DENIES** Plaintiffs' motion as to this request.

### 8. Request for Admission No. 19

Request for Admission No. 19 reads: "Admit that there were more than 270,000 Missing Invoices during the period of time between December 31, 2016 and December 31, 2017." [Dkt. 225-7 at 4-5.] Kapsch responded:

> After making a reasonable inquiry, the information Kapsch knows or can readily obtain is insufficient to admit or deny that over 270,000 invoices were not received by Riverlink customers who were later assessed a fee associated with an invoice they did not receive. Further, upon information and belief, Kapsch suspects that this Request for Admission is false, because there were more than 270,000 aging cycles impacted by the Missing Invoice issue, but fewer than 270,000 aging cycles required a refund based on the Missing Invoice Issue.

*Id.* at 5. Plaintiffs argue:

> Again, Kapsch asserts that it has made a "reasonable inquiry" that leaves it unable to admit or deny Plaintiffs' Request, but does not provide the detailed description of the efforts it made or why it is unable to admit or deny this Request. More importantly, Kapsch also asserts that it cannot admit or deny whether 270,000 invoices were "received," but this was not the subject of this Request—"Missing Invoice(s)" is defined in the definitions of the RFAs to mean "all instances where a Riverlink Toll Notice was not printed and mailed but still served as the basis for the assessment of a penalty or fee when that Toll Notice was not paid." Finally,

17

> the additional information provided by Kapsch, if anything, appears to indicate that Kapsch has reviewed information evidencing that it could admit this Request, as Kapsch states that more than 270,000 aging cycles were impacted by the Missing Invoice Issue. Given this multitude of issues, Kapsch's response to this Request should be deemed insufficient and the Court should order that this Request is deemed admitted.

[Dkt. 226 at 34.]   As noted previously, Kapsch was not required to provide a "detailed description" of its efforts to admit or deny this request. While Plaintiffs may be highly skeptical of Kapsch's response, the response is not insufficient. Kapsch has adequately explained why it believes it is unable to admit or deny this request. Further, Kapsch's use of the word "received" is not problematic; if no invoice was "printed and mailed" to a customer, then that customer did not receive an invoice. Accordingly, Plaintiffs' motion is **DENIED** as to this request.

### III.  Conclusion

For the reasons and to the extent set forth above, Plaintiffs' Third Motion to Compel Against Defendant, Kapsch Trafficcom USA, Inc., and Motion to Determine the Sufficiency of Responses to Requests for Admission, [Dkt. 224], is **GRANTED IN PART** and **DENIED IN PART**.

SO ORDERED.

Dated:  27 JAN 2021

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

18

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.