UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MONIQUE OUTZEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:20-cv-01286-TWP-MJD |
| ) | |
| KAPSCH TRAFFICCOM USA, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS
AND KAPSCH'S MOTION TO COMPEL**

This matter is before the Court on Plaintiffs' Motion for Sanctions Against Defendant, Kapsch Trafficom USA, Inc., [Dkt. 211], and Defendant Kapsch's Motion to Compel, or, Alternatively, for Sanctions Under Rule 37(c) for Failure to Timely Supplement an Earlier Response, [Dkt. 296]. For the reasons set forth below, both motions are **DENIED**.

**A. Plaintiffs' Motion for Sanctions [Dkt. 211]**

In Plaintiffs' motion for sanctions, Plaintiffs assert that Kapsch has failed to comply with the Court's Order on Plaintiffs' second motion to compel directed at Kapsch, [Dkt. 168] (hereinafter "the Order"), and argue that, given Kapsch's repeated failures with regard to its discovery obligations,

> which have been ongoing for years and that have not been corrected despite repeated Orders by the Court and dozens of meet and confers and discovery conferences, the only appropriate sanction is to enter a default judgment against Kapsch. Kapsch has exhibited the willfulness, bad faith, and fault required for such an entry, and the pattern of that misconduct, as documented in the hundreds

of pages of discovery motions and discovery reports on this Court's docket, speaks for itself.

[Dkt. 213 at 21.] In fact, the Court noted in the Order that Kapsch's conduct during the discovery process" has fallen far short of what the Court expects from litigants" and acknowledged "Kapsch's indisputable failure to comply with the *Barker* Order [on Plaintiffs' first motion to compel] and its failure to respond to Plaintiffs' second set of discovery requests in a timely manner." [Dkt. 168 at 28.]¹

That said, Plaintiffs' motion is brought pursuant Federal Rule of Civil Procedure 37(b)(2)(A), which provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders[, which] may include . . . rendering a default judgment against the disobedient party." As the Seventh Circuit has explained,

> Rule 37 itself does not specify a requisite mental state, but in *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S. Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958), the Supreme Court concluded that Rule 37 should not be construed to authorize dismissal of an action when a plaintiff's failure to comply with his discovery obligations was due to his inability to comply rather than his "willfulness, bad faith, or any fault." *See also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976) (per curiam) (reaffirming that holding). Fault, in contrast to wilfulness [sic] or bad faith, does not require a showing of intent, but presumes that the sanctioned party was guilty of "extraordinarily poor judgment" or "gross negligence" rather than mere "mistake or carelessness." *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992); *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) ("[f]ault in this context suggests objectively unreasonable behavior"); *see also e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642–43 (7th Cir. 2011) (distinguishing degree of fault necessary to support dismissal or default from that necessary to support lesser sanctions).

---

¹ The Court set out the unfortunate course of discovery in this case in great detail in the Order, [Dkt. 168], and will not repeat it here.

*Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). In this case, Plaintiffs simply have not demonstrated that Kapsch failed to comply with the Order such that the ultimate sanction of default judgment is appropriate.

The crux of Plaintiffs' motion is their belief that Kapsch has failed to "provide complete and unequivocal responses" to Plaintiffs' discovery requests as required by the Order. This is evidenced, Plaintiffs argue, by the fact that Kapsch has supplemented its discovery responses and its privilege log since the deadline for complying with the Order, and by the fact that depositions have revealed that there are individuals whom Plaintiffs believe Kapsch should have included as document custodians whose files were searched in the discovery process. But Plaintiffs have not demonstrated that Kapsch's failure to produce (or log) the documents contained in their supplemental responses earlier was sanctionable conduct. While in a perfect world, the sources searched by Kapsch to find these new documents would have been identified sooner, there is simply no indication that Kapsch's failure to do so was anything more than "mere mistake or carelessness."

With regard to the two individuals whom Plaintiffs believe were improperly excluded as custodians, Armin Irzl and Kimberly Neal-Smith, Kapsch has presented rational explanations for why their documents were not searched. Kapsch explains that Irzl's "primary job responsibility was technical—he was a software engineer. (*See generally* Ex. 4, Aug. 2021 Kapsch Dep. 67:22–68:6 (discussing function of Irzl as a systems architect). He had no input into the Business Rules, which were drafted before his arrival and implemented after he left." [Dkt. 230 at 14.] It is therefore reasonable that Kapsch would not have searched Irzl's documents. With regard to Kimberly Neal-Smith, Kapsch explains that her "involvement in the RiverLink project began years after the 2017 events giving rise to th[is] litigation" and that she "dedicated only

3

25% of her time to the customer service aspect of the Riverlink project, with no involvement in the 'back office' invoicing system." [Dkt. 230 at 15, 16.] While Plaintiffs assert that "Ms. Neal-Smith's role had expanded in 2020 (when Vivian Raines was removed from her position overseeing Riverlink due to a demand by the States) such that she was involved in communications about Missing Invoice issues relevant to this litigation in 2020 and 2021," the deposition excerpts cited by Plaintiffs do not support that assertion.  Rather, on June 17, 2020, Raines, who at that time was the senior project manager for the RiverLink project, testified that Kimberly Neal-Smith was a relatively new Kapsch project manager who "provide[d] support to [Raines] when needed" and who spent 25% of her time on RiverLink, handling the customer service side of the project, not the "back office system." [Dkt. 230-2.]  On August 19, 2021, Raines, on behalf of Kapsch, testified that she no longer worked on the RiverLink project and that she had been replaced as the RiverLink senior project manager by Christian Tapia. [Dkt. 242-2 at 14.]  She further testified that Neal-Smith continued in her role as project manager when Tapia took over as senior project manager.  *Id.* at 22 (Answer affirmatively when asked:  "So Christian essentially replaced you, but Ms. Smith continued on in her role?").  Although Neal-Smith apparently was copied on some responsive documents, given her limited role on the RiverLink project, it is reasonable that Kapsch did not include her as a custodian.  While perhaps reasonable minds could disagree on the issue of whether Neal-Smith and Irzl were appropriate document custodians, Kapsch's decision not to include them had a rational basis and therefore is not sanctionable.

 Plaintiffs also argue that Kaspch failed to comply with the Order in several additional ways.  First, with regard to Interrogatory No. 2, Plaintiffs argue that Kapsch has refused to "identify each of its employees' relevant documents by certifying that the Bates ranges provided

in responding to that Interrogatory included all relevant documents possessed by its employees." *See* [Dkt. 168 at 25-26] (Court stating in the Order: "With regard to Kapsch's own current or past employees, the Court finds this to be adequate if the employee in question is one of the custodians whose records have been searched and produced as kept in the usual course of business and Kapsch certifies that all relevant documents possessed by each current employee are included in the referenced business records."). Kapsch acknowledges that its certification did not "include an explicit certification that all relevant documents possessed by each custodian are referenced in Kapsch's response to Interrogatory 2." [Dkt. 230 at 12.] While such a certification would have been preferable, its omission is not sanctionable, given that, as discussed below, Kapsch has provided a broad certification that its responses were complete.

Next, Plaintiffs argues that Kapsch has improperly limited its production of documents to those that existed at the time of its November 2020 document collection. However, that issue was not brought before Court for resolution and therefore was not addressed in the Order,[2] although "counsel for Plaintiffs has been well aware that Kapsch was taking this position since March 19, 2021." [Dkt. 230 at 16] (citing [Dkt. 124-17]). Kapsch's position that it should not be required to continue to search for newly-created potentially responsive documents, especially given that this case currently involves only the individual Plaintiffs' claims, is, again, not sanctionable.[3]

---

[2] Plaintiffs did raise this issue in their third motion to compel Kapsch, [Dkt. 226], which was filed several months after the Order was issued, but only with regard to Plaintiffs' third requests for production, which were served in September 2021, also after the Order was issued.
[3] The Court notes that the *Barker* case was originally filed in state court on February 8, 2019, and the events out of which the individual Plaintiffs' claims arise occurred in 2017 and early 2018. Plaintiffs do not explain how, given the extensive discovery responses they have received,

> Plaintiffs further complain that
>
>> Kapsch has also refused to supplement its response to Interrogatory Nos. 4 and 11 to identify whether and which information sought by Plaintiffs is definitively contained in the databases referred to by Kapsch in its Rule 33(d) designation. This remains problematic and prejudicial in that Kapsch argued to the Court on class certification that the database and spreadsheets produced by Defendants do not definitively identify who was impacted by a Missing or Late Invoice (and the Court relied on that in denying class certification), but Kapsch has referenced and continues to reference those same sources pursuant to Rule 33(d) in responding to discovery requests for that very information.
>
> [Dkt. 213 at 15.] The Court addressed this argument in the Order as follows:
>
>> Finally, Plaintiffs also note that, in the course of briefing the class certification issue, Kapsch argues that whether a given person received a second notice without receiving a first notice cannot necessarily be determined from the Titanium Database. Kapsch stated:
>>
>>> While some of Defendants' records suggest certain individuals may not have been sent certain notices (and for purposes of the remediation plan it is being assumed out of an abundance of caution that the notices were not sent), those business records themselves are not definitive. Indeed, some individuals who Defendants could not confirm had been sent such a notice actually made timely payments, suggesting that they were notified, and clearly showing that they were not injured. (Kennedy Dec. ¶¶ 21-22.) To that extent, Plaintiffs seek to litigate what appears to be an internal record-keeping anomaly that had no impact on any putative class member. Thus, contrary to Plaintiffs' repeated claim that class litigation could be conducted by simply reviewing Defendants' records, there would be a need for individualized inquiry to determine who in fact did not receive a notice.
>>
>> [Dkt. 93 at 55-56.]  While the Plaintiffs' frustration with this argument is understandable, it does not contradict Kapsch's assertion that the Titanium Database is "the universe of relevant information and documents that are responsive to Interrogatory 11 and RFP 3." [Dkt. 124 at 18.] It is not clear to the Court what "individualized inquiry" [Plaintiffs] believe[] would produce better

---

discovery of documents created since early November 2020 would be proportional to the needs of this case.

6

> evidence than Gila's contemporaneous business records, but it is clear that Kapsch does not have any better evidence than those records at this time.

[Dkt. 168 at 23-24.] Despite being given every opportunity to do so, Plaintiffs have not demonstrated that Kapsch's assertion that Plaintiffs can ascertain the answers to the interrogatories from the database as easily as Kapsch can is incorrect; therefore, pursuant to the Order, Kapsch has satisfied the requirements of Rule 33(d) with regard to Interrogatories Nos. 4 and 11. *See, e.g.*, [Dkt. 168 at 21] ("Interrogatory No. 4 is a paradigmatic example of an interrogatory that is properly answered by invoking Rule 33(d). It requests detailed information about a huge number of individuals, and all of the requested information is maintained in Gila's business records—specifically, the Titanium Database. However, in order to comply with Rule 33(d), Plaintiffs must be able to utilize the database to ascertain the relevant information as easily as Kapsch can."). Kapsch complied with the Order with regard to these interrogatories.

Finally, Plaintiffs take issue with the manner in which Kapsch has summarized its obligations under the Order, particularly in Kapsch's Notice of Compliance with Order on Motion to Compel, [Dkt. 176]. Plaintiffs summarize the discrepancy as follows:

| Court's Order Granting Mtn to Compel (Dkt. #168 at 27) | Description of Court's Order as Set Forth in Kapsch's Notice of Compliance, (Dkt. #176 at 1). |
|---|---|
| 1) Kapsch shall provide complete and unequivocal responses to both sets of Plaintiffs' discovery requests, | 1) [Kapsch shall] supplement its response an [sic] interrogatory regarding RevSpring; |
| 2) complete its document production, and | 2) ensure that Plaintiffs have access to the Titanium Database in the form that Gila or Kapsch would use to find the data requested by Plaintiffs; and |
| 3) provide the affidavit regarding their privilege log ordered above, and | 3) file an affidavit confirming that the documents listed on Kapsch's privilege log are, in fact, protected. |
| 4) shall file a certification pursuant to the penalties for perjury that it has done so. | |

7

[Dkt. 213 at 6.]  The fact is, however, that Steve Henke submitted a declaration in which he stated that "it is my belief that Kapsch's responses to Plaintiffs' discovery requests are complete (but for Kapsch's responses to Plaintiffs' First Set of Requests for Admission, Plaintiffs' Second Set of Interrogatories, and Plaintiffs' Third Set of Requests for Production, all of which were served yesterday evening)."  [Dkt. 176-2 at 3.]  Henke and another Kapsch attorney, James Dawson, submitted declarations that together satisfied the Court's requirement of an affidavit regarding Kapsch's privilege log.  [Dkt. 176-1 and 176-2.]  While, as set forth in detail in the Order, Kapsch's conduct during the course of discovery prior to the Order was objectionable in several respects, the Court finds that Kapsch substantially complied with both the spirit and the letter of the Order.  Accordingly, Plaintiffs' motion for sanctions based on the failure to comply with the Order is **DENIED**.

### B.  Kapsch's Motion to Compel [Dkt. 296]

Kapsch's motion to compel relates to Plaintiffs' responses to Kapsch's interrogatories regarding Plaintiffs' damages.  Plaintiffs responded to the interrogatories with regard to the putative class they would like to represent in this case, rather than individually.  The problem with that is two-fold:  one, Plaintiffs' motion for class certification has been denied, so unless and until their motion to reconsider that denial is granted, this case is not proceeding as a class action; and two, the interrogatories at issue—which were served after the denial of class certification—asked for "an itemization of all damages [each of the three named Plaintiffs] is seeking in this case," not for information about class-wide damages.  Plaintiffs' arguments to the contrary are without merit, and Plaintiffs' initial refusal to respond to the interrogatories as written was not reasonable.

Nonetheless, Kapsch's motion to compel should never have been filed. This is made clear on page four of the motion, which concedes that Plaintiffs' counsel had already agreed to provide the supplemental responses at issue before the motion was filed. That is the entire point of the meet and confer requirements of Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37(a)—to avoid wasting the Court's resources on discovery motions raising disputes that could be worked out between the parties without Court involvement.

Kapsch asserts that its motion was necessary because Plaintiffs would not agree to provide the supplemental responses prior to the close of discovery, April 22, 2022, and thus

> Plaintiffs' actions have left Kapsch to choose between a bad option and a worse one: seek intervention by the Court on an issue that might be resolved by the time the Court were to rule on the motion, or wait for Plaintiffs' promised supplementation (to take place after discovery closes) and waive the right to file a discovery motion if Plaintiffs do not follow through (or do not fully and completely comply) with supplementation. *See, e.g., Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (no abuse of discretion in denying motion to compel filed after discovery closed); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D. Ill. 2005) (noting that motions to compel filed after the close of discovery are almost always deemed untimely). In order to preserve its rights, Kapsch has filed this motion. It should never have needed to choose between these options.
>
> Discovery closes tonight. Plaintiffs had ample opportunity to supplement their responses before today (at least 15 days since Kapsch first objected and 10 days since the parties' meet and confer). And Kapsch has been damaged by this delay. As of midnight tonight, when discovery closes, Kapsch has no ability to conduct any further discovery based on the responses Plaintiffs may (or may not) provide next week. *Cf. Lancelot Inv'rs Fund, L.P. v. TSM Holdings, Ltd.*, 2008 WL 1883435, at *6 (N.D. Ill. Apr. 28, 2008) (noting that damages disclosure after the close of discovery is "palpably unfair and prejudicial").

[Dkt. 297 at 9.] This argument is simply incorrect. Kapsch cites *Packman* as holding that there was "no abuse of discretion in denying motion to compel filed after discovery closed," but what the Seventh Circuit actually said in that case was the following:

9

> Based on the timing and the substance of Ms. Packman's motion, we conclude that the district court did not abuse its discretion in denying the motion. Although Ms. Packman had complaints about Ms. Tremont's deposition and the adequacy of defendants' responses to her discovery requests before the close of discovery, and despite the court's warning that she should not "tarry" in filing a motion to compel, she waited to file her motion to compel until after discovery had closed, the summary judgment briefing schedule had been set, and defendants had filed their summary judgment motion. In light of her lack of diligence in pursuing the perceived inadequacies in discovery, the district court did not abuse its discretion in denying Ms. Packman's motion to compel as untimely. *See Kalis,* 231 F.3d at 1058 (no abuse of discretion in denying motion to compel filed after discovery closed, summary judgment motion was filed, briefing schedule was set, and plaintiff's response was due); *Brill v. Lante Corp.,* 119 F.3d 1266, 1275 (7th Cir.1997) (no abuse of discretion in denying motion to compel filed after summary judgment motion filed and despite court's instruction to parties to work out their discovery disputes within one week and file any motions to compel "shortly thereafter").

*Packman*, 267 F.3d at 647. Thus, neither *Packman* nor the cases it relies on support the notion that a motion to compel may not be filed following the close of discovery. Indeed, such a blanket rule would be nonsensical; it would essentially give parties a free pass to ignore any discovery requests served thirty days prior to the discovery deadline, even though those requests were timely served.[4] Rather, those cases stand for the unremarkable proposition that a party must diligently follow up on discovery disputes and that motions to compel that are unreasonably delayed may be denied on timeliness grounds. Indeed, the undersigned has declined to deny motions to compel that were filed after the discovery deadline on timeliness grounds on multiple

---

[4] The Case Management Plan entered in this case contains the following provision:

> The term "completed," as used in Section IV, means that counsel must serve their discovery requests in sufficient time to receive responses before this deadline. Counsel may not serve discovery requests within the 30-day period before this deadline unless they seek leave of Court to serve a belated request and show good cause for the same.

*Barker v. Kapsch Trafficcom USA, Inc.*, 1:19- cv-0987-TWP-MJD, Dkt. 30 at 4 n.1.

10

occasions when the delay was not egregious and no prejudice resulted from the delay. *See, e.g.*, *Struve v. Gardner*, 2021 WL 2004168, at *2 (S.D. Ind. Feb. 22, 2021); *Whole Woman's Health All. v. Hill*, 2020 WL 1028040, at *2 (S.D. Ind. Mar. 2, 2020).

In this case, Kapsch clearly could have filed a timely motion to compel promptly after it received Plaintiffs' supplemental responses, if they had been inadequate, or promptly after the date Plaintiffs had promised to serve their supplemental responses, if they had not been forthcoming, even though the discovery deadline had passed. If Kapsch had good faith concerns that it would be foreclosed from raising any issues about Plaintiffs' supplemental responses after the discovery deadline, a quick discovery conference with the undersigned could have alleviated those concerns and avoided the instant motion to compel. Kapsch also could have withdrawn the motion to compel once it received the supplemental responses from Plaintiffs. But instead, Kapsch doubled down in its reply brief, insisting that because it filed its (wholly unnecessary) motion to compel before Plaintiffs served their supplemental responses, Kapsch is entitled to a fee award for the motion. Quite frankly, this position is exceedingly ironic, given Kapsch's own failure to produce discovery in a timely manner in this case. *See Barker v. Kapsch Trafficcom USA, Inc.*, 1:19- cv-0987-TWP-MJD, Dkt. 248; [Dkt. 168]; [Dkt. 257] (each consisting of an order granting, at least in part, a motion to compel filed by Plaintiffs against Kapsch). Indeed, the Court would be within its discretion to award Plaintiffs fees for the instant motion pursuant to 28 U.S.C. § 1927, inasmuch as this motion has unreasonably and vexatiously multiplied these proceedings. Given that Plaintiffs' own position regarding their interrogatory responses was so utterly unreasonable, however, the Court will not do so. Defendant's motion to compel, [Dkt. 296], is **DENIED**.

The Court does not intend to award fees to either party related to the motions addressed in this order.

SO ORDERED.

Dated: 8 JUN 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.