# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |
|---|---|
| MONIQUE OUTZEN,<br>ROBERT ARDAIOLO, and<br>MELISSA BARKER,<br><br>    Plaintiffs,<br><br>v.<br><br>KAPSCH TRAFFICCOM USA, INC<br><br>    Defendant. | Case No. 1:20-cv-01286-TWP-MJD |

## JOINT MOTION FOR PRELIMINARY APPROVAL ORDER OF CLASS SETTLEMENT WITH DEFENDANT KAPSCH TRAFFICCOM USA, INC.

Plaintiffs Monique Outzen, Robert Ardaiolo, and Melissa Barker (together, "Plaintiffs"), with Kapsch TrafficCom USA, Inc. ("Kapsch") jointly move this Court under Fed. R. Civ. P. 23 for an Order: (1) granting preliminary approval of a proposed settlement agreement (the "Settlement Agreement") with Kapsch; (2) preliminarily designating Plaintiffs as class representatives; (3) preliminarily appointing attorneys from Cox Law Office and Wilson Kehoe Winingham, LLC as Class Counsel; (4) preliminarily appointing Atticus Administration LLC and KCC LLC as Settlement Administrators; (5) directing that no notice is required for members of the Late Invoice Settlement Class (defined below and substantively identical to the definitions used the Gila Settlement) under Rule 23(b)(3); (6) directing notice to all Missing Invoice Subclass Members (defined below and substantively identical to the definitions used the Gila Settlement) who would be bound by the Settlement Agreement and receive a set cash distribution from the Settlement Fund; and (7) setting a Fairness Hearing at the earliest date convenient to the Court that is 130 days or more after the date of the Preliminary Approval Order requested herein.

**INTRODUCTION**

Plaintiffs are users of the Riverlink Toll Bridges that connect Southern Indiana and Louisville, Kentucky. They sued Kapsch for alleged tortious and inequitable conduct in the invoicing and collecting of fees and penalties arising out of the Riverlink Toll Bridges.

After four years of hard-fought litigation in two separate actions consolidated into the instant action, after a settlement conference conducted by the Magistrate Judge in 2019, after several day-long mediations over the course of several months in 2021 and 2022, and after additional subsequent settlement negotiations, Plaintiffs and Kapsch reached a $455,000 settlement.

Under the terms of the Settlement Agreement, Kapsch will fund a $455,000 common fund to provide cash payments to Missing Invoice Settlement Subclass Members, will prepare and submit for authorization and approval (i) a Change Control Form that seeks approval to change the parameter that sets the Due Date on a 1st Toll Notice from 30 days to 38 days, and (ii) a proposed amendment to the Business Rules that changes Business Rule CSC-VID-006 to state that the Due Date for a 1st Toll Notice will be set as 38 days after generation from the 1st Toll Notice milestone. *See* Exh. A, Settlement Agreement, ¶ 36. Kapsch has further agreed to assign to the Late Invoice Settlement Class and Missing Invoice Settlement Subclass all of its claims against non-parties such as the State Entities that relate to the claims asserted by the Late Invoice Settlement Class and Missing Invoice Settlement Subclass Members, respectively, in this litigation. In addition, the Settlement Agreement preserves Late Invoice Settlement Class Members' and Missing Invoice Settlement Subclass Members' ability to litigate their claims against any other non-parties that have not previously settled that might be responsible or liable for the claims set forth in this litigation. As set forth in the Settlement Agreement,

2

Kapsch has agreed to seek the Court's entry of the Orders of Preliminary Approval and Final Approval submitted herewith.

Under the circumstances, the Court likely will be able to conclude that the Settlement Agreement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), and that the Settlement Classes should be certified for settlement purposes. Accordingly, the Court should grant the preliminary approvals requested and approve the proposed notice.

## BACKGROUND

### I.    Plaintiffs' Claims

Kapsch entered into an agreement to act as the Toll Services Provider ("TSP") for the Riverlink Toll Bridges in 2015, and assisted the Joint Board (comprised of representatives of the States of Indiana and Kentucky) in creating and implementing an All Electronic Tolling ("AET") system for the bridges connecting Southern Indiana to Louisville, Kentucky across the Ohio River. This AET system operates without toll booths, but instead identifies users of the Riverlink Bridges via transponders (for those vehicles that have them) and photographs of vehicle license plates. Registered vehicles are billed and pay for their tolls electronically, and unregistered vehicles are mailed a notice of tolls to the vehicle owner's address, which are maintained by the Motor Vehicle Department for the State that issued the license plate. Kapsch contracted with Gila to be its subcontractor on the project responsible for invoicing and collecting tolls.

Defendants were contractually responsible for invoicing and collecting tolls to users of the Riverlink Bridges who did not have a transponder or registered account ("Unregistered Vehicle Accounts," or "UVAs"). The procedure and format by which Defendants were to provide notice of tolls that were owed and due, as well as the fees and penalties that could be assessed, invoiced, and collected should a UVA not pay a 1st Toll Notice by its due date,

were set forth in Business Rules that Defendants helped to create.

Plaintiffs allege that Defendants acted in a manner that gave rise to liability to UVAs for a number of statutory and common law claims, including in tort and equity. Specifically, Plaintiffs allege that Defendants failed to print and mail hundreds of thousands of toll notices, but then claimed otherwise in subsequent toll notices and assessed and demanded fees and penalties for failure to pay those notices despite their not having been mailed to UVAs to allow them notice that tolls were owed and due, thus giving rise to the "Missing Invoice Subclass."

Plaintiffs also allege that Defendants failed to provide the required amount of time when setting the due dates on 1st Toll Notices, failed to print and mail those 1st Toll Notices as required by the Business Rules, failed to provide the information required by the Business Rules in the 1st Toll Notices (including by providing false and improper information about when the tolls were due in the 1st Toll Notices), and then provided false and improper information that fees were owed under penalty of law in 2nd Toll Notices, thus giving rise to claims of the "Late Invoice Class" who paid fees assessed by Defendants in relation to such 1st Toll Notices despite Defendants' lack of compliance with requirements in the Business Rules.

Plaintiffs have sought relief under equitable theories, including unjust enrichment and money had and received, tort claims, including and such as deception, negligence, constructive fraud, intentional misrepresentations, fraud, and breach of fiduciary duty, and statutory claims under the Indiana Deceptive Consumer Sales Act.

Kapsch denies liability for myriad factual and legal reasons, but desires to settle to avoid continued litigation with these Plaintiffs or similarly situated plaintiffs.

At this point, Plaintiffs settled with Gila last year. Their Settlement Agreement explicitly

excluded Plaintiffs' claims against Kapsch and assigned Gila's claims against Kapsch to Plaintiffs. It also left Kapsch exposed to further claims by individuals and other non-parties. To recover against Kapsch on a class-wide basis, Plaintiffs would need to obtain certification of their proposed litigation classes from this Court or an appellate court after proceeding to trial. In light of these obstacles to any higher recovery for the larger group, Plaintiffs settled.

## II.    Litigation History

The proposed Settlement Agreement is the culmination of four years of intensely adversarial litigation by Plaintiffs against Kapsch, during which Plaintiffs' counsel have incurred more than a hundred thousand dollars in costs and have spent thousands of hours prosecuting Plaintiffs' claims.

### A.    Defendants' Motions to Dismiss

Defendants filed multiple Motions to Dismiss in the *Barker* litigation and this consolidated Action. The Magistrate Judge issued a Report recommending dismissal of the *Barker* litigation in its entirety on January 14, 2020. That recommendation was overruled by the Court after Plaintiffs' Objection, and the Motion to Dismiss was instead denied in its entirety on June 1, 2020. Defendants then filed a Motion to Dismiss in the consolidated *Outzen* litigation on June 12, 2020, which the Court denied in its entirety on March 10, 2021.

### B.    Discovery

Plaintiffs conducted extensive jurisdictional and merits discovery on behalf of a class, including requesting hundreds of thousands of documents (consisting of millions of pages), analyzing massive database files maintained by Gila, engaging and providing disclosures for experts on liability and damages issues, and taking numerous corporate representative and other depositions. Plaintiffs have engaged in substantial motions practice regarding discovery.

Plaintiffs filed numerous motions to compel discovery against Defendants, many of which obtained favorable results for Plaintiffs.

### C.    Plaintiffs' Motion for Class Certification

Plaintiff Barker moved for class certification on January 2, 2020. That motion was denied as moot on July 29, 2020 after her action was consolidated into the current action. Plaintiffs then filed a consolidated Amended Motion for Class Certification on January 12, 2020. The Court denied that Motion on September 19, 2021. The Court denied Plaintiffs' Motion to Reconsider on September 25, 2022. The Seventh Circuit Court of Appeals denied Plaintiffs' Motion for Appeal under Rule 23(f) on December 5, 2022.

## III.    Settlement History

The proposed Settlement Agreement was reached after extensive arm's-length negotiations. The parties negotiated with the assistance of the Magistrate Judge during a settlement conference in November, 2019, and also engaged in several day-long mediation sessions conducted with the assistance of mediator John Van Winkle during the period between June and August, 2021, and May 2023, and follow-up communications with Mr. Van Winkle. Counsel for Plaintiffs and Kapsch then continued to negotiate with Mr. Van Winkle's assistance, ultimately resulting in the parties reaching the principal terms of the settlement in May 2023. The parties then notified the Court of their resolution, and worked for some time to negotiate the details of the settlement. Kapsch is only effectuating this settlement to avoid the expenses of litigation.

## SUMMARY OF SETTLEMENT

## I.    Class Definition

The proposed Settlement Agreement encompasses the claims of all UVAs who have paid $5

fees for failure to timely pay a 1st Toll Notice ("Late Invoice Class Members"), including those who paid fees assessed for failure to timely pay a toll notice that allegedly was not printed and mailed ("Missing Invoice Subclass Members"). The definition of the Class whose certification is sought is based on a stipulated list ("List") between Kapsch and Plaintiffs including:

A. The Late Invoice Settlement Class means any UVA user of the Riverlink Bridges who paid a $5 fee assessed for failure to timely pay a 1st Toll Notice issued pursuant to the LSIORB Business Rules.

B. The Missing Invoice Settlement Subclass means any UVA user of the Riverlink Bridges who paid any/all fee(s) or penalty(ies) assessed after the UVA user failed to pay a 1st Toll Notice, 2nd Toll and/or Violation Notice that was not printed and mailed and where such user was not refunded or credited the fee(s) and/or penalty(ies) prior to the Execution Date of the Settlement Agreement.

This amounts to 1,784,918 UVAs that make up the Late Invoice Settlement Class, of which there are 170,070 UVAs that make up the Missing Invoice Settlement Subclass. Excluded from both the Late Invoice Settlement Class and the Missing Invoice Settlement Subclass are Defendants; the officers, directors and employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives (including their heirs or assigns) of any Defendant; any federal governmental entities and instrumentalities of the federal government; and any judicial officer presiding over the Action, and any member of her or his immediate family and judicial staff. Additionally excluded are all Persons who make a timely election to be excluded from the proposed Classes as approved by the Court in the Final Approval Order and all Persons who are not on the List.

Members of the Settlement Class and Subclass are referred to herein respectively as "Late Invoice Settlement Class Members" and "Missing Invoice Settlement Subclass Members" and together as the "Settlement Class and Subclass Members."

## II.    Release

Once the settlement becomes final and Kapsch funds the Settlement Fund, Plaintiffs and

Late Invoice Settlement Class and Missing Invoice Settlement Subclass Members will release any and all claims against Kapsch (and certain related individuals and entities) related to the issues in the Amended Complaint. The details of the release are contained in Paragraphs 22–26 of the Settlement Agreement.

### III.    Settlement Fund, Fees, and Expenses

The previously approved and distributed settlement fund in this matter, practically, addressed all of the same Settlement Class and Subclass Members. To maximize the amount of actual recovery for the Settlement Class and Subclass Members, the parties propose an approach to distribution of the Settlement Fund that leverages the prior settlement with Gila to reduce settlement administration costs. Specifically, each Missing Invoice Settlement Subclass Member will first receive notice via a postcard. This notice will direct Settlement Class and Subclass Members to an updated version of the existing website: www.riverlinksettlement.com which will contain all relevant details of the settlement, including updated documents, directions, and contact information for relevant parties. Then, after approval of this Settlement, the parties will send checks to the Missing Invoice Settlement Subclass members. For efficiency and to ensure the maximum amount of funds reaches the individual members, however, the parties will work with the Gila settlement's class administrator to include funds for this settlement with the funds that will be issued in a requested second distribution for the Gila settlement previously approved by this Court. Plaintiffs' counsel is seeking approval of that second distribution from this Court under a separate filing (and will be seeking such a second distribution regardless of whether this Motion is approved or the settlement herein discussed receives final approval).

No attorneys' fees, expenses, or class representative awards will be distributed out of the Settlement Fund without the Court's approval. Plaintiffs will file a motion seeking such amounts,

contingent on final approval of the Settlement Agreement, before the Fairness Hearing. Missing Invoice Settlement Subclass Members will have the opportunity to object to these costs, fees, and awards. The proposed Settlement Agreement provides that Plaintiffs may seek a reasonable portion of the settlement fund to be set aside for litigation costs, attorneys' fees, and class representative incentive awards. Plaintiffs anticipate seeking approximately $170,000 of the Settlement Fund to cover litigation costs, additional expenses, and attorneys' fees incurred in prosecuting claims against Kapsch and reaching this settlement, to be submitted with the motion for final approval of the settlement. Plaintiffs will request incentive rewards of $2,000 for each Named Plaintiff for their representation of the Settlement Class and Subclass against Kapsch.

## ARGUMENT

### I. The Proposed Settlement Is Fair, Adequate, and Reasonable.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 3d 1191, 1196 (7th Cir. 1996); *see also Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Preliminary approval of a proposed class action settlement "is the first step in a two-step process to determine whether a proposed Rule 23 settlement is fair, adequate, reasonable, and not a product of collusion." *Butler v. Am. Cable & Tel., LLC*, No. 09-5336, 2011 WL 4729789, at *9 (N.D. Ill. Oct. 6, 2011).

The result of granting preliminary approval is an order directing notice of the proposed settlement class, not the finalization of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B); *McCue v. MB Fin., Inc.*, No. 1:15-CV-00988, 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015) (preliminary approval "simply allows notice to issue to the class and for class members to object to or opt out of the settlement"). Thus, at this stage Plaintiffs need only show that final approval is likely, not that it is certain. *See* Fed. R. Civ. P. 23(e)(1)(B). At the preliminary approval stage,

the parties must show only that the proposed settlement is "within the range of possible approval." *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979); *see also In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. 2016) (same). "This bar is low." *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001). "After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input." *McCue*, 2015 WL 1020348, at *1.

Preliminary (and final) settlement approval is governed by Federal Rules that came into effect in December 2018, but that "essentially codified [the] prior practice" of courts. William B. Rubenstein, *et al.*, Newberg on Class Actions § 13:13 (5th ed). Case law applying the pre-2018 version of Rule 23 therefore remains relevant to the determination of preliminary approval of a proposed settlement. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *5 (N.D. Ill. May 14, 2019) ("The six factors identified by the Seventh Circuit in *Wong v. Accretive Health, Inc*., 773 F.3d 859, 863-64 (2014), and numerous other cases subsume most of the factors listed in Rule 23(e)(2)."); *Hale v. State Farm Mut. Auto. Ins. Co*., No. 12-0660, 2018 WL 6606079 at *2 (S.D. Ill. Dec. 16, 2018) (the amended Rule 23 "considerations overlap with the factors previously articulated by the Seventh Circuit").

The issue before the Court is whether the requirements of Rule 23, as they relate to a settlement only class, are satisfied. Settlement only classes are to be considered and approved (or not) based on the factors set forth in Rule 23 except that "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the

proposal is that there be no trial." *Amchem Products Inc., v. Windsor*, 521 U.S. 591, 620 (1997); *see also* MCL 4th §21.132.

A sister court in this circuit has recently addressed the variation in analysis that occurs in proposed settlement classes in detail, stating in pertinent part:

> A class satisfies the predominance requirement when "common questions represent a significant aspect" of a case and can be "resolved for all members" of a "class in a single adjudication." Id. (quoting 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (3d ed. 2011)). A question "becomes a common question" when the "same evidence will suffice for each member to make a prima facie showing." Id. at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). If, on the other hand, "members of a proposed class will need to present evidence that varies from member to member" in order to "make a prima facie showing on a given question, " that question remains an individual one. Id. (quoting *Blades*, 400 F.3d at 566).
>
> But the case management and judicial economy concerns at the heart of the predominance requirement matter less when plaintiffs seek to certify a class for settlement purposes only. *See* Fed. R. Civ. P. 23(b) advisory committee's note to 1966 amendment. In deciding whether to certify a settlement-only class, "a district court need not inquire whether the case, if tried, would present intractable management problems," an inquiry typically necessary to satisfy Rule 23(b)(3)'s predominance requirement. *Douglas v. W. Union Co.*, 328 F.R.D. 204, 211 (N.D. Ill. 2018) (emphasis added) (quoting *Amchem*, 521 U.S. at 620). Accordingly, "individualized issues" that may bar certification for adjudication purposes will not necessarily bar certification for settlement. See 2 William Rubenstein, Newberg on Class Actions § 4:63 (5th ed. 2021) (hereinafter Newberg). In fact, courts "regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns." Id.

*T.K. v. Bytedance Tech. Co.*, No. 19-CV-7915, 2002 WL 888943, at *5 (N.D. Ill. Mar. 25, 2022) (entering order granting final approval of settlement class).

[1]

---

[1]  This is in keeping with the case(s) cited in the Court's prior Show Cause Order relating to this issue, as those cases do not state that a prior denial of class certification should bar certification of a settlement class, but that a settlement class that suffers from unrectified Rule 23 certification deficiencies that previously served as the basis for denial of class certification might still be denied. *See Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 503 (7th Cir. 2012); *Ortiz v. Fibreboard*, 527 U.S. 815, 856-859 (1999).[1]

In this matter, the Court identified concerns regarding the Missing Invoice and Late Invoice Classes regarding predominance due to concerns about ascertainability of the identities of the class members as well as manageability issues relating to whether minutiae such as the number of days between invoice generation and payment for each class member would overrun the case. D.E.#340, p. 5.  However, as discussed herein, these issues do not exist for the proposed settlement classes, which will be identical to the settlement classes approved in the Gila settlement.

Specifically, the Late Invoice Settlement Class consists of an identifiable list of individuals that the parties agree paid $5 after being sent a 2nd Toll Notice. The Missing Invoice Settlement Subclass consists of a subset—identified individuals/unregistered video users that the parties agreed paid any/all fees or penalties assessed after the unregistered video user failed to pay a 1st Toll Notice, 2nd Toll and/or Violation Notice that was not printed and mailed, and where that user was not refunded or credited the fee. The parties agreed to these settlement class parameters for purposes of effectuating a settlement—a contention that would remain disputed otherwise.

The minutiae and manageability concerns that might have existed at trial do not affect the agreed settlement class and subclass, as sought jointly by the parties, and thus such concerns as previously raised by the Court in denying class certification will not bar certification of the settlement class so long as the requirements of Rule 23 are met. This same rationale was previously considered and a settlement class was then certified by this Court in approving settlement on a class-wide basis with Defendant Gila, LLC. *See generally* D.E.#323. Also flowing from that approved settlement is the fact that the settlement classes hold certain claims against Kapsch that can only be released by those classes.

**<u>Rule 23 Requirements for Preliminary Approval</u>**

Rule 23(e)(1)(A) requires parties seeking preliminary approval of a proposed class action settlement to provide information sufficient to enable the court "to determine whether to give notice of the proposal to the class." The parties must demonstrate that notice is "justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added). Rule 23(e)(2) sets forth a list of factors that courts must consider in order to determine that the proposed settlement is "fair, reasonable, and adequate." Courts must consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the proposal treats class members equitably relative to each other; and

(D)   the relief provided by the settlement is adequate, taking into consideration:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of the proposed method of distributing relief;

    (iii)   the terms of any proposed award of attorneys' fees;

    (iv)   any agreements made in connection with the proposed settlement.

Fed. R. Civ. P. 23(e)(2).

**A.    Class Representatives and Class Counsel Have Adequately Represented the Class.**

Melissa Barker, Monique Outzen, and Robert Ardaiolo have participated in this litigation and been available to counsel since the inception of their respective lawsuits. Class

Counsel[2] have vigorously prosecuted this case for nearly five years. Class Counsel have represented the Class's interests through two rounds of motions to dismiss (including a successful objection to the Magistrate's Order granting the first such motion to dismiss), two heavily contested Motions for Class Certification, a Motion to Reconsider the Court's Order denying Plaintiffs' Motion for Class Certification, a Motion and Cross-Motion for Summary Judgment, and through extensive discovery and discovery-related motions. Together, Cox Law Office and Wilson Kehoe Winingham have invested more than a hundred thousand dollars in litigation expenses and thousands of hours of attorney time. The Court itself expressly found that the named Plaintiffs and counsel adequately represented the proposed classes in its Order on Plaintiffs' Amended Motion for Class Certification. (D.E. #186 at 28), and in its approval of a substantively identical settlement last year (D.E. #324 at 10).

### B.    The Settlement Agreement Was Negotiated at Arm's Length.

In evaluating a class action settlement, courts must consider whether it was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This case is at the opposite end of the spectrum from the "product of collusion" that gives rise to this concern. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002).

First, the Settlement Agreement is the product of years of litigation, not the type of quick settlement that sometimes raises concerns about collusion. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) ("By the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases."). As the docket in this case reflects, nearly every substantive and

---

[2] Reference to "Class Counsel" as used herein is for convenience only, as the Court has not yet appointed class counsel.

procedural aspect of this case has been aggressively litigated since 2019.

Second, the participation of experienced mediators in the settlement negotiations "reinforces that the Settlement Agreement is non-collusive." *Johnson v. Brennan*, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011). Here, the Settling Parties participated in several day-long mediation sessions with a highly qualified neutral mediator, John Van Winkle, before reaching an agreement in principle, and the Settling Parties then continued to negotiate for months over the fine print of the settlement. "A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (discussing settlement negotiations with "an experienced mediator" and over "several telephone conferences"); *see also Wong*, 773 F.3d at 864 ("Finally, and importantly, the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated"); *Snyder*, 2019 WL 2103379, at *4 (finding the proposed settlement was reached through arm's length negotiations when the negotiations were conducted "via three separate and independent mediators").

Third, the terms of the Settlement Agreement itself reinforce its non-collusive nature. The consideration to be paid by Kapsch includes a substantial amount of cash, and no unclaimed funds will revert to Kapsch. *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) ("reversion of unclaimed refunds to the putative wrongdoer" is indicative of collusion). Class Counsel's proposed fees are well within the reasonable range. *See Ormond v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878031, at *5 (S.D. Ind. Nov. 20, 2012) (collecting cases in which courts have approved "a percentage market rate of 33.3%").

C. **The Relief Provided for the Class Is Substantial and Appropriate.**

Given the barriers to group recovery, a $455,000 settlement payment is an excellent result for the settlement class. It affords Settlement Class Members immediate relief in the form of a payment, as opposed to the speculative result of continuing protracted litigation without stipulation on the membership of the class. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) ("immediate payment of substantial amounts to Class Members," supports final approval "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road") (quotation marks omitted). The proposed settlement is undoubtedly within the "range of possible approval." *General Motors*, 594 F.2d at 1124.

Furthermore, the cy pres relief will be used only for the small portion of the Settlement Fund, if any, that remains unclaimed or rejected after distributions to Missing Invoice Settlement Subclass Members. The use of a cy pres award is appropriate in these circumstances. *See* American Law Institute, Principles of the Law of Aggregate Litigation § 3.07 (2010) (endorsing this approach); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *5 (N.D. Ill. Mar. 2, 2017), *aff'd*, 896 F.3d 792 (7th Cir. 2018) (rejecting objections to cy pres award for unclaimed funds after multiple distributions). The National Consumer Law Center is an appropriate proposed cy pres recipient, but the Court may choose a different cy pres recipient if it so chooses.

1. **Trials and Appeal(s) Would Present Significant Costs, Risks, and Delays for Any Settlement Class Members' Recovery.**

Rule 23(e)(2) may require courts "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "[T]he essence of a settlement is compromise an[d]

abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes." *Armstrong v. Board of School Dir. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (abrogated on other grounds) (citations omitted).

While Plaintiffs remain confident in their claims against Kapsch and their ability ultimately to prevail at trial, there are significant obstacles in continuing to litigate this action. The claims already were the subject of a Magistrate's Order granting dismissal once. The current posture of the case is that the Court has denied class certification—so Late Invoice Class Members and Missing Invoice Subclass Members, except for the named Plaintiffs, would receive no remedy in this matter. Even though significant discovery had been completed, much work remains before a trial that could net a judgment in favor of the Settlement Class Members (if any)—including re-filing summary judgment briefings, a trial resulting in a final judgment in favor of the individual Plaintiffs, an appeal of the final judgment resulting in the certification of a putative class, and then a second trial with a judgment in favor of the Settlement Class Members.

Given the passage of time (years since the Business Rules were first adopted and tolling began), it is likely that Plaintiffs would face evidentiary obstacles at trial if, for example, witnesses have forgotten relevant information. Rulings on summary judgment could result in appeals by or against Kapsch, as could the results of the trials. Such proceedings would add significant costs and delays to the litigation before the Settlement Class could receive any conceivable benefit from this litigation.

Given the potential costs, risks, and delay of trial and appeal, the proposed $455,000 cash settlement presents a very favorable result for the class. This is especially the case given that claims against non-parties remain viable as a potential means of obtaining even

additional remedies.

### 2. The Proposed Method for Distributing Relief Is Simple and Effective.

This Rule 23(e)(2) factor requires courts to look at "the method of processing class-member claims." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(2)(C)(ii)). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*. at 40 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). Here, there is no demand at all on Settlement Class and Settlement Subclass Members and their successors—the Settlement Fund will be distributed without the need for anyone to submit a claim form.

The plan for distributing relief is straightforward. For purposes of settlement only, there is no real dispute about who is a member of the Settlement Class and Settlement Subclass or the calculation of each Missing Invoice Settlement Subclass Member's recovery. Both are determined using stipulations about whether payment of a $5 fee was paid by the Member as well as whether Gila's records indicate that the 1st Toll Notice was printed and mailed to the Member prior to the assessment of the $5 fee. Plaintiffs have engaged Atticus Administration LLC, a company that specializes in claims administration, to conduct the notice processes—specifically, to provide a notice to the Missing Invoice Settlement Subclass and track opt-outs. Atticus Administration, LLC leverages experience from over 500 class action settlements. See Exh. B (Affidavit of Cox, with Atticus Proposal attached). KCC, LLC would be used to distribute settlement funds for the settlement, if approved. Because of the relatively low effect of opt-out claims on individual Settlement Subclass Members' recovery, cy pres relief will more appropriately address any "leftover" funds. *See* supra at 13. Each Settlement Class

18

Member will be able to receive immediate relief after the Final Settlement Approval. *See* Settlement Agreement, ¶ 34.

### 3. The Proposed Attorneys' Fee Award Is Reasonable and Fair.

"The Seventh Circuit Court of Appeals uses a percentage basis rather than a lodestar or other basis when determining a reasonable fee." *Will*, 2010 WL 4818174, at *2 (citing *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir.1998); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994)); see also *Cooper v. IBM Pers. Pension Plan*, No. 99-829-GPM, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005), reversed and remanded on other grounds, 457 F.3d 636 (7th Cir. 2006) ("The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class."). Class Counsel is seeking no more than one-third of the Settlement Fund. As will be detailed in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Representative Plaintiffs' Incentive Awards, one-third of a common fund is a standard rate in complex class actions that reflects the risk that counsel takes on by accepting a case that may yield no fee at all. *See Ormond*, 2012 WL 5878031, at *5 (collecting cases in which courts have supported "a percentage market rate of 33.3%" when granting attorneys' fees). Class Counsel are owed reimbursement of approximately $31,000 in litigation expenses, plus additional expenses and settlement administration expenses to be submitted with the motion for final approval of the settlement. Given the complexity of the case and the positive result for the settlement class, such an award is reasonable and fair.

### 4. There Are No Other Agreements to Be Identified under Rule 23(e)(3) Aside from the Settlement Agreement.

Rule 23(e)(3) requires the parties seeking preliminary approval of a class action settlement to "file a statement identifying any agreement made in connection with the proposal." The parties have submitted to the Court the agreements between Class Counsel and

KCC and Atticus regarding administration of the settlement. Plaintiffs and Kapsch are not parties to, and are not aware of, any other agreement to be identified under Rule 23(e)(3).

**D.    The Proposed Settlement Agreement Apportions Settlement Funds Equitably Among Class Members.**

Each Missing Invoice Subclass Member will receive a pro rata share of the Settlement Subclass Member's alleged damages based on the amount of fees/penalties paid by that Member, and will be mailed a check in the amount of the proposed settlement alongside the initial Notice. The Settlement Agreement's distribution plan recognizes that the Settlement Class members have been notified once before regarding this Action, and ensures that reasonable efforts to locate Missing Invoice Settlement Subclass Members and their successors and/or beneficiaries to distribute their portions of the Settlement Fund have been taken. Only the small amount remaining in the custody of the Settlement Administrator after that distribution is approved, if any, will be distributed by the Settlement Administrator to a cy pres recipient approved by this Court. *See supra* at 13.

**II.    The Proposed Late Invoice Settlement Class and Missing Invoice Settlement Subclass Will Likely Be Certified.**

Before notice is directed to the Missing Invoice Settlement Subclass, the moving party must "show[] that the court will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii) (emphasis added). This standard recognizes the preliminary nature of this inquiry, which leaves class certification to a later stage in which Missing Invoice Settlement Subclass Members will have the opportunity to object. *See* Newberg § 13:18. The standard also acknowledges the distinction between certification "for purposes of judgment on the [settlement] proposal" and certification for trial. Fed. R. Civ. P. 23(e)(1)(B)(ii).

**A.    Cases Alleging Breaches of Form Contracts Are Ideal for Class Certification.**

If a class was appropriate in those contested cases, then it is certainly appropriate here. Indeed, the Court need not consider the manageability of a class action when certification is sought pursuant to a settlement. See *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

**B.      The Late Invoice Settlement Class and Missing Invoice Settlement Subclass Satisfies All Four Elements of Rule 23(a).**

A proposed class must satisfy the four "gate-keeping" requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). All are easily met here.

Numerosity: The size of the class easily satisfies Rule 23(a)'s numerosity requirement. There are more than 1.7 million Late Invoice Settlement Class Members and 170,070 Missing Invoice Settlement Subclass Members. Even "a forty-member class is often regarded as sufficient." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017).

Commonality: As long as the class members' claims share "a single common question," the commonality standard is met. *Wal-Mart*, 564 U.S. at 359 (alterations omitted). A question is "common to the class" if it is one for which a class-wide proceeding may "generate common answers apt to drive the resolution of the litigation." *Id*. at 350. As discussed in further detail below, the central questions in this case—such as whether Defendants owed and breached duties to UVAs or acted tortiously or inequitably by failing to provide the required amount of notice before assessing fees in a 2nd Toll Notice —can be answered using common evidence.

Common questions include:

- Did Defendants owe a duty to invoice UVAs in accordance with the Business Rules?

- Did Defendants breach their duty to all class members by demanding money for fees after failing to provide proper notice and the correct time to pay to all class members?

- Did Defendants breach their duty to all subclass members by demanding payment for unpaid toll notices that they never mailed?

- Are Defendants entitled to assess and collect fees without first issuing a compliant 1st Toll notice?

- Did Defendants owe a fiduciary duty to UVAs and, if so, did they breach that duty?

- Did Kapsch owe any duty to Gila that it breached and affected the rights of Plaintiffs?

Common evidence includes:

- The terms of the Business Rules and contracts between Defendants and the States;

- The form toll notices that Defendants sent to all UVAs;
- The Riverlink Database containing the same information about all UVA toll notices and transactions; and

- Defendants' internal business records and emails identifying their knowledge of Late Invoices and Missing Invoices and failure to issue refunds to UVAs.

This Court denied class certification due to commonality concerns that would present manageability problems for trial but—in the context of settlement and stipulations to reliability and accuracy of Gila's records—the Settlement Class does not face the same issues regarding predominance and commonality faced by the litigation classes. *See generally Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case if, tried would present intractable management problems . . . for the proposal is that there be no trial."). "[C]ourts regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns." *T.K. v. Bytedance Tech. Co.*, No. 19-cv-7915, 2022 WL 888943, at *5 (N.D. Ill. Mar. 25, 2022).

Typicality: The three class representatives' claims are "typical of the claims . . . of the class" because, like all Settlement Class Members, they paid $5 fees arising out of Late Invoices and/or Missing Invoices. Fed. R. Civ. P. 23(a)(3).

Adequacy: The three proposed class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). They have individual claims and have

pursued this case vigorously from the start. Their interests are aligned with those of the Late Invoice Settlement Class and Missing Invoice Settlement Subclass —they seek to maximize the Late Invoice Settlement Class's and Missing Invoice Settlement Subclass's recovery from Defendants for the alleged tortious and inequitable conduct. All three have actively participated in this litigation, including by responding to written discovery requests, testifying at depositions, and participating in days-long mediations.

The adequacy of Class Counsel is shown by the terms of the proposed settlement agreement that the class representatives have achieved. Cox Law Office and Wilson Kehoe Winingham have vigorously represented the class. They have experience litigating class actions and complex litigation, as well as the tort, equitable, and statutory claims asserted on behalf of the class in this matter, and have been appointed class counsel in prior matters. They have also devoted thousands of hours of attorney time and more than a hundred thousand dollars in costs to investigate and prosecute this case since its start in 2019.

### C.    The Late Invoice Settlement Class Satisfies the Requirements of Rule 23(b)(2).

In relation to the Late Invoice Settlement Class, for which Kapsch is agreeing to declaratory/injunctive relief, Plaintiffs allege that Defendants have failed to implement a system that complies with the time for mailing and setting of the Due Date on 1st Toll Notices as set forth in the Business Rules. Plaintiffs allege further that this has resulted in 1st Toll Notices being systematically sent that identify a "Due Date" that is before the date that is 35 days after generation of the 1st Toll Notice, as required by the Business Rules.

Plaintiffs allege that Kapsch has taken the position that Defendants have no legal obligation to follow the Business Rules in generating and mailing 1st Toll Notices. Plaintiffs also allege that Defendants have continued to refuse to change their procedures for invoicing 1st Toll

Notices and 2nd Toll Notices throughout this litigation and even to this day.

Although Kapsch, as a contractor, is unable to unilaterally amend the Business Rules and/or RiverLink operations without approval of the States, Kapsch has agreed to an Order requiring it to support authorization and approval of (i) a Change Control Form that seeks approval to change the parameter that sets the Due Date on a 1st Toll Notice from 30 days to 38 days, and (ii) a proposed amendment to the Business Rules that changes Business Rule CSC-VID-006 to state that the Due Date for a 1st Toll Notice will be set as 38 days after generation from the 1st Toll Notice milestone. *See* Settlement Agreement, ¶ 36. If, because of the timing of the process, Kapsch may no longer be a contractor for the States, then its access to the States would, therefore, be limited. Regardless, Kapsch will use its best efforts to effectuate its support.

Kapsch has not taken such additional actions prior to the settlement proposed herein. Kapsch is also assigning its claims against nonparties in relation to remedy any outstanding claims of the class. These efforts/actions will benefit and apply to the Late Invoice Settlement Class as a whole by effecting a change in Defendant's policy and procedures in generating and mailing 1st Toll Notices and 2nd Toll Notices (with assessed fees). *Amchem,* 521 U.S. at 614 ("Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'"); *Gravenstein v. Campion*, 540 F. Supp. 7, 12 (D. Alaska 1981) (action brought by union members challenging union's policy affecting union members generally).

> **D.    The Late Invoice Settlement Class and Missing Invoice Settlement Subclass Satisfies the Requirements of Rule 23(b)(3).**

> **1.    Common Questions Predominate.**

Under Rule 23(b)(3), a plaintiff need only demonstrate that the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The

predominance test is relaxed when certification is sought in the context of a settlement, because unlike in contested motions for class certification, the Court need not consider "the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3)(D); *Amchem*, 521 U.S. at 615. Thus, while the predominance test is met in contested cases even when non-common "matters will have to be tried separately," *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016), it is not necessary to consider the efficiency of such a plan when the settlement agreement means that no further proceedings against Kapsch will be necessary.

Common questions predominate if "adjudication of questions of liability common to the class achieve economies of time and expense." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015).

All of the core issues in this case would be tailor-made for class treatment but for the Court's determination that manageability issues would come from adjudicating the precise amounts legally owed to members of the Settlement Class and Subclass. Settlement effectively addresses these fundamental barriers to the Settlement Class' and Subclass' recovery. Specifically, the Late Invoice Settlement Class consists of an identifiable list of individuals that the parties agree paid $5 after being sent a 2nd Toll Notice and the Missing Invoice Settlement Subclass consists of a subset—identified individuals that the parties agreed paid late fees despite never being sent a 1st Toll Notice. The parties agreed to these parameters for purposes of effectuating a settlement—a contention that would remain disputed otherwise. Those issues—the proper interpretation of the Business Rules and contracts setting forth the obligations of the TSP in invoicing UVAs, whether Defendants adhered to them, and when and what knowledge Defendants had of their failure to adhere—are either identical for all class members or (in the case of damages) can be determined by applying a simple formula to common evidence

stipulated to in the context of settlement and stipulation on the membership of the Settlement Class and Subclass.

### 2.    A Class Action Is Far Superior to Other Methods for Adjudication.

In this case, a class action is vastly "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule 23(b)(3) superiority requirement is met where, as here, it is highly unlikely that it would be rational or economically feasible for any class member to pursue their claims individually. *See Amchem*, 521 U.S. at 617. Individual claim values here (less than $100 in actual damages per UVA, with claimed statutory damages ranging from $500 to $1,000 under the IDCSA) are dwarfed by the massive expense of litigating these claims, including the cost of lawyers, experts, depositions, and document discovery. *Red Barn Motors, Inc. v. NextGear Capital, Inc.*, No. 14-cv-01589, 2017 WL 5178250, at *22 (S.D. Ind. June 29, 2017) ("'tens of thousands of dollars'. . . likely would be dwarfed by the cost of litigation"). If the "damages of at least some individual class members are likely to be too small to justify litigation," a class action is superior. *See Meijer, Inc. v. Abbott Labs.*, No. C 07-5985 CW, 2008 WL 4065839, at *10 (N.D. Cal. Aug. 27, 2008) (emphasis added). The opt-out process will protect the interests of any UVAs who are eligible to participate as Missing Invoice Settlement Subclass Members but wish to pursue individual litigation.

### III.    The Court Should Approve the Proposed Notice Plan Because It Provides the Best Notice Practicable and Is Easily Understood.

#### A.  The Court Should Not Require Notice to the 23(b)(2) Late Invoice Settlement Class

As opposed to the mandatory notice required for a Rule 23(b)(3) class, Rule 23(c)(2)(A) states that, in relation to a Rule 23(b)(2) Settlement Class, "the court **may** direct appropriate notice to the class." The court's authority to direct notice to class members in Rule 23(b)(2)

actions "should be exercised with care" because there may be less need for notice to class members because there is no right to request exclusion, particularly when all relief is declaratory or equitable (i.e., non-monetary). Fed. R. Civ. P. 23, Advisory Committee Notes on Rules –2003 Amendment. Although the rule does not identify when and what "appropriate notice" might be needed, the 2003 Advisory Committee Notes to Rule 23 observed that courts must consider that the "cost of providing notice could easily cripple actions that do not seek [or obtain] damages."

Here, monetary relief is not being obtained on behalf of the Late Invoice Settlement Class from Kapsch, and there are millions of members in the Late Invoice Settlement Class. It is estimated that direct mailing of notice to those members, and corresponding telephone support for communications by those members who receive the notice, would cost more than one million dollars, and would defeat the settlement. Exh. B (Cox Affidavit) at ¶ 5. The Court should exercise its discretion to not require notice to the Late Invoice Settlement Class as proposed by Plaintiffs and Kapsch.

### B. The Proposed Notice to the 23(b)(3) Missing Invoice Settlement Subclass

If the Court agrees that "giving notice is justified" per Rule 23(e)(1)(B), then Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Notice may be sent by "United States mail, electronic means, or other appropriate means" and "must clearly and concisely state in plain, easily understood language" the following:

(i)   the nature of the action;

(ii)  the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv)  that a class member may enter an appearance through an attorney if the

27

member so desires;

(v)    that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule

23(c)(3). The Settlement Agreement's proposed notice plan satisfies this standard.

The plan is calculated to reach as many Missing Invoice Settlement Subclass Members as possible. Notice will be sent to all Missing Invoice Settlement Subclass Members by first-class mail. The Settlement Administrator will use Gila's internal records of UVAs' last known addresses, will use other databases to confirm addresses, and will capitalize on information learned during Gila's prior, approved settlement with Plaintiffs—substantively the same notice, the same website, and the same individuals approved by the Court's final approval of Plaintiffs' settlement with Gila. *See* D.E. #324.

Direct mailing using known addresses has typically been approved by courts as the best notice practicable under the circumstances. *See*, e.g., *United States v. New York*, No. 13-cv-4165, 2014 WL 1028982, at *5 (E.D.N.Y. Mar. 17, 2014). The notice is in plain English, discloses the nature of the claims in this case, explains the Settlement Agreement in detail (including attorneys' fees), directs the Missing Invoice Settlement Subclass Members to a website where they can review the even more detailed class certification filings, pleadings, and Settlement Agreement, and clearly explains the implications of a class judgment and how Missing Invoice Settlement Subclass Members can request exclusion from the class. Furthermore, the Settlement Administrator will provide toll-free phone numbers at which Missing Invoice Settlement Subclass Members can seek any additional information that they require. Furthermore, permitting opt-outs until 90 days after preliminary approval (and at least

fifteen days before the Fairness Hearing) is sufficient to protect the interests of any individuals who wish to be excluded from the Missing Invoice Settlement Subclass, as they will have sixty days from mailing to determine whether to opt out or object and will further be able to opt out or object after considering the attorneys' fees, reimbursement of costs and incentive awards sought by Plaintiffs.

## IV.      Proposed Schedule of Events

Plaintiffs propose the following schedule for Missing Invoice Settlement Subclass notice, Opt-Outs, and final approval of the proposed Settlement Agreement:

| Event | Deadline |
|---|---|
| Send notice to Class Members | 30 days after preliminary approval |
| Deadline for Opt-Outs or objections | 90 days after preliminary approval |
| File Motion for Final Approval and Motion for Award of Attorneys' Fees, Expenses and Incentive Awards | 25 days before final approval hearing |
| Fairness Hearing | 100 days after preliminary approval or as soon thereafter as is practicable for the Court |

## CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court enter an order, in the form provided herewith, providing the relief requested in this Motion including by (1) granting preliminary approval of the Settlement Agreement; (2) preliminarily designating Plaintiffs Monique Outzen, Robert Ardaiolo, and Melissa Barker as class representatives; (3) preliminarily appointing the undersigned attorneys from Cox Law Office and Wilson Kehoe & Winingham as Class Counsel; (4) preliminarily appointing Atticus Administration, LLC and KCC, LLC as Settlement Administrators; (5) directing that no notice is required for members of the Late Invoice Settlement Class pursuant to Rule 23(b)(3); (6) directing notice to all Missing Invoice Subclass Members who would be bound by the Settlement Agreement; and (7) setting a

Fairness Hearing at the earliest date convenient to the Court that is 100 days or more after the date of the Preliminary Approval Order requested herein.

Respectfully submitted,

/s/ Jacob R. Cox
Jacob R. Cox, Attorney No. 26321-49
**COX LAW OFFICE**
1606 N. Delaware Street
Indianapolis, Indiana 46202
T: 317.884.8550
F: 317.660.2453
jcox@coxlaw.com

/s/ Jon Noyes
Jon Noyes, Attorney No. 31444-49
William E. Winingham, Atty. No. 1309-49
**WILSON KEHOE WININGHAM LLC**
2859 N. Meridian Street
Indianapolis, Indiana 46204
T: 317.920.6400
F: 317.920.6405
jnoyes@wkw.com.com
winingham@wkw.com

*Attorneys for Plaintiffs Melissa Barker,*
*Monique Outzen and Robert Ardaiolo*

/s/ Manny Herceg
Tracy N. Betz, Atty. No. 24800-53
Manny Herceg, Atty. No. 29956-06
James R. A. Dawson, Atty. No. 20086-49
Vivek R. Hadley, Atty. No. 32620-53
Steven T. Henke, Atty. No. 33708-32
TAFT STETTINIUS & HOLLISTER LLP
Indianapolis, IN 46240
Telephone: (317) 713-3500
tbetz@taftlaw.com
mherceg@taftlaw.com
jdawson@taftlaw.com
vhadley@taftlaw.com
shenke@taftlaw.com
*Attorneys for Defendant Kapsch TrafficCom*

*USA, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2023, a copy of the foregoing document was filed electronically via the Court's CM/ECF system. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jacob R. Cox
Jacob R. Cox

31