# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| MONIQUE OUTZEN, ROBERT ARDAIOLO, and MELISSA BARKER, | |
| Plaintiffs, | Case No. 1:20-cv-01286-TWP-MJD |
| v. | |
| KAPSCH TRAFFICCOM USA, INC | |
| Defendant. | |

**UNOPPOSED MOTION FOR FINAL APPROVAL ORDER OF CLASS SETTLEMENT WITH DEFENDANT KAPSCH TRAFFICCOM USA, INC.**

Plaintiffs Monique Outzen, Robert Ardaiolo, and Melissa Barker (together, "Plaintiffs"), with Kapsch TrafficCom USA, Inc. ("Kapsch") (together, "Parties") jointly move this Court under Fed. R. Civ. P. 23 for an Order (1) granting final approval and certification of the Settlement Class; (2) granting final approval of the Settlement Agreement and adopting its provisions into the Court's order by reference; (3) granting final approval and designation of Plaintiffs Monique Outzen, Robert Ardaiolo, and Melissa Barker to continue as class representatives; (4) granting final approval and appointing the undersigned attorneys from Cox Law Office and Wilson Kehoe & Winingham to continue as Class Counsel; (5) granting final approval and appointing Atticus Administration, LLC to continue as Settlement Administrator, and appointing KCC, LLC to serve as a Settlement Administrator for the limited capacity of mailing the initial distribution under the Settlement Agreement; (6) directing that Atticus and KCC are to administer and distribute the settlement fund in accordance with the plan of allotment as set forth in this Motion and in the Settlement Agreement; (7) authorizing distribution to the Settlement Administrator from the settlement fund of an amount equal to the

amount already incurred and invoiced by the Settlement Administrator in administering and providing notice of the proposed settlement to Class members and authorizing Plaintiffs' counsel to approve future payment from the Settlement Fund to the Settlement Administrator upon completion of additional administration obligations identified herein (including the printing and mailing of settlement distributions); and (8) entering final judgment against Defendant Kapsch TrafficCom USA, Inc.

## INTRODUCTION

Plaintiffs are users of the Riverlink Toll Bridges that connect Southern Indiana and Louisville, Kentucky. They sued Kapsch for alleged tortious and inequitable conduct in the invoicing and collecting of fees and penalties arising out of the Riverlink Toll Bridges.

After four years of hard-fought litigation in two separate actions consolidated into this action, after a settlement conference conducted by the Magistrate Judge in 2019, after several day-long mediations over several months in 2021 and 2022, and after additional subsequent settlement negotiations, Plaintiffs and Kapsch reached a $455,000 settlement.

Under the terms of the Settlement Agreement, Kapsch will fund a $455,000 common fund to provide cash payments to Missing Invoice Settlement Subclass Members, and Kapsch will support Plaintiffs' efforts in: seeking approval of (i) the parameter that sets the Due Date on a 1st Toll Notice from 30 days to 38 days, and (ii) a change to Business Rule CSC-VID-006 to state that the Due Date for a 1st Toll Notice will be set as 38 days after generation from the 1st Toll Notice milestone. Kapsch has further agreed to assign to the Late Invoice Settlement Class and Missing Invoice Settlement Subclass all of its claims against non-parties such as the State Entities that relate to the claims asserted by the Late Invoice Settlement Class and Missing Invoice Settlement Subclass Members, respectively, in this litigation. In addition, the

Settlement Agreement preserves Late Invoice Settlement Class Members' and Missing Invoice Settlement Subclass Members' ability to litigate their claims against any other non-parties that have not previously settled that might be responsible or liable for the claims set forth in this litigation. As set forth in the Settlement Agreement, Kapsch has agreed to seek the Court's entry of the Order of Final Approval submitted herewith.

Under the circumstances, the Court is able to conclude that the Settlement Agreement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), and that the Settlement Classes should be certified for settlement purposes. Accordingly, the Court should grant the final approval requested herein.

## BACKGROUND

### I.    Plaintiffs' Claims

Kapsch entered into an agreement to act as the Toll Services Provider ("TSP") for the Riverlink Toll Bridges in 2015, and assisted the Joint Board (comprised of representatives of the States of Indiana and Kentucky) in creating and implementing an All Electronic Tolling ("AET") system for the bridges connecting Southern Indiana to Louisville, Kentucky across the Ohio River. This AET system operates without toll booths, but instead identifies users of the Riverlink Bridges via transponders (for those vehicles that have them) and photographs of vehicle license plates. Registered vehicles are billed and pay for their tolls electronically, and unregistered vehicles are mailed a notice of tolls to the vehicle owner's address, which are maintained by the Motor Vehicle Department for the State that issued the license plate. Kapsch contracted with Gila to be its subcontractor responsible for invoicing and collecting tolls.

Defendants were contractually responsible for invoicing and collecting tolls to users of the Riverlink Bridges who did not have a transponder or registered account ("Unregistered

Vehicle Accounts," or "UVAs"). The procedure and format by which Defendants were to provide notice of tolls that were owed and due, as well as the fees and penalties that could be assessed, invoiced, and collected should a UVA not pay a 1st Toll Notice by its due date, were set forth in Business Rules that Defendants helped to create.

Plaintiffs allege that Defendants acted in a manner that gave rise to liability to UVAs for a number of statutory and common law claims, including in tort and equity. Specifically, Plaintiffs allege that Defendants failed to print and mail hundreds of thousands of toll notices, but then claimed otherwise in subsequent toll notices and assessed and demanded fees and penalties for failure to pay those notices despite their not having been mailed to UVAs to allow them notice that tolls were owed and due, thus giving rise to the "Missing Invoice Subclass."

Plaintiffs also allege that Defendants failed to provide the required amount of time when setting the due dates on 1st Toll Notices, failed to print and mail those 1st Toll Notices as required by the Business Rules, failed to provide the information required by the Business Rules in the 1st Toll Notices (including by providing false and improper information about when the tolls were due in the 1st Toll Notices), and then provided false and improper information that fees were owed under penalty of law in 2nd Toll Notices, thus giving rise to claims of the "Late Invoice Class" who paid fees assessed by Defendants in relation to such 1st Toll Notices despite Defendants' lack of compliance with requirements in the Business Rules.

Plaintiffs have sought relief under equitable theories, including unjust enrichment and money had and received, tort claims, including and such as deception, negligence, constructive fraud, intentional misrepresentations, fraud, and breach of fiduciary duty, and statutory claims under the Indiana Deceptive Consumer Sales Act.

Kapsch denies liability for myriad factual and legal reasons, but desires to settle to avoid continued litigation with these Plaintiffs or similarly situated plaintiffs.

Plaintiffs settled with Gila in 2022. Their Settlement Agreement explicitly excluded Plaintiffs' claims against Kapsch and assigned Gila's claims against Kapsch to Plaintiffs. It also left Kapsch exposed to further claims by individuals and other non-parties. To recover against Kapsch on a class-wide basis, Plaintiffs would need to obtain certification of their proposed litigation classes from this Court or an appellate court after proceeding to trial. In light of these obstacles to any higher recovery for the larger group, Plaintiffs settled.

## II.    Litigation History

The proposed Settlement Agreement is the culmination of four years of intensely adversarial litigation by Plaintiffs against Kapsch, during which Plaintiffs' counsel have incurred more than a hundred thousand dollars in costs and have spent thousands of hours prosecuting Plaintiffs' claims.

### A.    Defendants' Motions to Dismiss

Defendants filed multiple Motions to Dismiss in the *Barker* litigation and this consolidated Action. The Magistrate Judge issued a Report recommending dismissal of the *Barker* litigation in its entirety on January 14, 2020. That recommendation was overruled by the Court after Plaintiffs' Objection, and the Motion to Dismiss was instead denied in its entirety on June 1, 2020. Defendants then filed a Motion to Dismiss in the consolidated *Outzen* litigation on June 12, 2020, which the Court denied in its entirety on March 10, 2021.

### B.    Discovery

Plaintiffs conducted extensive jurisdictional and merits discovery on behalf of a class, including requesting hundreds of thousands of documents (consisting of millions of pages),

analyzing massive database files maintained by Gila, engaging and providing disclosures for experts on liability and damages issues, and taking numerous corporate representative and other depositions. Plaintiffs have engaged in substantial motions practice regarding discovery. Plaintiffs filed numerous motions to compel discovery against Defendants, many of which obtained favorable results for Plaintiffs.

### C.    Plaintiffs' Motion for Class Certification

Plaintiff Barker moved for class certification on January 2, 2020. That motion was denied as moot on July 29, 2020 after her action was consolidated into the current action. Plaintiffs then filed a consolidated Amended Motion for Class Certification on January 12, 2020. The Court denied that Motion on September 19, 2021. The Court denied Plaintiffs' Motion to Reconsider on September 25, 2022. The Seventh Circuit Court of Appeals denied Plaintiffs' Motion for Appeal under Rule 23(f) on December 5, 2022.

### III.    Settlement History

The proposed Settlement Agreement was reached after extensive arm's length negotiations. The parties negotiated with the assistance of the Magistrate Judge during a settlement conference in November, 2019, and also engaged in several day-long mediation sessions conducted with the assistance of mediator John Van Winkle during the period between June and August, 2021, and May 2023, and follow-up communications with Mr. Van Winkle. Counsel for Plaintiffs and Kapsch then continued to negotiate with Mr. Van Winkle's assistance, ultimately resulting in the parties reaching the principal terms of the settlement in May 2023. The parties then notified the Court of their resolution, and worked for some time to negotiate the details of the settlement. Kapsch is only effectuating this settlement to avoid the expenses of litigation.

### IV.    Rule 23(a) and (b), Preliminary Approval, and Class Notice

The Parties filed their Motion for Preliminary Approval of the settlement agreement on November 8, 2023. *See* [Dkt. #381]. The Court granted the motion on November 27, 2023. *See* [Dkt. #386] Preliminary Approval Order. With respect to class certification, the Court found preliminarily that Plaintiffs met their burden of satisfying the Rule 23(a), (b)(2), and (b)(3) requirements. *Id.* at 3. Specifically, the Court held that Plaintiffs established numerosity, commonality, typicality, and adequacy, and that "there are questions of law and fact common to the Late Invoice Settlement Class Members and Missing Invoice Settlement Subclass Members which predominate over any individual questions" and that "a class action is a superior method for the fair and efficient adjudication of this controversy.'" *Id.* The Court preliminarily appointed Jacob R. Cox (Cox Law Office), Jon Noyes (Wilson Kehoe & Winingham), and William Winingham (Wilson Kehoe & Winingham) as Class Counsel. *Id.* The Court further approved the proposed class notice plan and preliminarily appointed Atticus Administration LLC as Settlement Administrator. *Id.* at 3–4.

The Parties respectfully offer that nothing has changed since that time and the detailed legal and factual analysis contained in the Motion for Preliminary Approval continues to evidence that the factors of Rule 23(a), (b)(2), and (b)(3) have been satisfied. The Parties incorporate by reference that same analysis for purposes of this motion, *see* [Dkt. 381] at 10-28, and request that the Court find that a settlement class should receive final approval and certification from the Court for purposes of this Motion pursuant to Rule 23(a), (b)(2), and (b)(3).

Atticus began the notice process shortly after the Preliminary Approval Order was entered. Atticus verified, formatted, and updated the mailing addresses of all Class Members

using the National Change of Address Database. Exh. A, Decl. of Bryn Bridley ("Bridley Decl.") ¶¶ 1-5. Atticus then caused the Court-Ordered Notice of Class Action Settlement to be printed and mailed to the 157,044 unique names and mailing addresses in the Class List. *Id.* at ¶ 6. Atticus then performed additional address searches using credit bureau and/or other public source databases for those notices that were returned as undeliverable (less than 10% of the notices that were mailed) and re-mailed notices. *Id.* at ¶ 7. After the returned mailings were sent to forwarding addresses or skip-traced, 95.88% of notices were successfully mailed to Class Members. *Id.*

On or about December 27, 2023, Atticus established a website [http://www.RiverlinkTollBridgeSettlement.com/] dedicated to this matter to provide information to the Class Members and to answer frequently asked questions. *Id.* at ¶ 8. The website was launched simultaneous to dissemination of the notice to Missing Invoice Settlement Subclass Members on December 27, 2023. *Id.* The website address was printed in the mailed Notice. *Id.* The website includes access to the complete Class Notice and other Settlement documents filed with the Court, answers to frequently asked questions, important Settlement dates and deadlines, and Atticus' contact information including an email address and toll-free telephone number. *Id.* The website has remained fully operational since its inception and remains accessible today. To-date, the website has received 3,547 visits. *Id.*

On or about December 27, 2023, Atticus also established a toll-free telephone number (1-888-200-7034) for potential Class Members to call and obtain information about the Settlement and request a Notice. *Id.* at ¶ 9. The introductory message directs callers to the Settlement website URL for additional settlement information and calls are answered by live customer service specialists during normal business hours. *Id.* Callers have the option to leave a

voicemail message and receive a callback if a representative is unavailable to answer a call or the call is placed after hours. *Id.* The toll-free line has been fully operational since it was launched and remains active at this time. *Id.* A total of 6,987 calls have been received on the toll-free line thus far. *Id.*

The Notice informed Class Members that requests for exclusion or objection to the settlement were to be postmarked by February 25, 2024. *Id.* at ¶¶ 9-10. As of February 29, 2024, Atticus had received just 17 requests for exclusion[1] and **NO** objections to the settlement. *Id.* As indicated in the Notice and ordered by the Court in its Preliminary Approval Order, any objection to the settlement not timely submitted is deemed waived and will neither be heard nor have the right to appeal approval of the settlement. [Dkt. 386] at 5.

## SUMMARY OF SETTLEMENT

### I.    Class Definition

The proposed Settlement Agreement encompasses the claims of all UVAs who have paid $5 fees for failure to timely pay a 1st Toll Notice ("Late Invoice Class Members"), including those who paid fees assessed for failure to timely pay a toll notice that allegedly was not printed and mailed ("Missing Invoice Subclass Members"). The definition of the Class whose certification is sought is based on a stipulated list ("List") between Kapsch and Plaintiffs including:

A.    The Late Invoice Settlement Class means any UVA user of the Riverlink Bridges who paid a $5 fee assessed for failure to timely pay a 1st Toll Notice issued pursuant to the LSIORB Business Rules.

B.    The Missing Invoice Settlement Subclass means any UVA user of the Riverlink Bridges who paid any/all fee(s) or penalty(ies) assessed after the UVA user failed to pay a 1st Toll Notice, 2nd Toll and/or Violation Notice that was not printed and mailed and where such user was not refunded or credited the fee(s) and/or penalty(ies) prior to the Execution Date of the Settlement Agreement.

---

[1] Atticus received a 17th opt out notice/ request for exclusion on March 1, 2024 after completing its affidavit on February 29, 2024 indicating 16 had been received.

This amounts to 1,784,918 UVAs that make up the Late Invoice Settlement Class, of which there are 170,070 UVAs that make up the Missing Invoice Settlement Subclass. Excluded from both the Late Invoice Settlement Class and the Missing Invoice Settlement Subclass are Defendants; the officers, directors and employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives (including their heirs or assigns) of any Defendant; any federal governmental entities and instrumentalities of the federal government; and any judicial officer presiding over the Action, and any member of her or his immediate family and judicial staff. Additionally excluded are all Persons who make a timely election to be excluded from the proposed Classes as approved by the Court in the Final Approval Order and all Persons who are not on the List.

Members of the Settlement Class and Subclass are referred to herein respectively as "Late Invoice Settlement Class Members" and "Missing Invoice Settlement Subclass Members" and together as the "Settlement Class and Subclass Members."

## II.    Release

Once the settlement becomes final and Kapsch funds the Settlement Fund, Plaintiffs and Late Invoice Settlement Class and Missing Invoice Settlement Subclass Members will release any and all claims against Kapsch (and certain related individuals and entities) related to the issues in the Amended Complaint. The details of the release are contained in Paragraphs 22–26 of the Settlement Agreement.

## III.    Settlement Fund, Fees, and Expenses

The previously approved and distributed settlement fund in this matter, practically, addressed all of the same Settlement Class and Subclass Members. To maximize the amount of actual recovery for the Settlement Class and Subclass Members, the parties proposed an

approach to distribution of the Settlement Fund that leveraged the prior settlement with Gila to reduce settlement administration costs. Specifically, each Missing Invoice Settlement Subclass Member first received notice via a postcard. That notice directed Settlement Class and Subclass Members to an existing website: www.RiverlinkTollBridgeSettlement.com which contains all relevant details of the settlement, including updated documents, directions, and contact information for relevant parties. Then, after approval of this Settlement, the parties will send checks to the Missing Invoice Settlement Subclass members. For efficiency and to ensure the maximum amount of funds reaches the individual members, however, the parties will work with the Gila settlement's class administrator to include funds for this settlement with the funds that will be issued in a requested second distribution for the Gila settlement that is to be issued to the same Subclass Members and as previously approved by this Court. [Dkt. #387].

No attorneys' fees, expenses, or class representative awards will be distributed out of the Settlement Fund without the Court's approval. Plaintiffs are contemporaneously filing motion seeking such amounts, contingent on final approval of the Settlement Agreement.

The proposed Settlement Agreement provides that Plaintiffs may seek a reasonable portion of the settlement fund to be set aside for litigation costs, attorneys' fees, and class representative incentive awards. Plaintiffs are seeking approximately $31,000 of the Settlement Fund to cover litigation costs incurred in prosecuting claims against Kapsch,[2] plus additional settlement administration expenses incurred to provide mailed notice and other communications to the Settlement Class (approximately $110,000). Plaintiffs are also seeking an attorneys' fee for Class Counsel of one-third of the Settlement Fund, or $151,666.66, and incentive rewards of

---

[2] These amounts include only those costs incurred by counsel after reaching settlement with Gila in 2021, but while still litigating claims against Kapsch including expenses such as expert reports, depositions, ongoing case-related discovery, ESI expenses, and mediator's fees.

$2,000 for each Named Plaintiff for their representation of the Settlement Class and Subclass against Gila. This request is submitted via separate motion per the Court's Preliminary Approval Order, and Kapsch takes no position on that Motion. Missing Invoice Settlement Subclass Members were notified of and had the opportunity to object to these costs, fees, and awards, but not a single class member raised any objection.

### LEGAL STANDARD FOR FINAL APPROVAL OF CLASS SETTLEMENT

"Federal courts naturally favor the settlement of class action litigation*." Isby v. Bayh*, 75 F. 3d 1191, 1196 (7th Cir 1996). "Normally, a settlement is approved where it is the result of 'contentious arm's length negotiations, which were undertaken in good faith by counsel and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Campbell v. Advantage Sales & Mktg. LLC*, 2015 U.S. Dist. LEXIS 57218, at *3-4 (S.D. Ind. Apr. 24, 2012). "Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action. Before such settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002), quoting *Joel A. v. Giuliani*, 218 F.3d 132,138 (2nd Cir. 2000). "A district court may approve a settlement only if it is 'fair, reasonable and adequate.'" *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006) citing Fed. R. Civ. P. 23(e)(1)(C).

In making this determination, the Court is to consider whether the following factors are satisfied, as set forth in Fed. R. Civ. P. 23(e)(2):

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Although settlement approval is governed by Rule 23(e)(2) as it came into effect in December 2018, the amended Rule 23(e)(2) "essentially codified [the] prior practice" of courts. William B. Rubenstein, *et al.*, Newberg on Class Actions § 13:13 (5th ed.) ("Newberg"). Case law applying the pre-2018 version of Rule 23 therefore remains relevant to the determination of preliminary approval of a proposed settlement. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *5 (N.D. Ill. May 14, 2019) ("The six factors identified by the Seventh Circuit in *Wong v. Accretive Health, Inc*., 773 F.3d 859, 863-64 (2014), and numerous other cases subsume most of the factors listed in Rule 23(e)(2)."); *Hale v. State Farm Mut. Auto. Ins. Co*., No. 12-0660, 2018 WL 6606079 at *2 (S.D. Ill. Dec. 16, 2018) (the amended Rule 23 "considerations overlap with the factors previously articulated by the Seventh Circuit"). This body of caselaw provides further guidance that, in order to evaluate the fairness of a settlement, a district court considers the following factors: the strength of plaintiffs' case compared to the amount of defendant's settlement offer; an assessment of the likely complexity, length, and expense of the litigation; an evaluation of the amount of opposition to settlement among affected parties; the opinion of competent counsel; and the stage of the proceeding and the amount of discovery completed at the time of settlement. *Synfuel Techs., Inc*, 463 F.3d at 653, quoting *Isby*, 75 F.3d at 1199.

Notably, the issue before the Court is whether the requirements of Rule 23, as they relate to a settlement only class, are satisfied. Settlement only classes are to be considered and approved (or not) based on the factors set forth in Rule 23 except that "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Products Inc., v. Windsor*, 521 U.S. 591, 620 (1997); *see also* MCL 4th §21.132.

A sister court in this circuit has recently addressed the variation in analysis that occurs in proposed settlement classes in detail, stating in pertinent part:

> A class satisfies the predominance requirement when "common questions represent a significant aspect" of a case and can be "resolved for all members" of a "class in a single adjudication." *Id.* (quoting 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (3d ed. 2011)). A question "becomes a common question" when the "same evidence will suffice for each member to make a prima facie showing." *Id.* at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). If, on the other hand, "members of a proposed class will need to present evidence that varies from member to member" in order to "make a prima facie showing on a given question," that question remains an individual one. *Id.* (quoting *Blades*, 400 F.3d at 566).
>
> But the case management and judicial economy concerns at the heart of the predominance requirement matter less when plaintiffs seek to certify a class for settlement purposes only. *See* Fed. R. Civ. P. 23(b) advisory committee's note to 1966 amendment. In deciding whether to certify a settlement-only class, "a district court need not inquire whether the case, if tried, would present intractable management problems," an inquiry typically necessary to satisfy Rule 23(b)(3)'s predominance requirement. *Douglas v. W. Union Co.*, 328 F.R.D. 204, 211 (N.D. Ill. 2018) (emphasis added) (quoting *Amchem*, 521 U.S. at 620). Accordingly, "individualized issues" that may bar certification for adjudication purposes will not necessarily bar certification for settlement. *See* 2 William Rubenstein, Newberg on Class Actions § 4:63 (5th ed. 2021) (hereinafter Newberg). In fact, courts "regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns." *Id.*

*T.K. v. Bytedance Tech. Co.*, No. 19-CV-7915, 2002 WL 888943, at *5 (N.D. Ill. Mar. 25, 2022) (entering order granting final approval of settlement class).

In this matter, the Court identified concerns regarding the Missing Invoice and Late Invoice Classes regarding predominance due to concerns about ascertainability of the identities of the class members as well as manageability issues relating to whether minutiae such as the number of days between invoice generation and payment for each class member would overrun the case. [Dkt. 340] at 5. However, as discussed herein, these issues do not exist for the proposed settlement classes, which will be identical to the settlement classes approved in the Gila settlement.

Specifically, the Late Invoice Settlement Class consists of an identifiable list of individuals that the parties agree paid $5 after being sent a 2nd Toll Notice. The Missing Invoice Settlement Subclass consists of a subset—identified individuals/unregistered video users that the parties agreed paid any/all fees or penalties assessed after the unregistered video user failed to pay a 1st Toll Notice, 2nd Toll and/or Violation Notice that was not printed and mailed, and where that user was not refunded or credited the fee. The parties agreed to these settlement class parameters for purposes of effectuating a settlement—a contention that would remain disputed otherwise.

The minutiae and manageability concerns that might have existed at trial do not affect the agreed settlement class and subclass, as sought jointly by the parties, and thus such concerns as previously raised by the Court in denying class certification will not bar certification of the settlement class so long as the requirements of Rule 23 are met. This same rationale was previously considered and a settlement class was then certified by this Court in approving settlement on a class-wide basis with Defendant Gila, LLC. *See generally* [Dkt. # 323]. Also flowing from that approved settlement is the fact that the settlement classes hold certain claims against Kapsch that can only be released by those classes.

## ANALYSIS

**I.      The Settlement Should Be Granted Final Approval Because It Is Fair, Adequate, and Reasonable.**

An analysis of the relevant factors evidences that the Court should enter an Order finding that the settlement is fair, adequate, and reasonable and providing final approval.

### A.      Class Representatives and Class Counsel Have Adequately Represented the Class.

Melissa Barker, Monique Outzen, and Robert Ardaiolo have participated in this litigation and been available to counsel since the inception of their respective lawsuits. Class Counsel[3] have vigorously prosecuted this case for nearly five years. Class Counsel have represented the Class's interests through two rounds of motions to dismiss (including a successful objection to the Magistrate's Order granting the first such motion to dismiss), two heavily contested Motions for Class Certification, a Motion to Reconsider the Court's Order denying Plaintiffs' Motion for Class Certification, a Motion and Cross-Motion for Summary Judgment, and through extensive discovery and discovery-related motions. Together, Cox Law Office and Wilson Kehoe Winingham have invested more than a hundred thousand dollars in litigation expenses and thousands of hours of attorney time. The Court itself expressly found that the named Plaintiffs and counsel adequately represented the proposed classes in its Order on Plaintiffs' Amended Motion for Class Certification, [Dkt. #186] at 28, in its approval of a substantively identical settlement last year [Dkt. #324] at 10, and in its Order for Preliminary Approval of this Settlement. [Dkt. #386].

### B.      The Settlement Agreement Was Negotiated at Arm's Length.

In evaluating a class action settlement, courts must consider whether it was negotiated at

---

[3] Reference to "Class Counsel" as used herein is for convenience only, as the Court has only preliminarily appointed class counsel.

arm's length. Fed. R. Civ. P. 23(e)(2)(B). This case is at the opposite end of the spectrum from the "product of collusion" that gives rise to this concern. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002).

First, the Settlement Agreement is the product of years of litigation, not the type of quick settlement that sometimes raises concerns about collusion. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) ("By the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases."). As the docket in this case reflects, nearly every substantive and procedural aspect of this case has been aggressively litigated since 2019.

Second, the participation of experienced mediators in the settlement negotiations "reinforces that the Settlement Agreement is non-collusive." *Johnson v. Brennan*, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011). Here, the Settling Parties participated in several day-long mediation sessions with a highly qualified neutral mediator, John Van Winkle, before reaching an agreement in principle, and the Settling Parties then continued to negotiate for months over the fine print of the settlement. "A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (discussing settlement negotiations with "an experienced mediator" and over "several telephone conferences"); *see also Wong*, 773 F.3d at 864 ("Finally, and importantly, the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated"); *Snyder*, 2019 WL 2103379, at *4 (finding the proposed settlement was reached through arm's length negotiations when the negotiations were conducted "via three separate

and independent mediators").

Third, the terms of the Settlement Agreement itself reinforce its non-collusive nature. The consideration to be paid by Kapsch includes a substantial amount of cash, and no unclaimed funds will revert to Kapsch. [Dkt. 381-1] *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) ("reversion of unclaimed refunds to the putative wrongdoer" is indicative of collusion). Class Counsel's proposed fees are well within the reasonable range. *See Ormond v. Anthem, Inc.*, No. 1:05-CV-01908-TWP, 2012 WL 5878031, at *5 (S.D. Ind. Nov. 20, 2012) (collecting cases in which courts have approved "a percentage market rate of 33.3%").

### C.    The Relief Provided for the Class Is Substantial and Appropriate.

Given the barriers to group recovery, a $455,000 settlement payment is an excellent result for the settlement class. It affords Settlement Class Members immediate relief in the form of a payment, as opposed to the speculative result of continuing protracted litigation without stipulation on the membership of the class. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) ("immediate payment of substantial amounts to Class Members," supports final approval "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road") (quotation marks omitted). The proposed settlement is undoubtedly within the "range of possible approval." *General Motors*, 594 F.2d at 1124.

Furthermore, cy pres relief will be used only for the small portion of the Settlement Fund, if any, that remains unclaimed or rejected after distributions to Missing Invoice Settlement Subclass Members. The use of a cy pres award is appropriate in these circumstances. *See* American Law Institute, Principles of the Law of Aggregate Litigation § 3.07 (2010)

(endorsing this approach); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *5 (N.D. Ill. Mar. 2, 2017), *aff'd*, 896 F.3d 792 (7th Cir. 2018) (rejecting objections to cy pres award for unclaimed funds after multiple distributions). The National Consumer Law Center is an appropriate proposed cy pres recipient, but the Court may choose a different cy pres recipient if it so chooses.

> **1.    Trials and Appeal(s) Would Present Significant Costs, Risks, and Delays for Any Settlement Class Members' Recovery.**

Rule 23(e)(2) may require courts "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "[T]he essence of a settlement is compromise an[d] abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes." *Armstrong v. Board of School Dir. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (abrogated on other grounds) (citations omitted).

While Plaintiffs remain confident in their claims against Kapsch and their ability ultimately to prevail at trial, there are significant obstacles in continuing to litigate this action. The claims already were the subject of a Magistrate's Order granting dismissal once. The current posture of the case is that the Court has denied class certification—so Late Invoice Class Members and Missing Invoice Subclass Members, except for the named Plaintiffs, would receive no remedy in this matter. Even though significant discovery had been completed, much work remains before a trial that could net a judgment in favor of the Settlement Class Members (if any)—including re-filing summary judgment briefings, a trial resulting in a final judgment in favor of the individual Plaintiffs, an appeal of the final judgment resulting in the certification of a putative class, a second trial with a judgment in favor of the Settlement Class Members.

Given the passage of time (years since the Business Rules were first adopted and tolling began), it is likely that Plaintiffs would face evidentiary obstacles at trial if, for example, witnesses have forgotten relevant information. Rulings on summary judgment could result in appeals by or against Kapsch, as could the results of the trials. Such proceedings would add significant costs and delays to the litigation before the Settlement Class could receive any conceivable benefit from this litigation.

Given the potential costs, risks, and delay of trial and appeal, the proposed $455,000 cash settlement presents a very favorable result for the class.

> **2.    The Proposed Method for Distributing Relief Is Simple and Effective.**

This Rule 23(e)(2) factor requires courts to look at "the method of processing class-member claims." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(2)(C)(ii)). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*. at 40 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). Here, there is no demand at all on Settlement Class and Settlement Subclass Members and their successors; the Settlement Fund will be distributed without the need for anyone to submit a claim form.

The Parties' proposed plan of allocation is to mail checks for settlement distributions directly to class members according to the following timeline:

| Date | Event |
|---|---|
| Forty-five (45) days after entry of Final Approval Order[4] | Mail checks for the settlement distribution to each class member in an amount as determined by the formula identified in the Settlement Agreement. These checks will be |

---

[4] This distribution date will allow for the passing of the appeal deadline after entry of a Final Approval Order.

| | mailed alongside payments from Gila—*see* [Dkt. 387]—to avoid any additional administrative costs for the Kapsch settlement until the second round of settlement distribution checks. |
|---|---|
| Two hundred twenty-five (225) days after entry of Final Approval Order | Mail a second round of settlement distribution checks to those members who cashed the initial settlement distribution check, with the cost of administration and mailing of the second check to be deducted from the amount owed to each respective member requiring a second mailing. If the cost of such distribution is substantively similar to or more than the amount of any such distribution, a motion by Class Counsel seeking leave to make cy pres award to the National Consumer Law Center of any remaining funds |
| Four hundred five (405) days after entry of Final Approval Order (if necessary) | Any remaining amounts in the settlement fund will be the subject of another round of distribution to those members who cashed the second round of distributions or, if the cost of such mailing is substantively similar to or more than the amount of any such distribution, a motion by Class Counsel seeking leave to make cy pres award to the National Consumer Law Center of any remaining funds. |

Atticus Administration LLC, a company that specializes in claims administration, was previously approved by the Court to be engaged to conduct the notice processes—specifically, to provide a notice to the Missing Invoice Settlement Subclass and track opt-outs. The Settlement Administrator will also be used to distribute settlement funds for the settlement, if approved. To increase the net recovery to Settlement Subclass Members, the Parties propose leveraging an existing distribution of settlement funds with Gila and Plaintiffs settlement for the initial distribution, and so request that KCC, LLC also be appointed Settlement Administrator for the limited purpose of mailing the initial distribution to the Settlement Subclass Members. *See generally* [Dkt. 387]. Because of the relatively low effect of opt-out claims on individual Settlement Subclass Members' recovery, cy pres relief will more appropriately address any "leftover" funds. *See* supra at 13. Each Settlement Class Member

will be able to receive immediate relief after the Final Settlement Approval. *See* Settlement Agreement, ¶ 34.

>         **3.**      **The Proposed Attorneys' Fee Award Is Reasonable and Fair.**

"The Seventh Circuit Court of Appeals uses a percentage basis rather than a lodestar or other basis when determining a reasonable fee." *Will*, 2010 WL 4818174, at \*2 (citing *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir.1998); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994)); *see also Cooper v. IBM Pers. Pension Plan*, No. 99-829-GPM, 2005 WL 1981501, at \*3 (S.D. Ill. Aug. 16, 2005), *reversed and remanded on other grounds*, 457 F.3d 636 (7th Cir. 2006) ("The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class."). Class Counsel is seeking no more than one-third of the Settlement Fund. As detailed in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Representative Plaintiffs' Incentive Awards, one-third of a common fund is a standard rate in complex class actions that reflects the risk that counsel takes on by accepting a case that may yield no fee at all. *See Ormond*, 2012 WL 5878031, at \*5 (collecting cases in which courts have supported "a percentage market rate of 33.3%" when granting attorneys' fees). Class Counsel are owed reimbursement of approximately $31,000 in litigation expenses, plus additional settlement administration expenses that are due to the Settlement Administrator. Given the complexity of the case and the positive result for the settlement class, such an award is reasonable and fair.

>    **D.**      **The Proposed Settlement Agreement Apportions Settlement Funds Equitably Among Class Members.**

Each Missing Invoice Subclass Member will receive a pro rata share of the Settlement Subclass Member's alleged damages based on the amount of fees/penalties paid by that Member, and will be mailed a check in the amount of the proposed settlement alongside the

initial Notice. The Settlement Agreement's distribution plan recognizes that the Settlement Class members have been notified once before regarding this Action, and ensures that reasonable efforts to locate Missing Invoice Settlement Subclass Members and their successors and/or beneficiaries to distribute their portions of the Settlement Fund have been taken. Only the small amount remaining in the custody of the Settlement Administrator after that distribution is approved, if any, will be distributed by the Settlement Administrator to a cy pres recipient approved by this Court. *See supra* at 13.

## II.    There Are No Other Agreements to Be Identified under Rule 23(e)(3) Aside from the Settlement Agreement.

Rule 23(e)(3) requires the parties seeking preliminary approval of a class action settlement to "file a statement identifying any agreement made in connection with the proposal." The parties have submitted to the Court the agreement with Atticus regarding administration of the settlement. Plaintiffs and Kapsch are not parties to, and are not aware of, any other agreement to be identified under Rule 23(e)(3).

## III.    The Court Should Authorize the Settlement Administrator to Use the Settlement Fund to Satisfy the Settlement Administrator's Invoice for Services Provided in Relation to Providing Notice to the Class

Finally, in conjunction with the entry of the Final Approval Order and Order on Plaintiffs' Motion for Attorneys' Fees, Costs and Contribution Awards, the Court should authorize the Settlement Administrator to distribute $110,087 to itself as compensation for the services provided and postage utilized in providing Notice to the class. Those services and expenses were incurred and invoiced at the rates in the contract provided to and approved by the Court in Plaintiffs' Motion for Preliminary Approval. The Court should further approve Plaintiff's counsel to authorize payment for additional expenses of administration from the Settlement Fund, including the printing and mailing of the Settlement Distribution Checks,

upon verification that the Settlement Administrator has completed such administration.

Notably, the Settlement Agreement included the requirement that the settlement fund be used for payment of administration and notice. Even if the Court were to determine to not grant final approval as sought herein, amounts paid to the settlement administrator from the settlement fund for purposes of notice and administration after preliminary approval are not refundable to Kapsch upon rescission of the Settlement Agreement but instead are to be paid to the Settlement Administrator using the settlement funds. *See* [Dkt. 381-1] at ¶ 47. Thus, the Court should authorize distribution to the Settlement Administrator for the above amount along with its entry and Order on the pending motions for final approval and an award of fees, costs and contribution awards.

## CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court enter an order, in the form provided herewith, providing the relief requested in this Motion including by (1) granting final approval and certification of the Settlement Class; (2) granting final approval of the Settlement Agreement and adopting its provisions into the Court's order by reference; (3) granting final approval and designation of Plaintiffs Monique Outzen, Robert Ardaiolo, and Melissa Barker to continue as class representatives; (4) granting final approval and appointing the undersigned attorneys from Cox Law Office and Wilson Kehoe & Winingham to continue as Class Counsel; (5) granting final approval and appointing Atticus Administration, LLC to continue as Settlement Administrator and appointing KCC, LLC to serve as a Settlement Administrator for the limited capacity of mailing the initial distribution under the Settlement Agreement; (6) directing that Atticus and KCC are to administer and distribute the settlement fund in accordance with the plan of allotment as set forth in this Motion and in the Settlement

Agreement; (7) authorizing distribution to the Settlement Administrator from the settlement fund of an amount equal to the amount already incurred and invoiced by the Settlement Administrator in administering and providing notice of the proposed settlement to Class members and authorizing Plaintiffs' counsel to approve future payment from the Settlement Fund to the Settlement Administrator upon completion of additional administration obligations identified herein (including the printing and mailing of settlement distributions); and (8) entering final judgment against Defendant Kapsch TrafficCom USA, Inc.

Respectfully submitted,

/s/ Jacob R. Cox
Jacob R. Cox, Attorney No. 26321-49
**COX LAW OFFICE**
1606 N. Delaware Street
Indianapolis, Indiana 46202
T: 317.884.8550
F: 317.660.2453
jcox@coxlaw.com

/s/ Jon Noyes
Jon Noyes, Attorney No. 31444-49
William E. Winingham, Atty. No. 1309-49
**WILSON KEHOE WININGHAM LLC**
2859 N. Meridian Street
Indianapolis, Indiana 46204
T: 317.920.6400
F: 317.920.6405
jnoyes@wkw.com.com
winingham@wkw.com

*Attorneys for Plaintiffs Melissa Barker, Monique Outzen and Robert Ardaiolo*

/s/ Manny Herceg
Tracy N. Betz, Atty. No. 24800-53
Manny Herceg, Atty. No. 29956-06
James R. A. Dawson, Atty. No. 20086-49
Vivek R. Hadley, Atty. No. 32620-53

Steven T. Henke, Atty. No. 33708-32
TAFT STETTINIUS & HOLLISTER LLP
Indianapolis, IN 46240
Telephone: (317) 713-3500
tbetz@taftlaw.com
mherceg@taftlaw.com
jdawson@taftlaw.com
vhadley@taftlaw.com
shenke@taftlaw.com
*Attorneys for Defendant Kapsch TrafficCom USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2024, a copy of the foregoing document was filed electronically via the Court's CM/ECF system. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jacob R. Cox_____
Jacob R. Cox