UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MONIQUE OUTZEN individually and on behalf of all others similarly situated, ROBERT ARDAIOLO individually and on behalf of all others similarly situated, MELISSA BARKER, an individual, on behalf of herself and all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>KAPSCH TRAFFICCOM USA, INC.<br><br>   Defendant. | Case No. 1:20-cv-01286-TWP-MJD |

**FINAL APPROVAL ORDER AND ORDER ON MOTION FOR ATTORNEYS' FEES, COSTS AND CASE CONTRIBUTION AWARDS**

Plaintiffs, on their own behalf and on behalf of all others similarly situated, and Defendant submitted to the Court a Motion for Final Approval of the Class Action Settlement ("Motion") seeking final certification of the Settlement Class and approval of the Settlement Agreement (the "Agreement"), and the exhibits attached thereto, entered into by and between Plaintiffs and Defendant Kapsch Trafficcom USA, Inc. Plaintiffs also submitted an unopposed Motion for Attorneys' Fees, Costs and Case Contribution Awards on March 1, 2024 in accordance with the deadline set forth in the Court's Preliminary Approval Order.

On November 27, 2023, this Court entered an Order that preliminarily approved the Agreement and conditionally certified the Settlement Class for settlement purposes only (the "Preliminary Approval Order"). Due and adequate notice having been given to the Settlement Class in compliance with the procedures set forth in the Agreement and the Preliminary Approval Order, this Court having considered all papers filed and proceedings had herein, having held a final Fairness Hearing, and otherwise being fully informed of the premises and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

## **FINAL APPROVAL ORDER**

1.    This Final Approval Order adopts and incorporates by reference the definitions, terms and requirements in the Agreement, and all terms used herein shall have the same meanings as set forth in the Agreement.

2.    This Court has jurisdiction over the subject matter of this Action and over all Parties to these Actions, including all members of the Settlement Class and Subclass.

3.    The Court finds that the Settlement of the Action, on the terms and conditions set forth in the Agreement, is in all respects fair, reasonable, adequate, and in the best interest of the Settlement Class and Subclass Members, especially in light of the benefits to the Settlement Class and Subclass Members; the strength of the Parties' claims and defenses; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; and the risk of collecting any judgment obtained on behalf of the Settlement Class and Subclass.

4.    Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), this Court hereby certifies the Settlement Class and Subclass solely for purposes of effectuating this Settlement. The Settlement Class and Subclass are defined as:

   A. The Late Invoice Settlement Class, including any UVA user of the Riverlink Bridges who paid a $5 fee assessed for failure to timely pay a 1st Toll Notice issued pursuant to the LSIORB Business Rules.

   B. The Missing Invoice Settlement Subclass, including any UVA user of the Riverlink Bridges who paid any/all fee(s) or penalty(ies) assessed after the UVA user failed to pay a 1st Toll Notice, 2nd Toll and/or Violation Notice that was not printed and mailed and where such user was not refunded or credited the fee(s) and/or penalty(ies) prior to the Execution Date of the Settlement Agreement.

5.    Individuals within the Settlement Class had the right to exclude themselves by way of the opt-out procedure set forth in the Preliminary Approval Order. Excluded from the Settlement Class are those persons who validly and timely requested exclusion from the Settlement Class, as

applicable, by way of the opt-out procedure, as identified by the listing of names of the Class Members who submitted valid requests for exclusion from the Class, as set forth in the declaration of Settlement Administrator Bryn Bridley and filed by Class Counsel (the "Opt-Outs"). See [Dkt. # 322-1].

6. Also excluded from both the Late Invoice Settlement Class and the Missing Invoice Settlement Subclass are Defendants, the officers, directors and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, and any member of his or her immediate family and judicial staff.

7. For purposes of this Settlement only, this Court finds and concludes that: (a) the Settlement Class and Subclass members are so numerous that joinder of all individuals in the Settlement Class and Subclass is impracticable; (b) there are questions of law and fact common to the Settlement Class and Subclass which predominate over any individual questions; (c) Named Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of all individuals in the Settlement Class and Subclass; (d) the Named Plaintiffs' claims are typical of the Settlement Class and Subclass Members' claims; (e) injunctive relief is appropriate respecting the class as a whole; and (f) a class action is a superior method for the fair and efficient adjudication of the controversy, considering:  (i) the interests of the Settlement Class and Subclass Members in individually controlling the prosecution of the separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by Settlement Class Members; (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum; and (iv) the lack of difficulties likely to be encountered in the management of this class action as part of a settlement. The Settlement Class and Subclass are thus provided final approval and certification.

8. Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Defendant Kapsch Trafficcom USA, Inc. prepared and provided to the appropriate officials any notices required by CAFA, as specified by 28 U.S.C. § 1715, on November 20, 2023, within ten (10) calendar days of the filing of the Settlement Agreement.

9. Pursuant to the Court's Preliminary Approval Order, the approved Notice was sent to Missing Invoice Settlement Subclass Members via direct mail, and a website and toll free phone line were also established to provide information about the settlement. The form and method for notifying the class members of the Settlement and its terms and conditions were in conformity with this Court's Preliminary Approval Order, satisfied the requirements of Due Process, and constituted the best notice practicable under the circumstances. The Court further finds that the Notice plan was clearly designed to advise the Settlement Subclass Members of their rights and clearly and concisely stated, in plain, easily understood language, all features of the Actions and Settlement.

10. Pursuant to the Court's Preliminary Approval Order, no notice was required for members of the Late Invoice Settlement Class due to the size of the class, expense of notice, and nature of the proposed injunctive/declaratory relief obtained on behalf of the Settlement Class. The Court finds that good cause existed and still exists for the determination to not require such notice.

11. This Court hereby dismisses with prejudice on the merits and without costs or attorneys' fees (except as otherwise provided in the Agreement and the Court's Order on Plaintiffs' pending Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards) the claims in the Action against Defendant Kapsch Trafficcom USA, Inc. (subject to retention of jurisdiction to enforce the Agreement and the Settlement).

12. The Released Parties include Defendant Kapsch TrafficCom USA, Inc. and its former, current, and future parents, subsidiaries, affiliates, officers, directors, employees, agents or attorneys. The Released Parties do not include INDOT, KPTIA, KYTC, the Indiana Finance

Authority, the Joint Board, or the States of Indiana or Kentucky or any of their agencies, extensions, elected representatives, or employees.

13. The Named Plaintiffs and each Settlement Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have fully, finally and forever released the Released Parties from all Released Claims described in the Agreement.

14. Settlement Class and Subclass Members, and any person or entity allegedly acting on behalf of Settlement Class and Subclass Members, either directly, representatively or in any other capacity, are enjoined from commencing or prosecuting against any and all of the Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims; provided, however, that this injunction shall not apply to non-released claims of Opt-Outs.

15. Without affecting the finality of this Final Approval Order in any way, this Court retains continuing jurisdiction of all matters relating to the modification, interpretation, administration, implementation, effectuation, and enforcement of this Agreement and the Settlement and the disposition of the Settlement Fund.

16. Class Counsel are to continue in their role to oversee all aspects of the Agreement and Settlement. Upon notice to Class Counsel, Defendant may seek from this Court such further orders or process as may be necessary to prevent or forestall the assertion of any of the Released Claims in any other forum, or as may be necessary to protect and effectuate the Settlement and this Final Approval Order.

17. As with the approval of a settlement, courts must determine whether the plan for allocation of settlement funds is fair, reasonable, and adequate. *Summers v. UAL Corp. ESOP Comm.*, No. 03 C 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005). Atticus Administration, LLC and KCC are to continue in their combined role as Settlement Administrator, and shall utilize

the common settlement fund to pay for class administration costs, the award of attorneys' fees, costs and contribution awards set forth below, and then make distributions in accordance with the plan of distribution as set forth in Plaintiffs' Motion for Final Approval Order. Atticus Administration, LLC is further authorized to distribute funds to itself in the amount invoiced and submitted to the Court, $110,087, for services it provided to administer and provide notice to the Settlement Class and Subclass after being approved as the Settlement Administrator in the Preliminary Approval Order entered by this Court. Plaintiffs' counsel is further authorized to approve payment to KCC for administrative expenses incurred to print and mail distribution checks from the Settlement Fund as identified in the plan of distribution submitted in the Motion for Final Approval upon invoice and confirmation from KCC that it has completed such task(s).

18. If an appeal, writ proceeding, or other challenge is filed as to this Final Approval Order, and if thereafter the Final Approval Order is not ultimately upheld, all orders entered, stipulations made and releases delivered in connection herewith, or in the Agreement or in connection therewith, shall be null and void to the extent provided by and in accordance with the Agreement.

### ORDER ON MOTION FOR ATTORNEYS' FEES, COSTS AND CASE CONTRIBUTION AWARDS

19. The Settlement Agreement provides that Attorneys' Fees, Costs and Case Contribution Awards are to be sought by Plaintiffs via Motion to this Court and then paid from the settlement common fund after Order by the Court.

20. Plaintiffs filed a Motion for Attorneys' Fees, Costs and Case Contribution Awards on March 1, 2024 in accordance with the deadline set in the Preliminary Approval Order.

21. Plaintiffs' Motion requests an award of attorneys' fees equal to 1/3 of the common settlement fund, reimbursement of $31,038.57 in costs incurred by Plaintiffs' counsel in pursuing

the claims against Kapsch, and class representative contribution awards of $2,000 to each of the of the named Plaintiffs. The amount sought in this motion was also identified in the Motion for Preliminary Approval and was brought to the attention of class members in the Notice that was sent to settlement class members pursuant to the Court's Preliminary Approval Order.

22. In support of this Motion, Plaintiffs have submitted the declarations of Class Counsel Jacob R. Cox and Jon Noyes, and further cite previously-filed declarations of Class Counsel Jacob R. Cox, Jonathan Noyes, William Winingham, and the declaration of Attorney Irwin Levin who opines on the reasonableness of the fees sought by Class Counsel as well as the amount of time spent and hourly rates proposed by Class Counsel in relation to any lodestar analysis this Court determines to conduct.

23. The class members have raised no objections to the attorneys' fees, costs and contribution awards as requested by Class Counsel and the Motion is unopposed.

**A 1/3 CONTINGENCY FEE IS AN APPROPRIATE ATTORNEYS' FEE**

24. It is well established, in this Circuit and elsewhere, that attorneys whose efforts result in a "common fund" may, and should, be compensated with a percentage of the recovery. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (fee awards in common fund cases should be a percentage of the recovered fund). Supreme Court cases supporting this compensation structure date back to at least 1882:

> Since the decision in *Trustees v. Greenough*, 105 U.S. 527 (1882) and *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. *See, Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *cf Hall v. Cole*, 412 U.S. 1 (1973) . . . . The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[1]

---

[1] The common fund doctrine is based on the notion that all "those who have benefited from litigation should share its costs." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989); *see also In*

25. In this Circuit, the percentage-of-recovery approach is not only permitted, it is the preferred approach to determining attorneys' fees. *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("it is commonplace to award the lawyers for the class a percentage of the fund, [ ] in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis") (internal citations omitted); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Cont'l Ill. Sec. Litig.* ("*Continental I*"), 962 F.2d 566, 572-73 (7th Cir. 1992) (expressing the Seventh Circuit's preference for the percentage method); *Williams v. Rohm & Haas Pension Plan*, No. 04-0078, 2010 WL 4723725, at *1 (S.D. Ind. Nov. 12, 2010) ("a *post-facto* determination of the theoretical results of hypothetical negotiations between counsel and a sophisticated legal services consumer as of the time the representation began, despite its difficulties, remains the preferred method in this Circuit for awarding a market- based fee"), *aff'd*, 658 F.3d 629 (7th Cir. 2011); *In re Ready-Mixed Concrete Antitrust Litig.*, No. 05-979, slip op. at 9-10 (S.D. Ind. Mar. 31, 2009) (the Seventh Circuit "has expressed a preference for the percentage of the fund approach"). *See also* American Law Institute, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.13(b) (2010) ("a percentage-of-the-fund approach should be the method utilized in most common-fund cases").

26. The normal range of contingent fees is 33% to 40%, *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming an award of 38% of the recovery), and awards of 33% or more are common in this District and elsewhere in the Seventh Circuit. *See, e. g.*, *Campbell v. Advantage Sales & Mktg. LLC*, No. 09-01430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (McKinney, J.) (awarding one-third of recovery as attorneys' fees); *In re Guidant Corp. ERISA Litig.*, No. 05-

---

re Synthroid Mktg. Litig. ("*Synthroid II*"), 325 F.3d 974, 977 (7th Cir. 2003) (each class member "must bear their portion of the legal expense"). As then District Judge Ann Williams wrote in *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), "[t]he purpose of allowing fees to be paid from a common fund is to spread the costs of litigation proportionately among the class members benefitted by the lawsuit." 942 F. Supp. at 385, *aff'd*, 160 F.3d 361 (7th Cir. 1998). In this case, Plaintiffs and Class Counsel undertook litigation that, upon the Court's approval of the Settlement, will result in a significant benefit for all Class members. A common fund fee award is therefore appropriate in this case.

1009 (S.D. Ind. Sept. 10, 2010) (McKinney, J.) (38% of the common fund); *In re Ready-Mixed Concrete Antitrust Litig.*, No. 05-00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (Barker, J.) (33.3% of the common fund).

27.  Awards of 33.3% or more are also common elsewhere within the Seventh Circuit. *See George v. Kraft Foods Global, Inc.*, No. 08-3799, slip op. at 2 (N.D. Ill. June 26, 2012) (one-third fee); *Pavlik v. FDIC*, No. 10-816, 2011 WL 5184445, at *4 (N.D. Ill. Nov. 1, 2011) (one- third fee); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597-600 (N.D. Ill. 2011) (one-third fee); *Martin v. Caterpillar, Inc.*, No. 07-1009, slip op. at 7 (C.D. Ill. Sept. 10, 2010) (one-third fee); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (one-third fee); *Kitson v. Bank of Edwardsville*, No. 08-507, 2010 WL 331730, at *2 (S.D. Ill. Jan. 25, 2010) (one-third fee); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (one-third fee).[2]

28.  The percentage fee requested here – 33.33% – is within the range of awards made in risky and work-intensive cases such as this one. As required by the law of this Circuit, a one-third fee accurately emulates the market for valuing legal services in a contingent fee setting, and is in line with other fee awards that have been found to be reasonable and appropriate.

29.  The Court has also considered the factors set forth in *Synthroid I* and finds that they also support a 1/3 contingency fee, including (1) the risk of nonpayment; (2) the quality of performance; (3) the amount of work necessary to resolve the litigation; and (4) the stakes in the

---

[2]  *See also Mansfield v. Air Line Pilots Ass'n Int'l*, No. 06-6869, slip op. at 7 (N.D. Ill. Dec. 14, 2009) (35% of the common fund); *Kelly v. Bluegreen Corp.*, No. 08-401, slip op. at 4 (W.D. Wis. Oct. 30, 2009) (one-third of common fund); *Perry v. Nat'l City Bank*, No. 05-891, slip op. at 2 (S.D. Ill. Mar. 3, 2008) (one-third award); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *In re Mercury Fin. Co.*, No. 97-3035, slip ops. at 2 (N.D. Ill. July 6, 2001 and July 26, 2000) (one-third fee); *In re Lithotripsy Antitrust Litig.*, No. 98-8394, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) (noting that "[m]any courts in this district have utilized" the percentage method to set fees in class actions; "33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards"); *Goldsmith v. Tech. Solutions Co.*, No. 92-4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) (noting that courts in the Seventh Circuit award attorneys' fees "equal to approximately one-third or more of the recovery"); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1252 (N.D. Ill. 1993) (awarding 29% of common fund).

case. *In re Synthroid Mktg. Litig.* ("*Synthroid I*"), 264 F.3d 712, 721 (7th Cir. 2001). The Court agrees with the analysis of these factors as set forth in Plaintiffs' Motion for Attorneys' Fees, Costs and Case Contribution Awards and finds that each favor attorneys' fees and costs as sought by Class Counsel.

30. The quality of Class Counsel's performance is reflected not only by result achieved, but also by qualitative factors. Each of the firms representing the Class is distinguished, lending their various strengths to a unified legal team of significant accomplishment. *See* [Dkt. #312-1], Cox Decl. ¶ 3; [Dkt. #312-2] Noyes Decl. ¶¶ 2,3; [Dkt. #312-3] Winingham Decl. ¶¶ 2,3; [Dkt. #312-4] Levin Decl. ¶ 24. Together, these firms created an excellent legal team for the benefit of the Class.

31. Similarly, other factors also support such an award, including that the named plaintiffs actually entered into an agreement providing a contingent fee of up to 40% to counsel and that an experienced and highly-skilled class action attorney from this market, Irwin Levin, has submitted a declaration indicating that his opinion is that a 1/3 contingency fee is appropriate and reasonable for class counsel in this litigation. [Dkt. #312-4] Levin Decl. ¶ 27.

32. Finally, although not required, the Court notes that a lodestar "cross-check" evidences that the fee sought by Class Counsel is not excessive in light of the reasonable hourly rate previously determined by the Court, see [Dkt. #324], and the hours worked by Class Counsel, which the Court finds to be reasonable in light of the testimony on this issue submitted by Plaintiffs as well as the Court's familiarity with the issues in this matter.

33. Accordingly, based on the above, the Court now finds that an award of attorneys' fees equal to 1/3 of the settlement fund, or $151,666.66, is reasonable and merited and shall be paid to Class Counsel by the Settlement Administrator from the settlement fund.

### CLASS COUNSEL'S COSTS SHOULD BE REIMBURSED

34. Reimbursement of reasonable costs and expenses to counsel who create a common

fund is both necessary and routine. Fed. R. Civ. P. 23(h); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (a party who has produced a common fund for the benefit of a group may be reimbursed for expenses of litigation). *See also* A. Conte, *Attorney Fee Awards* § 2.08, at 50-51 (3d ed. 2004) ("The prevailing view is that expenses are awarded in addition to the fee percentage").

35. As one commentator has written:

> [A]n attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved. The equitable principle that all reasonable expenses incurred in the creation of a fund for the benefit of a class are reimbursable proportionately by those who accept benefits from the fund authorizes reimbursement of full reasonable litigation expenses as costs of the suit.

A. Conte, *Attorney Fee Awards* § 2.19, at 73-74 (citing *Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527 (1881)).

36. The expenses that may be reimbursed from the common fund are not limited to those taxed in a judgment against an opponent, but instead, encompass "all reasonable expenses." *Id.*; *see also In re Ready-Mixed Concrete Antitrust Litig.*, No. 05-00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (approving request for reimbursement of "expenses that are customarily charged to clients in the market for legal services," which "are normally recovered from a settlement fund net of attorneys' fees").

37. Class Counsel have advanced $31,038.57 in unreimbursed expenses to date in relation to the prosecution of claims against Kapsch. These expenses were borne equally by the two law firms under the express terms of a written fee-sharing agreement negotiated among counsel and approved in writing by the class representatives in their engagement agreements.[19]

38. These monies were spent on routine and necessary litigation expenses, such as deposition expenses, expert expenses, mediation expenses, and expenses to process and maintain in searchable format the large volume of data and ESI produced in discovery by Defendants. An itemized list of expenses was provided by counsel.

39. The Court finds that these costs are reimbursable as necessary litigation expenses and are reasonable in amount given the nature and length of this litigation, and therefore further finds that Class Counsel shall be reimbursed by the Settlement Administrator in the amount of $31,038.57 from the settlement fund for counsels' unreimbursed expenses.

40. The Court further finds that it is appropriate for the Settlement Administrator, as required by the Settlement Agreement approved by the Court, to receive compensation for its services in providing Notice and Administering the Settlement Fund via payment from the settlement fund after provision of invoices to Class Counsel. The Court is herein authorizing payment of those expenses and services already incurred in administering and providing notice of the settlement pursuant to the Court's Preliminary Approval Order, and Class Counsel is directed to seek leave of Court to authorize any additional payments to Settlement Administrator as amounts are invoiced for additional services and expenses incurred by the Settlement Administrator in administering and distributing the settlement fund.

**NAMED PLAINTIFFS ARE ENTITLED TO CASE CONTRIBUTION AWARDS**

41. Finally, Plaintiffs have also requested that the Court award a case contribution award of $2,000 to each of the three named Plaintiffs and class representatives, Melissa Barker, Monique Outzen, and Robert Ardaiolo.

42. Based on the evidence before the Court as to their involvement in this litigation, it is clear that each of these named Plaintiffs spent considerable time and effort working with Class Counsel and were both necessary and critical to the ultimate success of the case and settlement reached with Gila.

43. When entering final approval of a settlement in a successful class action case, it is common for courts, exercising their discretion, to award special compensation to the class representatives in recognition of the time and effort they have invested for the benefit of the class,

which usually includes providing information to counsel, reviewing and approving pleadings, assisting with discovery, preparing for and/or attending a deposition, and participating in settlement discussions. *See Williams v. Rohm & Haas Pension Plan*, No. 04-0078, 2010 WL 4723725, at *2 (S.D. Ind. Nov. 12, 2010) ("Because a named plaintiff plays a significant role in a class action, an incentive award is appropriate as a means of inducing that individual to participate in the expanded litigation on behalf of himself and others.").

44. Such awards are usually paid from the settlement fund and have been approved in numerous cases, including cases in this Circuit. *See, Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving $25,000 class representative award); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 to each of the three named plaintiffs); *Cook v. McCarron*, No. 92-7042 and No. 95-828,1997 WL 47448, at *19 (N.D. Ill. Jan. 30, 1997) (approving $25,000 class representative award).

45. Class counsel has suggested that an appropriate contribution award would be $2,000 for each named plaintiff.

46. The Court finds this request reasonable in light of the significant time and critical importance of the named Plaintiffs' contributions to this case as well as the result obtained in settlement with Kapsch. Accordingly, each of the named Plaintiffs is to be awarded a case contribution award of $2,000 to be paid from the settlement fund by Settlement Administrator.

IT IS SO ORDERED, ADJUDGED AND DECREED.

Date: 3/28/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution to all electronically
registered counsel of record via
CM/ECF